1  DAVID CHIU, State Bar #189542
   City Attorney
2  JAMES F. HANNAWALT, State Bar #139657
   Acting Chief Trial Deputy
3  THOMAS S. LAKRITZ, State Bar #161234
   Deputy City Attorney
4  Fox Plaza
   1390 Market Street, Sixth Floor
5  San Francisco, California 94102-5408
   Telephone:     (415) 554-3963
6  Facsimile:     (415) 554-3837
   E-Mail:        tom.lakritz@sfcityatty.org

8  Attorneys for Defendants
   CITY AND COUNTY OF SAN FRANCISCO;
9  WILLIAM HUGHEN; KEVIN BIRMINGHAM; NATALIA FOSSI
   (ERRONEOUSLY SUED AS NATALIA KWAITKOWSKA);
10 MAURICIO HERNANDEZ; and JOE DUFFY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| PATRICK GALLAGHER, | Case No. 23-cv-03579-JCS |
|---|---|
| Plaintiff, | **DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS** |
| vs. | |
| CITY AND COUNTY OF SAN FRANCISCO, BERNARD CURRAN, RODRIGO SANTOS, WILLIAM HUGHEN, KEVIN BIRMINGHAM, NATALIA KWAITKOWSKA, AND JOE DUFFY, | Hearing Date: October 27, 2023<br>Time: 9:30 a.m.<br>Place: Remote |
| | Trial Date: Not Set |
| Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

ARGUMENT ..............................................................................................................................1

    I.     PLAINTIFF HAS NOT STATED A *MONELL* CLAIM AGAINST THE CITY ...1

    II.    PLAINTIFF LACKS STANDING TO PURSUE CLAIMS ON BEHALF OF MADISON TRUST FBO PATRICK GALLAGHER ............................................2

        A.     Plaintiff Does Not Dispute That Madison Trust FBO Patrick Gallagher Did Not File a Government Claim ...............................................................2

        B.     Patrick Gallagher Lacks Standing to Pursue Certain Claims in His Personal Capacity ....................................................................................5

    III.   PLAINTIFF'S STATE LAW CLAIMS ARE NOT RIPE ......................................5

    IV.   THE CITY IS IMMUNE FOR ANY CLAIMS OF MONETARY DAMAGES ....7

        A.     California Government Code Sections 818.4 and 821.2 ............................7

        B.     California Government Code Section 818.8 ................................................9

        C.     Plaintiff's Inverse Condemnation Cause of Action Fails .........................10

        D.     Plaintiff Failed to Adequately Allege Certain Tort Actions .....................11

CONCLUSION ..........................................................................................................................12

# TABLE OF AUTHORITIES

**State Cases**

*Doyle v. City of Chino*
   117 Cal.App.3d 673 (1981) ...............................................................................................7

*Econ. Empowerment Found. v. Quackenbush*
   57 Cal.App.4th 677 (1997) .................................................................................................7

*Gantner & Mattern Co. v. California E. Com.*
   17 Cal.2d 314 (1941) .........................................................................................................7

*Golden Gate Water Ski Club v. Cnty. of Contra Costa*
   165 Cal.App.4th 249 (2008) .......................................................................................10, 11

*Guinnane v. San Francisco Planning Comm'n.*
   209 Cal.App.3d 732 (1989) ...............................................................................................8

*Harshbarger v. City of Colton*
   197 Cal.App.3d 1335 (1988) .............................................................................................9

*Hassoldt v. Patrick Media Group, Inc.*
   84 Cal.App.4th 153 (2000) .................................................................................................3

*Healing v. California Coastal Com.*
   22 Cal.App.4th 1158 (1994) .............................................................................................11

*Kavanau v. Santa Monica Rent Control Bd.*
   16 Cal.4th 761 (1997) .......................................................................................................10

*Lindell Co. v. Board of Permit Appeals*
   23 Cal.2d 303 (1943) .........................................................................................................8

*Martin v. City & Cnty. of San Francisco*
   135 Cal.App.4th 392 (2005) ...............................................................................................8

*Ogo Associates v. City of Torrance*
   37 Cal.App.3d 830 (1974) .................................................................................................7

