1   DAVID CHIU, State Bar #189542
    City Attorney
2   JENNIFER E. CHOI, State Bar #184058
    Chief Trial Deputy
3   HUNTER W. SIMS III, State Bar #266039
    RENÉE E. ROSENBLIT, State Bar #304983
4   Deputy City Attorneys
    Fox Plaza
5   1390 Market Street, Sixth Floor
    San Francisco, California 94102-5408
6   Telephone:      (415) 554-4259 [Sims]
                    (415) 554-3853 [Rosenblit]
7   Facsimile:      (415) 554-3837
    E-Mail:         hunter.sims@sfcityatty.org
8                   renee.rosenblit@sfcityatty.org

9
    Attorneys for Defendants
10  CITY AND COUNTY OF SAN FRANCISCO;
    WILLIAM HUGHEN; KEVIN BIRMINGHAM; NATALIA FOSSI
11  (ERRONEOUSLY SUED AS NATALIA KWAITKOWSKA);
    MAURICIO HERNANDEZ; and JOE DUFFY
12

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15  PATRICK GALLAGHER,                      | Case No. 23-cv-03579-SI (JCS)

16          Plaintiff,                      | **DECLARATION OF MAURICIO
                                            | HERNANDEZ IN SUPPORT OF
17          vs.                             | DEFENDANTS' MOTION FOR SUMMARY
                                            | JUDGMENT (Fed. R. Civ. P. 56)**
18  CITY AND COUNTY OF SAN
    FRANCISCO, BERNARD CURRAN,              | Hearing Date:   December 5, 2025
19  RODRIGO SANTOS, WILLIAM HUGHEN,         | Time:           10:00 a.m.
    KEVIN BIRMINGHAM, NATALIA               | Place:          Videoconference
20  KWAITKOWSKA, AND JOE DUFFY,
                                            | Trial Date:     February 17, 2026
21          Defendant.

22

23

24

25

26

27

28

## DECLARATION OF MAURICIO HERNANDEZ

I, Mauricio Hernandez, declare as follows:

1.  I am over the age of eighteen and I have personal knowledge of the matters stated in this declaration, unless otherwise stated. If called upon to testify, I could and would testify competently to the contents of this declaration.

2.  I am currently employed by the San Francisco Department of Building Inspection ("DBI"), a department of the City and County of San Francisco ("City"). I have been employed by DBI since 2013. My current title at DBI is Chief Building Inspector. I have held this position for approximately four years.

3.  I was a Chief Building Inspector during relevant time of the facts alleged in this lawsuit. At that time, I was in charge of DBI's Code Enforcement team. DBI's Code Enforcement team is divided into two sub-teams. The first sub-team is investigative in nature, in that, it will investigate complaints received from the public regarding conditions at a property within the City. The main focus of this team is for work without a permit, fire-damaged buildings and unsafe work conditions. The second sub-team is administrative in nature, in that, it will arrange for posting of any administrative hearings related to a Notice of Violation ("NOV") after a Final Warning Letter is issued. Specifically, the administrative team will handle the scheduling of Director's Hearings after an NOV is issued, recovering any penalties issued by DBI through its code enforcement efforts and serving any administrative orders issued by DBI.

4.  As the Chief Building Inspector for the Code Enforcement team, I supervised DBI Inspector Thomas Keane. I know that Inspector Kean issued NOV 202175602 on May 17, 2021. I know this because I reviewed and approved NOV 202175602 prior to it being formally issued to Plaintiff.

5.  After NOV 202175602 was issued, Plaintiff asked to speak with Inspector Keane's supervisor. I was Inspector Keane's supervisor at that time. I reviewed the permit history, the inspection history, existing NOVs and submitted plans for the Property to prepare for any conversation I may have had with Plaintiff. In addition, I reviewed a Zillow post that was advertising the Property for sale. The post listed the Property as two separate units and included photographs that appeared to

show the Property having two kitchens. The advertisement I viewed was inconsistent with internal DBI records showing that the Property was a single family home.

6.  I spoke with Plaintiff at some point between May 17 and June 1, 2021. I explained to Plaintiff DBI's general code enforcement process. I also suggested that we meet at the Property so that the conditions onsite could be confirmed. Specifically, I wanted to understand whether or not the construction at the Property was consistent with the approved plans associated with the underlying permit application, identified as PA 201810183586.

