FILED

NOV 07 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

Patrick Gallagher
470 Coletas Way
Byron, CA 94514
(925) 325-2911
bigblockpat@gmail.com

Plaintiff, Self-Represented

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK GALLAGER,<br><br>   Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, BERNARD CURRAN, RODRIGO SANTOS, WILLIAM HUGEN, KEVIN BIRMINGHAM, NATALIA KWAITKOWSKA, and JOE DUFFY,<br><br>   Defendant(s). | Case No.: 23-cv-03579-SI<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56<br><br>Hearing Date: 12/12/2025<br>Hearing Time: 10:30 AM<br>Judge: ILLSTON<br>Place: 450 Golden Gate Ave<br>16th fl.<br>S.F. CA. 94102 |

3

MOTION FOR SUMMARY JUDGMENT

I. **INTRODUCTION**

Plaintiff Patrick Gallagher is a private citizen and developer who engaged in protected speech by reporting alleged corruption and misconduct within the San Francisco Department of Building Inspection (SFDBI) to federal investigators. In retaliation, SFDBI officials revoked valid permits, issued baseless violations, and repeatedly obstructed Gallagher's property sales—actions that violate the First Amendment and give rise to liability under 42 U.S.C. § 1983. Summary judgment is appropriate because there is no genuine dispute of material fact: the retaliation was targeted, unlawful, and constitutionally prohibited.

In 2018, Plaintiff, Patrick Gallagher ("Gallagher"), through his trust, purchased a single-family home located at 200 Naples Street in San Francisco with the intention of renovating and selling it. Second Amended Compl. ("SAC") Id. ¶¶ 1, 28.

The SAC alleges that once he began renovations, Gallagher became a victim of a "pay to play fraud" perpetrated by San Francisco City building inspectors, planners, and the City, and that "after he refused to participate" in the scheme and spoke to the FBI, the City and its employees retaliated against him by "issuing and refusing to release frivolous code enforcement liens, issuing and refusing to release notices of violation, issuing and refusing to release abatement orders, revoking permits, and revoking a certificate of completion." Id. ¶ 4. Gallagher alleges that these retaliatory actions have caused the property to fall out of escrow three times and that the City's actions have amounted to an "unjustified taking." Id. The SAC names the City and County of San Francisco, ("the City"), four current and former building inspectors with the San Francisco Department of Building Inspection ("SFDBI") (Bernard Curran, Joe Duffy, Kevin Birmingham, and Mauricio Hernandez), two employees of the San Francisco Planning Department (William Hughen

[handwritten annotation: "Gallatin's - claims expired"]

and Natalia Kwaitkowska), and a structural engineer who had been a former City employee (Rodrigo Santos) as defendants.

Gallagher alleges that Building Inspector Bernard Curran told him that he needed to obtain a permit from the City in order to begin renovations, and that he needed to hire structural engineer Rodrigo Santos in order to obtain the permit. Id. ¶ 31. Even though Gallagher believed a structural engineer was not required for the renovations, Gallagher hired Santos. Id. Gallagher alleges that Santos continually delayed the project, and that after Gallagher had paid Santos $13,000 "for work that was essentially useless," he fired Santos and hired a different structural engineer who completed the work in two weeks and at a fraction of the cost charged by Santos. Id. ¶ 32. Gallagher received the permit from the City in June 2019, and he began the main renovation process. Id. ¶ 33. In August 2020, the project was completed and Curran issued Gallagher a signed certificate of completion. Id. ¶ 34. Around May 2021, Gallagher entered into an agreement to sell the property and it went into escrow. Id. ¶ 35.

[handwritten annotation: "3K IN CASH"]

The FBI contacted Gallagher about an investigation the agency was conducting into Curran and Santos about an illegal "pay to play" scheme. Id. ¶¶ 36-37. Curran was forced to resign from SFDBI as a result of the investigation. Id. ¶ 37. Building Inspectors Duffy, Birmingham, and Hernandez, and City Planners Hughen and Kwaitkowska, were "close associates" of Curran and Santos, and they "became aware and/or were under the belief" that Gallagher had spoken to the FBI about Curran and Santos. Id. ¶ 38. Gallagher alleges that SFDBI began retaliating against him when, approximately four days before escrow was scheduled to close on the property, SFDBI issued a notice of violation for an expired permit and an illegal downstairs unit. Id. ¶ 39. SFDBI "falsely claimed that the certificate of completion that Curran signed never got filed correctly and was now void" and that the entire property would need to be reinspected and approved. Id. Escrow did not close and the sale of the property fell through. Id.