*People v. Rogers*
   57 Cal.4th 296 (2013) ........................................................................................................3

*Saks v. Damon Raike & Co.*
   7 Cal.App.4th 419 (1992) ..................................................................................................5

*Sea & Sage Audubon Soc'y, Inc. v. Plan. Com.*
   34 Cal.3d 412 (1983) .........................................................................................................7

*Selby Realty Co. v. City of San Buenaventura*
   10 Cal.3d 110 (1973) .........................................................................................................6

*Thompson v. City of Lake Elsinore*
   18 Cal.App.4th 49 (1993) ...........................................................................................8

**State Statutes & Codes**

California Code of Civil Procedure § 1094.5 ...............................................................6

California Government Code § 815.2(a) ....................................................................11

California Government Code § 815.6 ..........................................................................8

California Government Code § 818 ...........................................................................10

California Government Code § 818.4 ..................................................................7, 8, 9

California Government Code § 818.8 .....................................................................7, 9

California Government Code § 821.2 ..................................................................7, 8, 9

California Government Code § 822.2 ..........................................................................9

**Federal Cases**

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) .................................................................................................2

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) .................................................................................................2

*Dougherty v. City of Covina*
   654 F.3d 892 (9th Cir. 2011) ...................................................................................1

*Gomez v. Vernon*
   255 F.3d 1118 (9th Cir. 2001) .................................................................................1

*Hunter v. Cnty. of Sacramento*
   652 F.3d 1225 (9th Cir. 2011) .................................................................................1

*Larez v. City of Los Angeles*
   946 F.2d 630 (9th Cir. 1991) ...................................................................................1

*McDougal v. Cnty. of Imperial*
   942 F.2d 668 (1991) ...............................................................................................11

*Monell v. Dep't of Soc. Servs. of City of New York*
   436 U.S. 658 (1978) .............................................................................................1, 2

*Rodriguez v. Cnty. of Los Angeles*
   891 F.3d 776 (9th Cir. 2018) ...................................................................................1

**Federal Statutes**

42 U.S.C. § 1983 ...................................................................................................1, 2, 4

**San Francisco Statutes, Codes & Ordinances**
San Francisco Building Code § 105A2 ..........................................................................................6

San Francisco Business & Tax Regulations Code § 26 ................................................................8

San Francisco Business & Tax Regulations Code § 8(e)(2) .........................................................6

**Rules**
Federal Rule of Civil Procedure 12(e) ..........................................................................................5

**Constitutional Provisions**
California Constitution, Article 1, § 19 ......................................................................................10

Def's Reply to Oppos re Motion to Dismiss     iv     n:\lit\li2023\230777\01695540.docx
Case No. 23-cv-03579-JCS

The City respectfully submits this reply brief in support of its motion to dismiss.

## ARGUMENT

### I. PLAINTIFF HAS NOT STATED A *MONELL* CLAIM AGAINST THE CITY

Plaintiff disclaims three of four possible *Monell* theories and asserts, for the first time, that he is attempting to proceed under a pervasive practice or custom theory. *See* Pl. Patrick Gallagher's Opp'n to Def. City and County of San Francisco's Mot. to Dismiss ("Opp'n") 5–6, ECF No. 14. *Monell* liability under this theory is possible where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018). *Id*. (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). "A policy or custom may be found either in an affirmative proclamation of policy or in the failure of an official 'to take any remedial steps after [constitutional] violations.'" *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991) (holding that a jury could find a policy or custom of using excessive force from the police chief's failure to discipline officers for such conduct)); *see also Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1234–35 (9th Cir. 2011) (holding that "evidence of a recurring failure to investigate and discipline municipal officers for constitutional violations can help establish the existence of an unconstitutional practice or custom" of using excessive force). Thus, a governmental entity, such as the City, can only be liable under 42 U.S.C. § 1983 if "a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694).