7.  It is important for general contractors and property owners to follow the plans that are submitted to DBI. This way, DBI can ensure that any construction related activities conducted in the neighborhoods of San Francisco is done in a safe and workmanlike manner.

8.  I scheduled a meeting with Plaintiff at the Property on June 3, 2021. DBI Inspector Thomas Keane accompanied me to the meeting. No other City employees were present.

9.  Based on the issues observed by Inspector Keane and myself, I amended NOV number 202175602 on June 8, 2021 to reflect the issues observed during the meeting. The issues are fully described in amended NOV 202175602, but included issues with the placement of stairs, windows, ceiling heights and other issues that were not constructed pursuant to plans and were in violation of San Francisco Building Code sections 103A and 106.4.7. In effect, the NOV was for performing work that exceeded the scope of the approved permit, PA 201810183586.

10.  I found the issues with the Property outlined in amended 202175602 to implicate serious life-safety issues. For example, the fact that Plaintiff attempted to include an additional unit at the Property would cause significant problems in the event of the fire because any first responders would be unaware that the Property had two units. In addition, the fact that the ceiling heights did not meet the minimum standards would cause access issues in the event of an emergency. Lastly, the placement of the stairs created a tripping hazard and could possibly injure anyone attempting to navigate the stairs as they existed on June 3, 2021.

11.  After I amended NOV 202175602, Plaintiff insisted on discussing the matter with the Deputy Director, who at the time was Defendant Duffy.

12.     I have reviewed I have reviewed what was marked as Exhibit 10 to the deposition of Patrick Gallagher, which is a Certificate of Completion and Occupancy purportedly signed by Bernie Curran on August 27, 2020. What I observed at the Property during my June 8, 2021 visit did not comply with the building plans submitted in connection with PA 201810183586. I know that Exhibit 10 was never submitted to DBI and that PA 201810183586 was not given final approval before June 8, 2021.

13.     In situations where a Certificate of Completion and Occupancy has been properly issued to a Property for work performed that later is determined to exceed the scope of the underly permit, a DBI inspector is authorized to issue an NOV to the owner for performing work beyond the scope of the permit.

14.     While the Certificate of Completion and Occupancy was never lodged with DBI and I was unaware one even existed, amended NOV 202175602 is effectively a violation for performing work in excess of the approved permit.

15.     On or about January 21, 2022, Senior Building Inspector Birmingham and I met Plaintiff at the Property. We did so at the request of Defendant Duffy as he had been assisting Plaintiff to abate NOV 202175602. The conditions at the Property were virtually identical to what I observed at the Property on June 1, 2021. Birmingham issued a "Corrective Notice and Report" to memorialize the conditions observed at the January 21, 2022 site visit.

13.     I recall meeting with Plaintiff on or about February 11, 2022 at my office. Birmingham attended the meeting. During the meeting, we discussed the importance of Plaintiff complying with the Correction Notice with respect to windows as described in NOV 202175602 and in the Correction Notice. In addition, we informed Plaintiff that the San Francisco Planning Department must approve any Alternative Dwelling Unit he wished to add to the Property.

14.     I do not recall being involved in the project at the Property following the February 11, 2022 meeting at my office.

15.     At the time of the above described events, Defendant Joe Duffy was my supervisor at DBI. At no time did Duffy instruct or direct me to retaliate against Plaintiff in any way.

16.     I worked with Defendant Bernie Curran. Curran never supervised me. I never had anything other than a professional relationship with Curran. We did not socialize outside of work.

17.     I never worked with Defendant Santos. I did interact with him on occasion on various projects throughout the City. I did not work with Santos on this project. I never had anything other than a professional relationship with Santos. We did not socialize outside of work.

18.     Through this lawsuit, I learned that Plaintiff allegedly he spoke with the FBI in connection to their investigation into Bernie Curran. I was unaware that Plaintiff had been contacted by the FBI prior to arriving at the Property on June 8, 2021. While I may have received emails from Plaintiff claiming to have spoken with the FBI, I was unaware that he had done so until after the filing of this lawsuit.

///

///

///

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this __31__ day of October 2025, at San Francisco, California.

_____
MAURICIO HERNANDEZ