Building Inspectors Birmingham and Hernandez reinspected the property and issued a notice of violation about windows on the second floor that had been in existence since the house was built and that "had already been approved twice." Id. ¶ 41. They also told Gallagher that he needed to submit an application for an additional dwelling unit and revise the plans for the property to reflect more accurately how the stairs were built. Id. During this inspection, Hernandez "sneered at Plaintiff, telling him, 'we know who you've been talking to.'" Id. Gallagher "had no choice but to comply with SFDBI's demands related to these unfound[ed] violations and submitted his applications and revised plans accordingly." Id. ¶ 42. Without cause, Birmingham then rejected the application related to the second-floor windows, now demanding that the windows needed to be closed off completely. Id. ¶ 43.

Gallagher contacted the San Francisco Board of Supervisors for help, and the Board facilitated a meeting between Gallagher and SFDBI. Id. ¶ 44. At that meeting, Gallagher "presented evidence showing that the subject property had already received a certificate of completion and that the recent demands of SFDBI were unreasonable and excessive." Id. ¶ 45. "SFDBI dismissed Plaintiff's concerns and ignored the validity of his claims, refusing to approve his plans or his applications." Id. During the meeting, Duffy also "expressed that he had no doubt that Plaintiff had spoken to the FBI concerning his dealings with Curran and Santos." Id. Gallagher had "no choice but to comply with SFDBI's demands" and he closed off the second-floor windows, spending $30,000 for the additional work. Id. ¶ 48.

In October 2021, approval of Gallagher's application for an additional dwelling unit was transferred to Senior Planner Hughen. Id. ¶ 49. Hughen, and then Principal Planner Kwaitkowska, "egregiously delayed the application for months on end, forcing Plaintiff to jump over more arbitrary hurdles." Id. While Gallagher's application for an additional dwelling unit was pending, Hughen "placed yet another baseless roadblock" in front of Gallagher: a citation that the driveway on the property was out of code and could not be used for off-street parking. Id. ¶ 50. Gallagher

6

alleges that the driveway had been in existence since the property was built and "had already been approved," and that not being able to use the driveway for parking "would place a significant limitation on the property and greatly affect its overall value." Id. Gallagher contacted the City Attorney's Office and provided Hughen with the applicable laws and ordinances showing that the driveway was code compliant. Id. Hughen "dismissed Plaintiff's pleas and demanded that he now apply for a variance." Id. Gallagher had "no choice" but to apply for a variance. His applications for the variance and the additional dwelling unit were approved in May 2022, and Gallagher received the necessary permits. Id. ¶ 51.

At that time, Gallagher entered into another agreement to sell the property and entered into escrow. Id. ¶ 52. Gallagher had not received a new certificate of completion, which negatively affected the sale price, but Gallagher needed to sell the property and was "willing to do so at a discount." Id.

In July of 2022, while the property was still in escrow, SFDBI informed Gallagher that his permits for the additional dwelling unit and the driveway were being revoked. Id. ¶ 53. SFDBI "falsely claimed that the City's Planning Department had mistakenly provided him these permits and that he needed approval from SFDBI as it was within their purview." Id. Gallagher was told he needed to submit new applications and new revised plans, and that he needed to go through the entire process again. Id. The sale of the property fell through a second time. Id.

Approximately six months later in January 2023, "after another long, arbitrary, and arduous process," the City issued new permits for the additional dwelling unit and the driveway. Id. ¶ 54. Additional inspections were required in order to obtain a final certificate of completion, and "[a]lthough Plaintiff possesses valid permits, inspections have led to new, unfound, and vindictive violations concerning, among other things, the legality of the windows located on the first floor of the property." Id. ¶ 55.