In his Opposition, Plaintiff makes the following argument:

> Plaintiff alleges that the he was the victim of a fraudulent pay-to-play scheme perpetrated by City employees. FAC ¶¶ 2-4, 36. After uncovering the truth behind the City's deceptive practices and refusing to participate, Plaintiff alleges that he spoke with the Federal Bureau of Investigation concerning the illegal and fraudulent scheme. FAC ¶¶ 3, 37, 88-89. Due to Plaintiff's participation in the FBI investigation and his refusal to participate in the pay-to-play scheme, Plaintiff alleges that he was subjected to brazen retaliation by the City. FAC ¶¶ 4, 39-54. Plaintiff alleges that such retaliatory conduct was pattern, or custom. FAC ¶ 5. Plaintiff provides an example of the City's recurring pattern of retaliatory behavior by citing to a recent court case involving an individual who also purchased an investment property and was

        also subjected to the same harm after speaking out against the City's pay-to-
        play scheme. *Id.*

Opp'n 5–6. But such allegations are merely formulaic and conclusory and do not provide the necessary factual allegations to state a *Monell* claim a pervasive practice or custom theory. *See* Opening Br. 7 (discussing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Importantly, Plaintiff has not alleged any facts that would support a claim that the City had a custom or policy of retaliating against developers who spoke to the FBI about corrupt inspectors.

      Moreover, Plaintiff does not allege that there was either an affirmative City policy of retaliating against developers who spoke to law enforcement about corruption or a custom or practice of retaliation. There is no allegation that City employees retaliated against other developers who spoke to the FBI, or indeed to any law enforcement authorities, about corruption. Instead, Plaintiff simply cites to paragraph 5 of his First Amended Complaint ("FAC") to allege a "recurring pattern of retaliatory behavior." Opp'n 6. Moreover, Plaintiff alleges that defendant Joe Duffy "[a]s Chief Building Inspector, [] oversees the City's entire department, including all of its employees. Duffy is an official with final-policy making authority." *Id*. But Plaintiff does not allege any facts that connect these allegations together. And none of these allegations are contained in his FAC. *See* FAC ¶¶ 13, 44.

      Accordingly, the Court should grant the City's motion and dismiss Plaintiff's fourth cause of action (violation of civil rights, 42 U.S.C. § 1983). If the Court is inclined to give Plaintiff leave to amend, the Court should caution on his pleading requirements.

## II. PLAINTIFF LACKS STANDING TO PURSUE CLAIMS ON BEHALF OF MADISON TRUST FBO PATRICK GALLAGHER

### A. Plaintiff Does Not Dispute That Madison Trust FBO Patrick Gallagher Did Not File a Government Claim

Plaintiff does not dispute that Madison Trust FBO Patrick Gallagher failed to file a government claim before he initiated this litigation. Instead, Plaintiff argues that "Madison Trust was not required to submit government claim because it has neither capacity nor standing to sue." Opp'n 7. Plaintiff is wrong.

///

*First*, Plaintiff argues that Madison Trust FBO Patrick Gallagher "is not a legal entity, and therefore has neither capacity nor standing to sue." Opp'n 6. But this argument misses the point of the City's motion. While a trust may lack capacity or standing to sue, that does not relieve a trust of the obligation to file a government. As Plaintiff concedes, the trustee of a trust is one of the potential real parties-in-interest with standing and capacity to sue. *Id*. Thus, if a trustee has standing and capacity to sue, the trustee is authorized to file a government claim on behalf of trust, which Plaintiff concedes that Madison Trust FBO Patrick Gallagher did not do.

*Second*, Plaintiff's reliance on *Hassoldt v. Patrick Media Group, Inc.*, 84 Cal.App.4th 153 (2000), *abrogated by People v. Rogers*, 57 Cal.4th 296 (2013), for the proposition that a both the trustee and the beneficiaries of a trust may sue in their own name without name the trust, is misplaced. Opp'n 7. In that case, the court recognized that as set forth in the pleadings the subject property was owned by plaintiffs as trustees for a trust and that plaintiffs were beneficiaries of the trust. *Hassoldt*, 84 Cal.App.4th at 171. The court held that "[u]nder these circumstances" (that is, allegations in the compliant) plaintiffs "could maintain an action in their own name, i.e., without mentioning the trust." *Id*.

Here, there is no dispute that Plaintiff's government claim makes no mention of the Madison Trust FBO Patrick Gallagher or the identity of trustees and beneficiaries. *See* RJN, Exhibit A.[1] Thus, Plaintiff's government claim provided not facts (or hints) to suggest to the City that Plaintiff was seeking compensation on behalf of the Madison Trust FBO Patrick Gallagher.