In February 2023, Gallagher entered into another agreement to sell the property, again at a discount because he lacked a certificate of completion. Id. ¶ 56. "Due to the numerous abatements and notices of violation that remain on the property, the sale fell through in or around August 2023." Id. Gallagher alleges that the City had intentionally and vindictively drawn out the renovation process, and that as a result, he has lost a significant amount of money in lost profits, lost income, lost interest, expenditures for unnecessary repairs, and increased taxes, and he has suffered severe emotional distress, and irreparable harm to his reputation. Id. ¶ 57.

///

## II. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing there is no genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat the motion for summary judgment, the responding party must present admissible evidence sufficient to establish any of the elements that are essential to the moving party's case and for which that party will bear the burden of proof at trial. See id.; Taylor v. List, 880 F. 2d 1040, 1045 (9th Cir. 1989). The Court may grant summary judgment if the motion and supporting materials, including the facts considered undisputed, show the movant is entitled to summary judgment and if the responding party fails to properly address the moving party's assertion of fact as required by Rule 56(c). See Fed. R. Civ. P. 56(e).

The responding party cannot point to mere allegations or denials contained in the pleadings. It is not enough for the non-moving party to produce a mere "scintilla" of evidence. Celotex Corp., at 252. Instead, the responding party must set forth, by affidavit or other admissible evidence,

specific facts demonstrating the existence of an actual issue for trial. See *KRL v. Moore*, 384 F. 3d 1105, 1110 (9th Cir. 2004).

### III. ARGUMENT

### DEFENDANTS RETALIATED AGAINST GALLAGHER FOR EXCERCISING FIRST AMENDMENT PROTECTED SPEECH AFTER HE SPOKE WITH THE F.B.I. CONCERNING CORRUPTION AT S.F.D.B.I. RELATED TO DEFENDANT CURRAN IN VIOLATION OF HIS CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983

#### A. Legal Standard

To establish a claim for First Amendment retaliation under § 1983, a plaintiff must show:

1. They engaged in constitutionally protected speech.
2. The government took adverse action against them.
3. The protected speech was a substantial or motivating factor for the adverse action.

Once established, the burden shifts to the government to demonstrate it would have taken the same action irrespective of the speech. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

This framework applies to private citizens alleging retaliation by municipal officials, especially when the retaliation involves land use, permit decisions, or regulatory obstruction. See *Del Monte Dunes v. City of Monterey*, 526 U.S. 687, 704–05 (1999) (affirming Ninth Circuit holding that repeated permit denials in retaliation for developer's speech violated constitutional rights); *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

#### B. Gallagher Engaged in Protected Speech

Gallagher's communications with federal law enforcement officials about misconduct and corruption within SFDBI, and specifically Defendant Curran, as well as his public criticism of departmental practices, qualify as protected speech under the First Amendment. This speech addressed matters of public concern: municipal corruption and abuse of regulatory authority.

The Ninth Circuit has held that even business-related complaints about agency conduct are protected. See *Sorrano's Gasco*, 874 F.2d at 1314 (holding that a business owner's grievance filings and regulatory criticisms were "clearly protected"). Similarly, in *Del Monte Dunes*, a private developer's appeals and challenges to permit denials were constitutionally protected.

### C. The City Took Adverse Action Against Gallagher

After Gallagher engaged in protected speech, SFDBI:

Revoked nine valid permits,

Issued meritless violations,

Harassed real estate agents and potential buyers,

Caused multiple escrows to collapse.

These actions inflicted substantial financial and reputational harm on Gallagher and would deter a reasonable person from engaging in similar speech. This qualifies as adverse governmental action under Ninth Circuit precedent. See *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003); *Sorrano's Gasco*, 874 F.2d at 1314–15.

### D. The Retaliation Was Motivated by Protected Speech

The timeline of events is compelling: Gallagher spoke to the FBI; days later, permits were revoked, and violations began. Inspectors made remarks such as "we know who you've been talking to"—indicating awareness and retaliatory intent.