*Third*, Plaintiff concedes that his government claim "did not identify [Madison Trust FBO Patrick Gallagher] by name in the claim." Opp'n 8. Plaintiff contends that while his claim was not "technically perfect" it was close enough. Opp'n 7–9. Specifically, Plaintiff contends that "[t]he claim adequately discloses sufficient information putting the City on notice of a compensable claim by the trust against the City." Opp'n p. 8. Again, Plaintiff is wrong. Plaintiff gave no indication on his government claim that the Madison Trust FBO Patrick Gallagher had any involvement in the facts (or legal theories) put forth in Plaintiff's government claim. Patrick Gallagher listed himself as the only

---

[1] Plaintiff did not oppose the City's Request for Judicial Notice. Accordingly, the City request that the court grants its unopposed request.

Def's Reply to Oppos re Motion to Dismiss     3     n:\lit\li2023\230777\01695540.docx
Case No. 23-cv-03579-JCS

claimant and, importantly, he signed the government claim in his personal capacity, and did not indicate that he was signing the government claim in his capacity as trustee or beneficiary of the Madison Trust FBO Patrick Gallagher. RJN, Exhibit A. Moreover, the factual basis of Plaintiff's government claim makes clear that it was submitted in his personal capacity, not as trustee or beneficiary of the Madison Trust FBO Patrick Gallagher. Plaintiff alleged the following factual basis in his government claim:

> In 2018 Claimant took out permits with the Department of Building Inspection to remodel the real property at 200 Naples Street, San Francisco. City and County employee Bernard Curran was the building inspector. He told Claimant he should hire structural engineers Santos & Urritia, who demanded that Claimant pay it $12,000 of which $3,500 was to be in cash. Claimant hired Santos & Urritia and paid its fee as directed, but Santos and & Urritia did not perform the services, so Claimant hired another engineer. In 2020 all work had been completed on the property and all inspections passed. Bernard Curran, in his capacity as building inspector, issued a certificate of completion and occupancy. By May 2021 Claimant was in contract to sell the real property, and there was a pending escrow. But escrow did not close because the City and County red tagged the property. It refused to recognize the inspections, certificate of completion and occupancy completed by its own employee, Bernard Curran. Claimant met with City and County inspectors Joe Duffy and Muricio Hernandez at the property, where Mr. Hernandez told Claimant they knew who Claimant had been talking to. At that time Claimant had no idea what Mr. Hernandez meant by that statement, but later learned that Bernard Curran had been or was about to be indicted for corruption. When Claimant was later interviewed by the FBI, he then understood the comment previously made by building inspector Muricio Hernandez. The City and County required Claimant to reapply for building permits, resubmit drawing, and complete many of the processes Claimant had completed with the Department of Building Inspection causing significant expense, time, carrying costs, and lost opportunities. Claimant is informed and believes City personnel retaliated against Claimant because they believed Claimant had reported Bernard Curran to the authorities and/or cooperated with the FBI.

RJN, Exhibit A. All of these facts are personal to Mr. Gallagher and none suggest or hint that he filed the claim as a trustee or beneficiary of the Madison Trust FBO Patrick Gallagher.

Accordingly, the Court should grant the City's motion with respect to Madison Trust FBO Patrick Gallagher dismiss with prejudice all claims for monetary relief (except the second cause of action for inverse condemnation and fourth cause of action under 42 U.S.C. § 1983) with respect to Madison Trust FBO Patrick Gallagher.[2]

---

[2] Plaintiff concedes that Madison Trust FBO Patrick Gallagher is not asserting the fifth cause of action (intentional infliction of emotional distress). Opposition 18. Plaintiff's concession highlights one of the many problems with the FAC: the City must guess which cause of action is asserted by an