Such circumstantial evidence is sufficient under Ninth Circuit law. See *Allen v. Scribner*, 812 F.2d 426, 434 (9th Cir. 1987) (retaliatory motive may be inferred from timing and conduct); *Coszalter*, 320 F.3d at 978.

In *Del Monte Dunes*, the Ninth Circuit upheld similar retaliation claims based on a pattern of denials following the developer's protected appeals and statements.

### IV. CONCLUSION

Gallagher's speech to the FBI concerning Defendant Curran was protected. SFDBI responded with adverse action. The record clearly supports the inference that the retaliation was motivated by that speech. Under *Mt. Healthy* and controlling Ninth Circuit authority, Plaintiff is entitled to summary judgment on his First Amendment retaliation claim under § 1983.

Respectfully submitted,

By: /s/ Patrick Gallagher
Patrick Gallagher
Plaintiff, Self-Represented
470 Coletas Way
Byron, CA 94514
(925) 325-2911
bigblockpat@gmail.com

## DECLARATION OF PLAINTIFF PATRICK GALLAGHER

I, Patrick Gallagher, declare as follows:

1. I am the Plaintiff in this action. I am over the age of 18 years. I have personal knowledge of the facts contained in this declaration, and of called as a witness could and would testify competently to the facts as stated herein.

**Background & Permit History**

2. I purchased the property located at 200 Naples Street, San Francisco, in 2018, intending to renovate and sell it.

3. I obtained all required permits from the San Francisco Department of Building Inspection (SFDBI). After completing renovations, SFDBI issued a Certificate of Final Completion in August 2020. A true and correct copy of the Certificate of Completion is attached hereto as **Exhibit-A.**

**Protected Speech & Whistleblower Activity**

4. In May 2021, I spoke with the FBI regarding corruption inside SFDBI, specifically a "pay-to-play" scheme by Defendant Curran and misuse of inspection power.

5. Shortly after that, SFDBI began taking retaliatory actions against me.

**Retaliatory Conduct by SFDBI**

6. SFDBI changed several of my building permit records which were "completed" to "expired" without legitimate cause. A true and correct copy of the permits changed from completed to expired, and tax assessors worksheet are attached hereto as **Exhibits-B, and D** respectively.

7. I then received multiple violation notices that I believe were unwarranted and intended to cause disruption. A true and correct copy of Violation Notices is attached hereto as **Exhibit-C.**

8. Inspectors visited my property during open houses and made comments that suggested retaliation. Defendant Hernandez stated: "We know who you've been talking to" in reference to my discussions with the FBI.

**Financial Harm from Retaliation**

9. Because of these actions, I lost at least three pending sales—the escrows were canceled after SFDBI's interference. True and correct copies of Escrow Cancellation Documents are attached hereto as **Exhibits E-1 to E-3.**

10. The total financial damage exceeds $4,375,000.00 , including lost sale value, legal expenses, and holding costs.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct and that this declaration is executed on December 4, 2025, at Byron, California.

*[signature]*
Patick Gallagher

## CERTIFICATE OF SERVICE

I, **(name)**, hereby certify that I am employed by **(name)** and am of such age and discretion as to be competent to serve papers.

I further certify that on this date I caused a copy of Plaintiff's Motion for Summary Judgment, Memorandum of Points & Authorities in Support of Motion for Summary Judgment, and Declaration of Patrick Gallagher in Support of Motion for Summary Judgment to be placed in a postage-paid envelope addressed to the defendant, Bernard Curran, at the address stated below, which is the last known address of said defendant, and deposited said envelope in the United States mail.

Addressee: Bernard Curran

27 Escondido Ave
San Francisco, CA 94132-1326

Additional service of the foregoing was made by United States mail to the following:

Addressee: David Chiu, City Attorney
Jennifer Choi, Chief Trial Deputy
Hunter W. Sims III, Deputy City Attorney
Fox Plaza 1390 Market Street, Sixth Floor
San Francisco, California 94102-5408

Attorneys for City and County of San Francisco; William Hughen; Kevin Birmingham; Natalia Fossi (Erroneously sued as Natalia Kwaitkowska); Mauricio Hernandez; and Joe Duffy

Dated this ___6th___ day of ___November___, 2025

_[signature]_