### B. Patrick Gallagher Lacks Standing to Pursue Certain Claims in His Personal Capacity.

As set forth in the City's opening brief, Patrick Gallagher lacks standing in his personal capacity to pursue following causes of action: first cause of action (slander of title), second cause of action (inverse condemnation), third cause of action (intentional interference with prospective economic relations), sixth cause of action (negligence), and seventh cause of action (declaratory relief). These causes of action are premised on the allegation that the City and other defendants caused economic damage to the subject property. Opening Br. 13. All of these causes of action are premised on Madison Trust FBO Patrick Gallagher's ownership of 200 Naples Street. FAC ¶¶ 64, 70, 78, and 114. While a trustee or beneficiary may have standing to pursue claims on behalf of trust, neither has standing to pursue such claims in their individual capacity, as Plaintiff is attempting to do. *See, e.g.*, *Saks v. Damon Raike & Co.*, 7 Cal.App.4th 419, 427 (1992) (Plaintiff lacks standing to pursue any cause of action in his individual capacity to protect the assets of the trust, including the subject property.).

Accordingly, the Court should grant the City's motion to dismiss with respect to first cause of action (slander of title), second cause of action (inverse condemnation), third cause of action (intentional interference with prospective economic relations), sixth cause of action (negligence), and seventh cause of action (declaratory relief) with respect to Plaintiff Patrick Gallagher for lack of standing.

### III. PLAINTIFF'S STATE LAW CLAIMS ARE NOT RIPE

As set forth in the City's opening brief, Plaintiff's first, third, fifth, sixth, and seventh causes of action are based on allegations related to the propriety and legality of the notices of violation, order of abatement, and other code enforcement actions taken by the City. FAC ¶¶ 58, 80, 91, 99, 106, 114. To the extent that Plaintiff is not satisfied with the permit decisions or if the permits are denied or an order of abatement is issued, Plaintiff must first seek administrative review of each decision (or conditions placed on them) to the San Francisco Board of Appeals. *See* S.F. Charter § 4.106 (general jurisdiction of the Board of Appeals); S.F. Bus. & Tax Regs. Code § 8(e)(2) (appealing decisions of Department of

---

entity or an individual. The City is entitled to a clear and definite pleading. *See, e.g.*, Fed.R.Civ.P. 12(e).

Building Inspection); S.F. Bldg. Code § 105A2 (appealing order of abatement to Abatement Appeals Board). Once the administrative review is completed and Plaintiff is still not satisfied with the decisions, Plaintiff can file a Petition for Administrative Mandate under California Code of Civil Procedure section 1094.5. Until then, Plaintiff's state law claims are not ripe. *See, e.g.*, *Selby Realty Co. v. City of San Buenaventura*, 10 Cal.3d 110–18 (1973).

Plaintiff alleges that he "sought relief from the appropriate administrative channels concerning the City's regulation of the subject property." Opp'n 10. Specifically, Plaintiff alleges that "[a]fter the City wrongfully revoked Plaintiff's certificate of completion and issued unfound notices of violation, Plaintiff contacted the City's Board of Supervisors for help." Opp'n 10 (citing FAC ¶¶ 39–43). But as Plaintiff concedes, this was not an official administrative appeal; instead "[t]he Board facilitated a meeting between Plaintiff and the Department of Building Inspection." *Id.* But a meeting facilitated by the Board is not an official administrative appeal under any of the many sections of the City's local codes that provide an administrative appeal to permit applicants and those subject to code enforcement actions. Nor does this satisfy Plaintiff's obligation to exhaust available judicial remedies under California Code of Civil Procedure section 1094.5.

Until Plaintiff exhaust available administrative and judicial appeals Plaintiff's first, third, fifth, sixth, and seventh causes of action (to the extent they based on allegations related to the propriety and legality of the notices of violation, order of abatement, and other code enforcement actions taken by the City) are not yet ripe for adjudication.

In an attempt to get around the exhaustion requirement, Plaintiff argues that "any further *administrative* adjudication would be futile." Opp'n 11 (emphasis added). This argument fails for at least two reasons. First, while this may excuse further administrative appeals, it does not excuse the requirement to exhaust available judicial appeals (that is a writ of mandate under California Code of Civil Procedure section 1094.5). Second, Plaintiff mispresents the futility exception. Opp'n 11–12. As the California Supreme Court has stated, the futility exception is very narrow and a plaintiff must allege that any administrative or quasi-judicial body must have already stated that they would reject any appeal:

///

> Plaintiffs' contention misconceives the scope of the so-called "futility" exception to the exhaustion doctrine. As the Court of Appeal explained in *Doyle v. City of Chino* (1981) 117 Cal.App.3d 673, 683: "Futility is a narrow exception to the general rule. In *Gantner & Mattern Co. v. California E. Com.* (1941) 17 Cal.2d 314, [318], the court stated, '[t]he exhaustion of remedial procedure as laid down by the statute is required unless the petitioner can positively state that the commission has declared *what its ruling will be in a particular case....*' " (Emphasis added.) (*See also Ogo Associates v. City of Torrance* (1974) 37 Cal.App.3d 830, 834.)

*Sea & Sage Audubon Soc'y, Inc. v. Plan. Com.*, 34 Cal.3d 412, 418 (1983).

Moreover, even demonstrated bias in the past is insufficient to establish the futility exception. *Econ. Empowerment Found. v. Quackenbush,* 57 Cal.App.4th 677, 690–91 (1997) (holding claim of insurance commissioner's bias insufficient to establish futility exception; "that the Commissioner may have treated [the plaintiff] and other intervenors unfairly in other proceedings does not establish that he is bound to do so in this one"].) Thus, Plaintiff has not and cannot allege a factual or legal basis for the application of the futility exception to the requirement that he exhaust available administrative (and judicial) remedies.

Plaintiff's first, second, third, fifth, sixth, and seventh causes of action are not yet ripe, to the extent they are premised on decisions for which administrative and judicial remedies are available before the decisions become final. *See, e.g.*, FAC ¶¶ 58, 80, 91, 99, 106, 104. Accordingly, the Court should grant the City's motion to dismiss without leave to amend.

## IV. THE CITY IS IMMUNE FOR ANY CLAIMS OF MONETARY DAMAGES

To the extent that Plaintiff's first, third, fifth, and sixth causes of action are based on allegations related to the propriety and legality of the notices of violation, order of abatement, and other code enforcement actions taken by the City, the City is statutorily immune from damages under California Government Code section 818.4, 821.2, and 818.8.

### A. California Government Code Sections 818.4 and 821.2

As noted in the City's opening brief, California Government Code section 818.4 provides that "[a] public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized

by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." *See also* Cal. Gov't Code § 821.2

Plaintiff concedes, as he must, that all decisions related to the granting, denying, or revoking of permits are discretionary decision covered by Sections 818.4 and 821.2. *See* Opp'n 12. Plaintiff made no attempt to distinguish the case cited by the City supporting the City's argument. Nor did Plaintiff dispute that in San Francisco, all decisions whether to issue, deny, suspend, or revoke a permit, license, approval are discretionary under San Francisco Business & Tax Regulations Code section 26.

Instead, Plaintiff appears to argue that because he alleged that the decisions he is attempting to challenge were non-discretionary, the City is not entitled to the immunities provided by Sections 818.4 and 821.2. Opp'n 14. Plaintiff misunderstands the City's argument. The decisions Plaintiff is attempting to challenge in this action are discretionary as *a matter of law*. *See, e.g.*, *Lindell Co. v. Board of Permit Appeals* 23 Cal.2d 303, 315 (1943); *Guinnane v. San Francisco Planning Comm'n.*, 209 Cal.App.3d 732, 739–40 (1989); *Martin v. City & Cnty. of San Francisco*, 135 Cal.App.4th 392, 399–400 (2005).

Plaintiff's reliance on *Thompson v. City of Lake* Elsinore, 18 Cal.App.4th 49 (1993) is misplaced. *See* Opp'n 12. In *Thompson*, the Court of Appeal upheld the immunities provided by Sections 818.4 and 821.2, but found that such immunities did not apply where the building inspector had a mandatory duty (under California Government Code section 815.6) to do something, after all discretionary determinations were made. *Id.* at 58–62. Here, Plaintiff has not alleged that the City (or any of its employees) had a mandatory duty to do (or refrain from doing) anything with respect to Plaintiff or 201 Naples Street. Plaintiff simply asserts in his Opposition that "the acts of the City employees were non-discretionary," without providing a factual or legal basis for his assertion. *See* Opp'n 13. Thus, *Thompson* provides no safety harbor for Plaintiff.

As noted in the City's opening brief, Plaintiff alleges damages related to the "issuing and refusing to release frivolous code enforcement liens, issuing and refusing to release notices of violation, issuing and refusing to release abatement orders, revoking permits, and revoking a certificate of completion." FAC ¶ 58 (first cause of action), ¶ 80 (third cause of action), ¶ 91 (fourth cause of action); ¶ 99 (fifth cause of action), ¶ 106 (sixth cause of action). As set forth above and in

the City's opening brief, the City is immune under Sections 818.4 and 821.2 from all damages sought by Plaintiff in these causes of actions.

Accordingly, the Court should grant the City's motion to dismiss without leave to amend, with respect to Plaintiff's first, third, fifth, and sixth causes of action.

### B. California Government Code Section 818.8

As noted in the City's opening brief, California Government Code section 818.8 provides that "[a] public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional." California courts have consistently applied Section 818.8 to immunize public entities, like the City, from liability for the fraudulent or negligent misrepresentations of its employees. *See*, *e.g.*, *Harshbarger v. City of Colton*, 197 Cal.App.3d 1335, 1342 (1988). Plaintiff made no attempt to address the City's argument or challenge the applicability of *Harshbarger*. *See* Opp'n 14–16. Instead, Plaintiff cited cases that "misrepresentation" does not include negligence or intentional wrongs. Opp'n 15. But that misses the point of the City's argument, which is the "misrepresentations" that Plaintiff claims City employees made with respect to 201 Naples Street are covered by the immunity found in Section 818.8. Indeed, in *Harshbarger*, the Court of Appeal upheld Section 818.8 immunity in the code enforcement context:

> In *Grenell* the court found "the negligence of the city employee who prepared the report [misrepresenting that two dwelling units were legally authorized under city zoning regulations, when in fact one was not] comes literally within the classification of a 'misrepresentation' referred to in the immunity sections [818.8 and 822.2]...." (*Id.*, at p. 871.) The court concluded that "the alleged interference with financial interest [was] closely analogous to the interference for which the government was immune in *Neustadt*," (*id.*, at p. 874) and therefore section 818.8 and its counterpart section 822.2 provided immunity for the injury caused by the misrepresentation of the city employee. (*Id.*, at p. 875.)
>
> In their complaint, the Harshbargers allege that by signing the "job card" the city employees misrepresented that the residence complied with code standards when in fact they knew it was defective. Subsequently, the city issued a letter stating that the construction on the residence violated or did not comply with various codes. As a result, the Harshbargers expended an additional $295,000 to reconstruct their residence so that it met code standards. This alleged interference with the Harshbargers' financial interest is analogous to the situations in which the government was held to be immune from liability in both *Neustadt* and *Grenell*. Therefore, we conclude that the facts of this case fall within the immunity provisions of section 818.8 and the Harshbargers cannot maintain a cause of action against Colton for intentional misrepresentation.

*Harshbarger*, 197 Cal. App. 3d at 1342.

Accordingly, as noted in the City's opening brief, Plaintiff alleges damages related to the "issuing and refusing to release frivolous code enforcement liens, issuing and refusing to release notices of violation, issuing and refusing to release abatement orders, revoking permits, and revoking a certificate of completion." FAC ¶ 58 (first cause of action), ¶ 80 (third cause of action), ¶ 99 (fifth cause of action), ¶ 106 (sixth cause of action). As set forth above and in the City's opening brief, the City is immune under Section 818 from all damages sought by Plaintiff in these causes of actions.

Accordingly, the Court should grant the City's motion to dismiss without leave to amend, with respect to Plaintiff's first, third, fifth, and sixth causes of action.

### C. Plaintiff's Inverse Condemnation Cause of Action Fails

For the first time in his Opposition, Plaintiff characterizes his inverse condemnation action (second cause of action) as a "regulatory taking," citing *Kavanau v. Santa Monica Rent Control Bd.*, 16 Cal.4th 761, (1997). Opp'n 16. In *Kavanau*, the California Supreme Court noted that the U.S. Supreme Court noted that:

> a regulation of property that "goes too far" may effect a taking of that property, though its title remains in private hands. In such a case, the property owner may bring an inverse condemnation action, and if it prevails, the regulatory agency must either withdraw the regulation or pay just compensation.

*Id.* at 773. Yet, neither in his FAC or his Opposition has Plaintiff alleged or identified a specific regulation that has "taken" 201 Naples Street without just compensation. Indeed, in his FAC and in his Opposition, Plaintiff continues to premise his inverse condemnation action on "discharging and refusing to release numerous unfounded, frivolous, vindictive notices of violation, abatement orders, and enforcement liens; revoking valid permits; and notably, revoking a valid certificate of completion." Opp'n 17. In Plaintiff's own words, these actions cannot form the basis of a regulatory takings claim under the California Constitution (Cal. Const., art. 1, § 19), because, as he asserts and alleges, they were done in contravention of local regulatory schemes (building, planning, and public works codes).

Next, Plaintiff contends that the City's reliance on *Golden Gate Water Ski Club v. Cnty. of Contra Costa*, 165 Cal.App.4th 249, 267 (2008) is misplaced, and chastises the City for not discussing *Healing v. California Coastal Com.*, 22 Cal.App.4th 1158 (1994) or *McDougal v. Cnty. of Imperial*,

Def's Reply to Oppos re Motion to Dismiss     10     n:\lit\li2023\230777\01695540.docx
Case No. 23-cv-03579-JCS

942 F.2d 668 (1991). Opp'n 17. But neither *Healing* nor *McDougal* discuss facts similar to this case, which *Golden Gate Water Ski Club* does. The issue in *Healing* was whether the California Coastal Commission's refusal to issue a permit so restricted the landowner's use as to effect a taking. *Healing*, 22 Cal. App. 4th at 1169. In *McDougal*, the plaintiffs sued "alleging that the County passed various ordinances, denied permit applications and otherwise conspired to deprive them of their rights to operate their water business." *McDougal*, 942 F.2d at 671. Neither *Healing* nor *McDougal* change the holding of *Golden Gate Water Ski Club*, which applies to Plaintiff's case: "Regulations regarding and restrictions upon the use of property in an exercise of the police power for an authorized purpose, do not constitute the taking of property without compensation or give rise to constitutional cause for complaint." *Golden Gate Water Ski Club*, 165 Cal.App.4th at 267.

Accordingly, Plaintiff's FAC did not allege an inverse condemnation cause of action and the arguments made in his Opposition fail to support an inverse condemnation cause of action

### D. Plaintiff Failed to Adequately Allege Certain Tort Actions

The City moved to dismiss Plaintiff's third cause of action (intentional interference with prospective economic relations), fifth action (intentional infliction of emotional distress), and sixth cause of action (negligence), because those claims are not viable against the City. Opening Br. 17–19. Plaintiff does not dispute the City's arguments. Opp'n 18–19. Plaintiff argues that the statutory basis for each of these claims is California Government Code section 815.2(a). *Id*. But citing to Section 815.2(a) is not enough to allege viable causes of action. Plaintiff must allege more than just formulaic and conclusory allegations in order to state viable claims. The Court should require Plaintiff to amend these causes of action, if they are not dismissed with prejudice for other reasons, and provide specific factual allegations.

///
///
///
///
///
///

# CONCLUSION

This Court should grant the City's motion to dismiss Plaintiff's FAC in its entirety without leave to amend. If the Court is inclined to grant Plaintiff leave to amend, the City requests that the Court caution Plaintiff about vague and conclusory allegations.

Dated: October 6, 2023

                DAVID CHIU
                City Attorney
                JAMES F. HANNAWALT
                Acting Chief Trial Deputy
                THOMAS S. LAKRITZ
                Deputy City Attorney


By: */s/ Thomas S. Lakritz*
      THOMAS S. LAKRITZ

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO; WILLIAM HUGHEN; KEVIN BIRMINGHAM; NATALIA FOSSI (ERRONEOUSLY SUED AS NATALIA KWAITKOWSKA); MAURICIO HERNANDEZ; and JOE DUFFY