1  DAVID CHIU, State Bar #189542
   City Attorney
2  JENNIFER E. CHOI, State Bar #184058
   Chief Trial Deputy
3  HUNTER W. SIMS III, State Bar #266039
   RENÉE E. ROSENBLIT, State Bar #304983
4  Deputy City Attorneys
   Fox Plaza
5  1390 Market Street, Sixth Floor
   San Francisco, California 94102-5408
6  Telephone:     (415) 554-4259 [Sims]
                  (415) 554-3853 [Rosenblit]
7  Facsimile:     (415) 554-3837
   E-Mail:        hunter.sims@sfcityatty.org
8                 renee.rosenblit@sfcityatty.org

9
   Attorneys for Defendants
10 CITY AND COUNTY OF SAN FRANCISCO;
   WILLIAM HUGHEN; KEVIN BIRMINGHAM; NATALIA FOSSI
11 (ERRONEOUSLY SUED AS NATALIA KWAITKOWSKA);
   MAURICIO HERNANDEZ; and JOE DUFFY
12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15 PATRICK GALLAGHER,                      Case No. 23-cv-03579-SI (JCS)

16        Plaintiff,                       **DEFENDANTS CITY AND COUNTY OF SAN
                                           FRANCISCO, WILLIAM HUGHEN, KEVIN
17        vs.                              BIRMINGHAM, NATALIA FOSSI,
                                           MAURICIO HERNANDEZ AND JOE DUFFY'S
18 CITY AND COUNTY OF SAN                  OPPOSITION TO PLAINTIFF'S MOTION
   FRANCISCO, BERNARD CURRAN,              FOR SUMMARY JUDGMENT**
19 RODRIGO SANTOS, WILLIAM HUGHEN,
   KEVIN BIRMINGHAM, NATALIA               Hearing Date:    December 19, 2025
20 KWAITKOWSKA, AND JOE DUFFY,             Time:            10:00 a.m.
                                           Place:           Videoconference
21        Defendant.
                                           Trial Date:      February 17, 2026
22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................3

INTRODUCTION ............................................................................................6

FACTUAL BACKGROUND ...............................................................................7

I.     PLAINTIFF PURCHASES THE PROPERTY WITH EXISTING NOVS ...........7

II.    PLAINTIFF OBTAINS BUILDING PERMITS THEN BEGINS WORK THAT EXCEEDS THE SCOPE OF THOSE PERMITS AND RESULTS IN COMPLAINTS FROM THE PUBLIC ...........................................................7

III.   PLAINTIFF'S RETALIATION CLAIM ...............................................9

    A.    Plaintiff's DBI Based Retaliation Theory ...................................10

        1.    Evidence Related to Duffy's Supervisorial Liability ...................10

        2.    Evidence Related to the Certificate of Completion ......................10

        3.    Evidence Related to NOV 202175602 ...........................................12

    B.    Plaintiff's Planning Based Retaliation Theory ...........................13

SUMMARY JUDGMENT STANDARD .................................................................15

ARGUMENT .................................................................................................16

I.     THE CITY DEFENDANTS DID NOT RETALIATE AGAINST PLAINTIFF ..16

II.    THE CITY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ..20

III.   PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE THERE ARE DISPUTED ISSUES OF FACT TO HIS DAMAGES CLAIMS .........................23

CONCLUSION ..............................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Federal Cases**

*Allen v. Schribner*
   812 F.2d 426 (9th Cir. 1987) ................................................................22

3

4

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986) ................................................................16

5

6

*Ashcroft v. al-Kidd*
   563 U.S. 731 (2011) ................................................................20

7

*Autotek, Inc. v. Cty. of Sacramento*
   2020 WL 4059564 (E.D. Cal. July 20, 2020) .............................16, 20, 21

8

9

*Blair v. Bethel Sch. Dist.*
   608 F.3d 540 (9th Cir. 2010) ................................................................16

10

*Blankenhornv. City of Orange*
   485 F.3d 463 (9th Cir. 2007) ................................................................18

11

12

*Brosseau v. Haugen*
   543 U.S. 194 (2004) ................................................................20

13

*Butz v. Economou*
   438 U.S. 478 (1978) ................................................................20

14

15

*Capp v. Cty. of San Diego*
   940 F.3d 1046 (9th Cir. 2019) ................................................................16

16

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986) ................................................................17

17

18

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*
   526 U.S. 687 (1999) ................................................................22

19

*City of Newport v. Fact Concerts, Inc.*
   453 U.S. 247 (1981) ................................................................24

20

21

*Hartman v. Moore*
   547 U.S. 250 (2006) ................................................................17

22

23

*Haynie v. Cty. of Los Angeles*
   339 F.3d 1071 (9th Cir. 2003) ................................................................20

24

*Hernandez v. Spacelabs Med. Inc.*
   343 F.3d 1107 (9th Cir. 2003) ................................................................18

25

26

*Hunter v. Bryant*
   502 U.S. 224 (1991) ................................................................20

27

28

*Johnson v. Feist*
    2020 WL 6121981(C.D. Cal. Sep. 8, 2020) ................................................................19

*Lew v. Kona Hosp.*
    754 F.2d 1420 (9th Cir. 1985) ................................................................17

*Lindy Pen Co. v. Bic Pen Corp.*
    982 F.2d 1400 (9th Cir. 1993) ................................................................23

*LSO, Ltd. v. Stroh*
    205 F.3d 1146 (9th Cir. 2000) ................................................................20

*Malley v. Briggs*
    475 U.S. 335 (1986)................................................................20

*Merrick v. Farmers Ins. Group*
    892 F.2d 1434 (9th Cir. 1990) ................................................................19

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*
    429 U.S. 274 (1977)................................................................16, 23

*Mullenix v. Luna*
    577 U.S. 7 (2015)................................................................20

*Nieves v. Bartlett*
    139 S. Ct. 1715 (2019)................................................................17

*Nunez v. City of Los Angeles*
    147 F.3d 867 (9th Cir. 1998) ................................................................19

*Pearson v. Callahan*
    555 U.S. 223 (2009)................................................................20

*Romero v. Kitsap Cty.*
    931 F.2d 624 (9th Cir. 1991) ................................................................20

*Sanders v. City and Cnty. of San Francisco*
    226 Fed. Appx. 687 (9th Cir. 2007)................................................................19

*Saucier v. Katz*
    533 U.S. 194 (2001)................................................................20

*Scott v. Harris*
    550 U.S. 372 (2007)................................................................16

*SunEarth, Inc. v. Sun Earth Solar Power Co.*
    839 F.3d 1179 (9th Cir. 2016) ................................................................23

*Taylor v. List*
    880 F.2d 1040 (9th Cir. 1989) ................................................................18

*White v. Pauly*
137 S. Ct. 548 (2017) ..........................................................................................................20

*Zahra v. Town of Southold*
48 F.3d 674 (2d Cir. 1995) ...............................................................................................21

**Federal Statutes**
42 U.S.C. §1983 ...............................................................................................................6, 24

**San Francisco Statutes, Codes & Ordinances**
San Francisco Building Code § 104A.2.1 ...........................................................................21

San Francisco Building Code § 106A.4.5 ...........................................................................21

San Francisco Planning Code § 134 ...................................................................................14

San Francisco Planning Code § 136 ...................................................................................14

San Francisco Planning Code § 176 ...................................................................................21

**Rules**
Federal Rule of Civil Procedure 56 ...............................................................................15, 18

**INTRODUCTION**

Plaintiff Patrick Gallagher sues the City and County of San Francisco ("City"), Joe Duffy, the former Deputy Director of the Department of Building Inspection ("DBI"), Kevin Birmingham, a Chief Building Inspector of DBI, Mauricio Hernandez, a Chief Building Inspector of DBI, Natalia Fossi (formerly Kwiatkowska), a Deputy Zoning Administrator at the City's Department of Planning ("Planning Department"), and William Hughen, a former Planner II with the Flex Team of the Planning Department ("Hughen") (collectively "City Defendants"), alleging of a vast conspiracy on the part of the City Defendants to unnecessarily obstruct and delay his construction project located at 200 Naples Street (the "Property"). Plaintiff's retaliation claims stem from an alleged interview by a Federal Bureau of Investigations ("FBI") agent of Plaintiff as part of an investigation into criminal conduct by Defendants Rodrigo Santos and Bernard Curran. Plaintiff believes the City Defendants retaliated against him for his participation in the FBI investigation because they were work colleagues with Santos and Curran.

Plaintiff's Motion for Summary Judgment should be denied.[1] First, Plaintiff's Motion fails to establish a Constitutional violation by the City Defendants. Plaintiff fails to meet the evidentiary burden to grant summary judgment because Plaintiff simply repeats statements made in the Second Amended Complaint ("SAC") that lack factual support. What is left is a sparce declaration by Plaintiff that generally alleges misconduct by "SFDBI" without pointing to specific retaliatory acts by the City Defendants. Further, the alleged statement that Hernandez knew who Plaintiff was talking to is a stray remark and not actionable under 42 U.S.C. section 1983. This is especially so since Hernandez was unaware Plaintiff spoke with the FBI until this lawsuit and Plaintiff was the only source of his alleged interview. Ultimately, the undisputed facts show that the City Defendants had cause to issue Notices of Violation ("NOV") or deny Plaintiff's parking application that was in clear contradiction to the City's Building and Planning Codes respectively. Second, even if Plaintiff has presented sufficient evidence to establish a retaliation claim, the City Defendants are entitled to qualified immunity. Lastly, there are

---

[1] Plaintiff's Motion does not mention his *Monell* claim. As is argued in the City Defendants' Motion for Summary Judgment, Plaintiff's *Monell* claim fails as a matter of law. *See* Dkt. No. 106. The City Defendants incorporate by reference the arguments made in support of the City Defendant's Motion for Summary Judgment regarding the *Monell* claim.

disputed issues of material fact related to Plaintiff's damages claim that prevent summary judgment in favor of Plaintiff.

**FACTUAL BACKGROUND**

**I.      PLAINTIFF PURCHASES THE PROPERTY WITH EXISTING NOVS**

Plaintiff is a retired construction professional who previously worked for various construction companies. Declaration of Hunter W. Sims III ("Sims Decl.") Ex. A, Deposition of Plaintiff Patrick Gallagher ("Plaintiff Dep.") 11:24–15:2. Plaintiff retired in 2010. Plaintiff Dep. 13:1–4. During his career, he had limited experience in residential remodels. Plaintiff Dep. 17:15–20; 25:6–21. Plaintiff worked on three residential projects during the course of his career. *Id*. Notwithstanding, he started a trust shortly before his retirement to renovate residential properties for sale. Plaintiff Dep. 20:7–23:2.

Plaintiff purchased the Property in May 2018. Plaintiff Dep. 24:17–21. At that time, there were two outstanding NOVs at the property. Declaration of Matthew Greene ("Greene Decl.") Exs. A, B. The first NOV, number 201644272, was issued by DBI inspector James Lawrine on September 11, 2017. Greene Decl. Ex. A. NOV number 201644272 was issued due to a dilapidated roof, a lack of weather proofing around the home, and trash in the front yard, and was not abated until October 23, 2024. *Id.* The second NOV, number 201721241, was issued by DBI inspector Carl Weaver on January 5, 2018. Greene Decl. Ex. B. NOV number 201721241 was issued due to the Property being unsafe due to a lack of guardrails and weatherization on the rear deck and was not abated until October 24, 2024. *Id.*

**II.     PLAINTIFF OBTAINS BUILDING PERMITS THEN BEGINS WORK THAT EXCEEDS THE SCOPE OF THOSE PERMITS AND RESULTS IN COMPLAINTS FROM THE PUBLIC**

Plaintiff obtained two permits with DBI for the Property on the same day, August 10, 2018. Greene Decl. Exs. C, D. The first permit application ("PA") was identified by DBI as number 201808107075. Greene Decl. Ex. C. According to PA number 201808107075, Plaintiff sought to replace the Property's roof and gutters and to abate NOV number 201644272. Greene Decl. Ex. C. The second PA, number 201808107063, was to replace the "kitchen and bath cabinets, paint, drywall, flooring and to comply with violation notice 201721241." Greene Decl. Ex. D.

In short order, Plaintiff was cited by DBI for performing work that was beyond the scope of PAs 201808107075 and 201808107063. DBI Inspector Philip Saunders issued NOV 201895477 on October 3, 2018. Greene Decl. Ex. E. NOV 201895477 noted that the Property was undergoing significant construction that went beyond what was described in PAs 201808107075 and 201808107063. *Id.* The NOV also noted significant amounts of trash in the backyard and that the work conducted at the Property required approval from the San Francisco Planning Department ("Planning"), which had not been given. *Id.* Plaintiff then obtained PA number 201810183586 from DBI on October 25, 2018 to comply with NOV 201895477. Greene Decl. Ex. G. In addition, PA 201810183586 sought to perform structural strengthening at the Property, removing and replacing the floor framing, remove one dormer and add two dormers on each side, and to perform demolition inside the second-floor laundry room. *Id.*

Defendant Bernie Curran drafted a Certificate of Final Completion and Occupancy ("CFC") for PA 201810183586 on August 27, 2020. Sims Decl. Ex. K, Plaintiff Dep. Ex. 10. However, the CFC was registered into the internal DBI system as a "pre-final" inspection. Greene Decl. ¶ 19, Ex. H. Notably, there is no entry for the Certificate of Completion on August 27, 2020 in DBI's internal complaint tracking system. *Id.* Therefore, DBI never recognized the CFC issued by Defendant Curran as valid. *Id.* Even if it were so recognized, the CFC would only cover work associated with PA 201810183586 and not any of the other NOVs or permits associated with the Property. *Id.*

DBI received a number of complaints from the public regarding the manner of construction being performed at the Property that fell short of the need to issue an NOV. For example, DBI received a complaint on November 5, 2018 stating that work was being done at the Property in a "dangerous manner" and without permits. Greene Decl. Ex. I. DBI inspectors investigated the complaint and referred the matter to the City's Department of Public Works. *Id.* DBI received a complaint for the Property on November 27, 2018. Greene Decl. Ex. J. That complaint concerned work being performed at the Property throughout the night and that the construction site was untidy. *Id.* The complaint was closed the next day after a DBI investigator was able to confirm the trash at the work site had been substantially removed. *Id.*

///

### III.    PLAINTIFF'S RETALIATION CLAIM

Plaintiff's retaliation is based on speculation and conjecture and is devoid of any factual basis. The crux of Plaintiff's retaliation claim is that the City Defendants acted in concert to retaliate against him due to his alleged participation in an FBI investigation of Curran and Santos by the FBI. Plaintiff Dep. 60:4–11, 62:4–13, 64:1–7; *see generally* Second Amended Complaint ("SAC"), Dkt. No. 28. Plaintiff contends that after he spoke with an FBI agent about Defendants Curran and Santos, the "rumor mill" started and since all the City Defendants "work in the same office" they conspired to retaliate against him. *Id.*; Plaintiff Dep. 52:17–53:3, 70:9–71:25, 74:15–21, 88:20–95:23.

Plaintiff alleges the conspiracy was led by Duffy, who he believes is a high ranking DBI employee. Plaintiff Dep. 64:23–71:2. Plaintiff testified of his belief that Duffy directed Birmingham, Hernandez, Hughen, and Fossi to delay Plaintiff's construction project at the Property. Plaintiff Dep. 66:20–67:21. This is partly based on Plaintiff's assumption that Duffy has the authority to direct Planning employees. *Id.* Plaintiff believes that a reason that Duffy retaliated against him "could be" that Plaintiff was speaking with the FBI or that he had a bad reputation. Plaintiff Dep. 153:1–11. Plaintiff does not know when Duffy learned that Plaintiff was interviewed by the FBI, but presumes it was when Defendant Curran was indicted. Plaintiff Dep. 154:9–14.

The alleged conspiracy began in May or June 2021, after Plaintiff spoke with the FBI. Plaintiff's Dep. 134:19–136:4. Plaintiff does not believe the City Defendants retaliated against him before his interview with the FBI. *Id.* The alleged conspiracy manifested itself across two City departments—DBI and Planning. Plaintiff alleges employees from both departments took direction from Duffy. Plaintiff either does not believe or does not know whether the alleged retaliation would have occurred without Duffy's involvement. Plaintiff Dep. 69:10–23.

Plaintiff testified that the motivation of the City Defendants to retaliate was because they were "close associates" with Curran. Meaning, the City Defendants "all work in the same office" and that "once a rumor gets circulated in that building … you're sunk." Plaintiff Dep. 70:9–71:25, 74:15–21, 88:20–91:23, 94:23–95:23.

However, there was little to no relationship between the City Defendants, Curran, and Santos. Declaration of Joe Duffy ("Duffy Decl.") ¶¶ 14–15; Declaration of Kevin Birmingham ("Birmingham

Decl.") ¶¶ 20–21; Declaration of Mauricio Hernandez ("Hernandez Decl.") ¶¶ 19–20; Declaration of Natalia Fossi ("Fossi Decl.") ¶¶ 18–19; Declaration of William Hughen ("Hughen Decl.") ¶¶ 18–19. Fossi and Hughen did not know Curran at all and did not work with him on the Property, much less have a personal relationship. Fossi Decl. ¶ 18; Hughen Decl. ¶ 18. Similarly, Duffy, Hernandez and Birmingham did not have a personal relationship with Curran. Duffy Decl. ¶ 14; Birmingham Decl. ¶ 20; Hernandez ¶ 19. Plaintiff concedes that he does not know whether or not Birmingham or Curran are close associates. Plaintiff Dep. 90:16–91:8.

### A.    Plaintiff's DBI Based Retaliation Theory

There are three main categories of retaliation Plaintiff alleges were carried out by DBI. The first is Plaintiff's general allegation that Duffy directed the other City Defendants to delay his project. SAC ¶¶ 38, 45, 46–47; Plaintiff Dep. 64:23–66:3, 158:1–21. The second is an allegation that Duffy altered the CFC he received from Curran so that it was "expired." Plaintiff Dep. 155:9–156:3. The third is that Birmingham and Hernandez unreasonably amended an existing NOV, number 202175602, on June 8, 2021.  SAC ¶¶ 41, 43. Each category is discussed below.

### 1.    Evidence Related to Duffy's Supervisorial Liability

Plaintiff alleges that a reason that Duffy retaliated against him "could be" that Plaintiff was speaking with the FBI or that he had a bad reputation. Plaintiff Dep. 153:1–11. Plaintiff does not know when Duffy learned that Plaintiff was interviewed by the FBI, but presumes it was when Defendant Curran was indicted. Plaintiff Dep. 154:9–14. Criminal charges were brought against Defendant Curran on August 20, 2021. Decl. Sims Ex. T; RJN. However, Duffy did not learn that Plaintiff had any connection to the FBI's investigation into Curran until Plaintiff told Duffy. Duffy Decl. ¶ 12.

Duffy never directed either Fossi, Hughen, Birmingham, or Hernandez to retaliate against Plaintiff in any way. Duffy Decl. ¶ 10; Fossi Decl. ¶ 17; Hughen Decl. ¶ 17; Birmingham Decl. ¶ 19; Hernandez Decl. ¶ 18. Duffy never supervised Fossi or Hughen and they never worked with Duffy in any capacity related to the Property. Fossi Decl. ¶ 17; Hughen Decl. ¶ 17; Duffy Decl. ¶ 11.

### 2.    Evidence Related to the Certificate of Completion

Plaintiff alleges that Duffy altered a CFC he received from Curran from "completed" to noting that the underlying permit for the CFC was "expired." Plaintiff Dep. 155:9–156:3. The CFC Plaintiff

alleges was altered was for permit application number 201810183586 signed by Curran on August 27, 2020. Sims Decl. Ex. K. The CFC described the construction as, "To Comply with NOV 201895477. Structural strengthening to include removing + replacing floor framing. Remove 1(E) dormer. Add 2 New dormers on each side. Demo (E) laundry @ 2nd floor." *Id*. The CFC then states that the "construction described above has been completed and, effective as of the date the building permit was filed." *Id*. The CFC concludes with instructing Plaintiff that "[b]efore making any changes to the structure in the future, please contact the Department of Building Inspection." *Id*.

By way of background, once DBI receives a permit application or a complaint, it creates a data entry system for every permit application and complaint. Greene Decl. ¶ 9. Every time a DBI employee works on either a permit application, permit, or complaint, the employee is required to enter a summary of their work into DBI's database. *Id*. When an employee enters information into the database, the employee's name is reflected next to the entry. *Id*. Data entries may not be edited once they are entered into the database. In addition, if another DBI employee updates or supplements the data entry of another DBI employee, that change is reflected in the database. *Id*.

While Curran provided Plaintiff the CFC, it was registered into DBI's tracking system as a "pre-final" inspection. Greene Decl. ¶ 19. In fact, DBI's internal tracking system has no entry for August 27, 2020. For these reasons, the CFC Curran provided Plaintiff was never recognized by DBI as a valid CFC. *Id*. Further, even if the CFC had been entered into DBI's system as a "final" inspection, it would have only covered work done to abate NOV 201895477 and not any of the other NOVs outlined above or below. *Id*. Specifically, the CFC would not have abated any NOV occurring after August 27, 2020. *Id*.

Plaintiff's basis for his "alteration" theory is the alleged alteration must have come from someone in a leadership position at DBI and Duffy held a leadership position. Plaintiff Dep. 156:4–17. Plaintiff concedes that his theory is "circumstantial." Plaintiff Dep. 156:18–22, 158:1–6. Plaintiff does not know when Duffy learned he had spoken with the FBI. Plaintiff Dep. 153:1–21. Nonetheless, Plaintiff believes Duffy's part in the retaliation began "because why would he claim [the CFC] never got filed correctly[.]" Plaintiff Dep. 154:19–20.

///

However, Duffy never changed anything related to Plaintiff's CFC and only learned of its existence from speaking with Plaintiff. Duffy Decl. ¶ 9; Declaration of Mark Langan ("Langan Decl.") ¶ 11, Ex. A. Had Duffy altered how the CFC was entered into DBI system, DBI's internal tracking system would reflect the change. Greene Decl. ¶ 9. There is no evidence from DBI's internal tracking system that the CFC had been entered as a "final" inspection by Curran or any other DBI employee. *Id.*; Langan Decl. ¶ 11, Ex. A.

### 3.     Evidence Related to NOV 202175602

DBI inspector Thomas Keane inspected the Property on May 17, 2021. Inspector Keane issued NOV number 202175602. Greene Decl. ¶ 22, Ex. K. The nature of the violation was because the operative permit, number 201810183586, had expired. *Id.*

Hernandez was Inspector Keane's supervisor at the time NOV 202175602 was issued. Hernandez Decl. ¶ 4. Hernandez reviewed NOV 202175602 before it was issued by Inspector Keane. *Id.* Once NOV 202175602 was issued, Plaintiff requested to speak with Inspector Keane's supervisor. Hernandez Decl. ¶ 5. In anticipation of speaking with Plaintiff, Hernandez reviewed a Zillow post advertising the Property for sale. Hernandez Decl. ¶ 5. The post listed the Property as two separate units and included photographs that appeared to show the Property having two kitchens. *Id.* The description of the Zillow post was inconsistent with internal DBI records showing the Property as a single-family home. *Id.*

Hernandez spoke with Plaintiff at some point between May 17 and June 1, 2021. Hernandez Decl. ¶ 6. Hernandez explained DBI's general enforcement process to Plaintiff on the call. *Id.* Hernandez suggested that they meet at the Property to confirm conditions onsite to understand whether or not the construction at the Property was consistent with the approved plans in the underlying permit application, identified as PA 201810183586. *Id.*

Hernandez and Inspector Keane met Plaintiff at the Property on June 3, 2021. Hernandez Decl. ¶ 8. Hernandez amended NOV 202175602 on June 8, 2021 to reflect the issues observed during the meeting. Hernandez Decl. ¶ 9; Greene Decl. ¶ 23, Ex. L. The issues outlined in amended NOV 202175602 included issues with the placement of stairs, windows, ceiling heights, and other issues that were not constructed pursuant to plans and were in violation of San Francisco Building Code sections

103A and 106.4.7. *Id.* The issues outlined in amended NOV 202175602 presented serious life-safety issues pertaining to fire safety, emergency access, and tripping hazards. Hernandez Decl. ¶ 10.

The next meeting at the Property occurred on January 21, 2022. Hernandez Decl. ¶ 15; Birmingham Decl. ¶¶ 4–15. Birmingham reviewed all active permits for the Property, including PA 201810183586, NOV 202175602, and NOV 201895477 prior to the meeting. *Id.* The conditions at the Property were virtually identical to what Hernandez observed at the June 8, 2021 meeting. Hernandez ¶ 15. Birmingham issued a "Correction Notice and Report" following this meeting to document conditions that were not identified in amended NOV 202175602. Birmingham Decl. ¶ 15, Ex. B. The main issue in the Correction Notice and Report was the windows, which presented a significant fire hazard, emergency egress issues, and were inconsistent with documents signed by Plaintiff connected with the approved plans. Birmingham Decl. ¶¶ 11–17, Exs. A, B.

Plaintiff concedes that the issues outlined in amended NOV 202175602 are accurate. Plaintiff Dep. 137:22–145:1. Plaintiff agrees that the stairs leading to the third floor of the Property differed from the submitted plans in the same way that was stated in amended NOV 202175602. Plaintiff Dep. 137:4–138:8. Plaintiff agreed that there were no stairs leading from the first floor to the second floor as noted in amended NOV 202175602. Plaintiff Dep. 138:5–17. Plaintiff agreed that the addition of a mechanical closet for a furnace was not in the approved plans. Plaintiff Dep. 138:18–139:7. Plaintiff agreed the windows had been replaced. Plaintiff Dep. 139:8–11. Plaintiff mostly agreed that he had converted the first floor to an Accessory Dwelling Unit ("ADU") by adding cabinets, installing a "dummy stove," and disclosing that he will help permit the ADU. Plaintiff Dep. 139:12–140:7. Lastly, while Plaintiff quibbles with the method of measurement, he admits that the ceiling heights did not match the plans submitted in PA 201810183586. Plaintiff Dep. 141:5–143:9. He also agrees the City's Building Code requires a ceiling height of at least 7 feet 6 inches. Plaintiff's Dep. 169:14–24.

## B.     Plaintiff's Planning Based Retaliation Theory

Two of the City Defendants, William Hughen and Natalia Fossi, worked at the Planning department during the relevant times at issue here. Plaintiff Dep. 59:10–15; Hughen Decl. ¶ 1; Fossi Decl. ¶ 1. At the time of the facts underlying this lawsuit, both Hughen and Fossi were part of a unit in the Planning department called the "Flex Team." Hughen Decl. ¶¶ 1, 5; Fossi Decl. ¶ 2. This team was

a catch-all team focused on smaller projects, with a focus on unit legalization and ADUs within the City. *Id.* Hughen worked as a Planner II and was supervised by Fossi, who was the unit's Principal Planner. Hughen Decl. ¶¶ 1, 6; Fossi Decl. ¶ 7. The Planning Department, and in particular the Flex Team, receives permit applications from DBI when the submitted plans warrant review by Planning. Hughen Decl. ¶¶ 1, 4–5; Fossi Decl. ¶ 5.

Hughen was assigned to work on an application, identified as PA 202108096049, on August 26, 2021 from Plaintiff to comply with NOV 202175602. Hughen Decl. ¶ 6; Fossi Decl. ¶ 7. PA 202108096049 sought to legalize an ADU and add parking to the in the rear yard with the ADU. Hughen Decl. ¶ 7; Fossi Decl. ¶ 6. The Planning issues covered in PA 202108096049 were routine and did not require any meaningful supervision from Fossi. Fossi Decl. ¶ 8.

When Hughen reviewed the plans, he did not have an issue with legalizing the ADU. Hughen Decl. ¶ 8. However, Plaintiff's election to include a proposed curb cut and request to park in the rear yard with the ADU application was in conflict with the Planning Code. *Id.* Specifically, the Planning Code requires the rear yard to be open space per Planning Code sections 134 and 136(c)(30). *Id.* Therefore, adding a curb cut at that location is not something that could be allowed at the permit approval process. *Id.* In this circumstance, a property owner must apply for a variance from the Planning Code. *Id.* Hughen communicated this concern on September 7, 2021 when he provided Plaintiff eleven comments regarding PA 202108096049. Hughen Decl. ¶¶ 9–10, Ex. A. Hughen gave Plaintiff the option of removing the request for parking from the plans, thereby proceeding only with the legalization of the ADU, or applying for a variance from Planning Code sections 134 and 136(c)(30). Hughen Decl. ¶ 8.

Plaintiff emailed the Zoning Administrator on October 30, 2021 disputing some of Hughen's comments on PA 202108096049. Fossi Decl. ¶ 9, Ex. A. Plaintiff was particularly interested in the determination that Avalon Street is the front of the Property for purposes of Planning's review of PA 202108096049. *Id.* Fossi responded to Plaintiff's email on behalf of the Zoning Administrator on November 1, 2021. *Id.* Fossi told Plaintiff that he could request a formal written determination from the Zoning Administrator if he wished to pursue the matter further. *Id.*

///

Plaintiff filed a variance request on November 9, 2021. Hughen Decl. ¶ 11; Fossi Decl. ¶ 10; Sims Decl. Ex. P. Plaintiff's ADU permit was placed on hold pending the variance hearing as it was part of the same permit application seeking the disputed parking. Hughen Decl. ¶ 11; Fossi Decl. ¶ 10. Neither Hughen nor Fossi were involved in the variance request in any way. Hughen Decl. ¶ 12; Fossi Decl. ¶ 11. Specifically, neither Hughen nor Fossi were involved in scheduling the variance hearing. *Id.* Planning denied the variance request on July 27, 2022. Hughen Decl. ¶ 13; Fossi Decl. ¶ 12; Sims Decl. Ex. Q. Plaintiff then appealed the variance decision. Hughen Decl. ¶ 14; Fossi Decl. ¶ 13; Sims Decl. Ex. R. The Board of Appeals denied Plaintiff's appeal on August 30, 2022. Hughen Decl. ¶ 14; Fossi Decl. ¶ 13; Sims Decl. Ex. S.

Hughen had no further involvement with the project after the Board of Appeals denied Plaintiff's appeal. Hughen Decl. ¶ 15. Fossi, however, assisted Plaintiff in finalizing his ADU permits. Fossi Decl. ¶ 15. She eventually approved Plaintiff's ADU application on November 7, 2022, the same day Plaintiff submitted plans that were consistent with the Board of Appeal's decision. *Id.*

Planning and DBI are different and distinct departments within the City. Hughen Decl. ¶¶ 4, 16; Fossi Decl. ¶¶ 4, 16. While there is general overlap between the two departments when construction permits are reviewed for approval, Duffy never supervised Hughen or Fossi. Duffy Decl. ¶ 11; Hughen Decl. ¶¶ 4, 16–17; Fossi Decl. ¶¶ 4, 16–17. Neither Hughen nor Duffy worked with Joe Duffy in any meaningful capacity connected to their work at the Property. Duffy Decl. ¶ 11; Hughen Decl. ¶ 17; Fossi Decl. ¶ 17. The same is true for Defendant Curran. Neither Hughen nor Fossi ever worked with Curran at all, much less related to their work at the Property. Hughen Decl. ¶¶ 17–18; Fossi Decl. ¶¶ 17–18. Neither Hughen nor Fossi have socialized with Curran. Hughen Decl. ¶ 18; Fossi Decl. ¶ 18. Lastly, Hughen and Fossi only learned that Plaintiff allegedly spoke with the FBI because Plaintiff told them. *Id.* The fact that Plaintiff told Hughen and Fossi that he spoke with the FBI did not affect their review of Plaintiff's application in any way, nor did it cause them to act differently with respect to Plaintiff's ADU application. *Id.*

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. At summary judgment,

a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). An ostensible factual "dispute" will not bar summary judgment where the purported fact "is blatantly contradicted by the record," i.e., by "a videotape capturing the events in question," because "no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 378–80 (2007)

## ARGUMENT

## I.    THE CITY DEFENDANTS DID NOT RETALIATE AGAINST PLAINTIFF

Plaintiff alleges that the City Defendants retaliated against him for exercising his right to free expression. Specifically, Plaintiff alleges that when DBI and Planning employees retaliated against him by delaying and obstructing his construction project because of his participation in a criminal investigation of Curran and Santos.  SAC ¶¶ 4, 36–39. Plaintiff's allegations are not supported by the evidence.

To bring a claim for First Amendment retaliation under Section 1983, "plaintiffs must show: (1) they engaged in constitutionally protected activity; (2) as a result, they were subjected to adverse action by defendants that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Autotek, Inc. v. Cnty. of Sacramento*, No. 2:16-cv-01093-KJM-CKD, 2020 WL 4059564, at *7 (E.D. Cal. July 20, 2020), *aff'd sub nom. Lull v. Cnty. of Sacramento*, No. 20-16599, 2022 WL 171938 (9th Cir. Jan. 19, 2022) (citing *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010)).

Although plaintiffs need not be actually chilled, the alleged retaliation must "chill a person of ordinary firmness from continuing to engage in the protected activity." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1054 (9th Cir. 2019) (citation omitted). Here, this would require a showing that the enforcement of the Building and Planning Codes would chill a person of ordinary firmness from continuing to engage in protected speech.

Finally, to make a prima facie case, plaintiffs must have evidence of causation. The test for causation in the First Amendment context stems from the Supreme Court's decision in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977). Plaintiff must do more than simply show

retaliatory motive and injury—they must show the injury would have never occurred without retaliation. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) ("It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury"); *see also Hartman v. Moore*, 547 U.S. 250, 260 (2006) (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway").

Plaintiff presents three categories of evidence in support of his retaliation claim: 1) the unverified SAC, 2) Plaintiff's own 10-paragraph declaration, and 3) unauthenticated internal DBI documents and emails.[2] Plaintiff's Motion states that the SAC identifies the City, Duffy, Birmingham, Hernandez, Hughen, Fossi, Curran, and Santos as the Defendants. Dkt. No. 109-1 at 4–5. The entirety of the Motion repeats allegations contained in the SAC that the City Defendants retaliated because they were "close associates" of Curran and Santos and made unwarranted enforcement decisions related to the Property. Dkt. No. 109-1 at 5 ("'became aware and/or were under the belief' that Gallagher had spoken to the FBI about Curran and Santos"). Plaintiff's motion uses the SAC to support claims that certain City Defendants conducted enforcement at his Property (i.e., Hernandez, Birmingham requiring window replacement and Fossi/Hughen approval of the ADU and parking). However, these claims are not supported by admissible evidence that the enforcement actions were done in retaliation for anything, much less because Plaintiff may have been interviewed by the FBI. Plaintiff only cites to his SAC for these allegations.

Plaintiff's Motion fails for three reasons. First, Plaintiff fails to provide the Court with admissible evidence supporting his claims. The vast majority of Plaintiff's Motion is based on the unverified SAC. It is hornbook law that a moving party must provide the Court with admissible evidence demonstrating liability. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In this case, the SAC is not verified and, therefore, not admissible. *See Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985) (a verified complaint may be used as an opposing affidavit under Rule 56 to the extent it expresses personal knowledge of admissible facts but an unverified complaint is insufficient to

---

[2] The City Defendants object to the admission of the emails as they contain hearsay and are not authenticated.

counter a summary judgment motion supported by affidavits); *Hernandez v. Spacelabs Med. Inc.,* 343 F.3d 1107, 1112 (9th Cir. 2003) (the nonmoving party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements"); Fed. R. Civ. P 56(c), (e).) Further, even if the SAC was verified, most of the allegations supporting Plaintiff's retaliation claim are not made from personal knowledge. Plaintiff understands this requirement since he cited this legal principle in his motion (*see* Dkt No. 109-1 at § II.). His admission that the SAC is inadmissible is also demonstrated by the inclusion of his own declaration. Plaintiff's declaration does not provide any evidence supporting his allegations. Therefore, the Motion should be denied since it is based on inadmissible evidence, the unverified SAC.

Second, since the only admissible evidence is in Plaintiff's declaration, the Motion fails to establish personal participation by the City Defendants. "Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989). Participation must be "integral." *Blankenhornv. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007). Here, Plaintiff's declaration states that "SFDBI began retaliatory actions against me" (Dkt. No. 109-1 at 12, ¶ 5), that "SFDBI changed several of [Plaintiff's] building permit records" (*id.* at ¶ 6) and that Plaintiff "received multiple violation notices that I believe were unwarranted and intended to cause disruption" (*id.* at ¶ 7). There is no reference to Defendants Duffy, Birmingham, Fossi, or Hughen. As such, Plaintiff's Motion should fail as to those Defendants.

The only reference to any City Defendant by name is a single sentence where Plaintiff alleges Hernandez made a comment that Plaintiff believes was in reference to Plaintiff participation in an FBI investigation. Dkt. No. 109-1 at 12, ¶ 8. However, there is no evidence supporting the connection to Hernandez and any of the alleged retaliatory acts Plaintiff alleges were done by "SFDBI." Specifically, Plaintiff does not allege that Hernandez changed building records, issued an unwarranted violation notice, or otherwise retaliated for Plaintiff's interview with the FBI. For example, the only involvement Hernandez had in any of the enforcement at the Property concerned his amendment to NOV number 202175602. Plaintiff has admitted that the items listed in amended NOV 202175602 were present at the time it was issued. Plaintiff cannot contradict his own testimony now nor does he contradict Hernandez's assertions that the issues noted in the NOV were significant.

Further, courts have labeled statements "stray remark[s]" when they are "single" or "isolated." *See Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438–39 (9th Cir. 1990) (relating to Title VII employment discrimination context). To support a claim of retaliation, there must be a sufficient nexus between the statement and the retaliation. *See Sanders v. City and Cnty. of San Francisco*, 226 Fed. Appx. 687, 692 (9th Cir. 2007). "Mere threats and harsh words are insufficient" for a First Amendment retaliation claim. *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998).

In *Johnson v. Feist*, 2020 WL 6121981, at *6 (C.D. Cal. Sep. 8, 2020)[3] the court deemed a comment that "the things you're not getting may be related to the complaining you have been doing during the pas[t] few months in the Butcher/Bakery Shop" was a "stray remark" insufficient to establish that the plaintiff was denied pay raises in retaliation for "unspecified 'complaining.'" *Id.* The court specifically noted that the complaint had nothing "giving context to this statement," indicating that there needs to be more than just "vague and ambiguous" context for a comment to support claims of retaliation. *Id.* The same reasoning applies to this case. The alleged stray remark by Hernandez is vague, ambiguous, and the same type of stray remark courts have found insufficient to support a retaliation claim. For these reasons, Plaintiff's Motion should be denied because there is no admissible evidence supporting his retaliation claims against the City.

Third, even if the Court were to assign individual liability to general allegations of misconduct alleged by "SFDBI," the motion contains no admissible evidence supporting the allegations. For example, Plaintiff alleges that "SFDBI changed several of my building permit records which were 'completed' to 'expired 'without legitimate cause." Dkt. No. 109-1 at 12, ¶ 6. However, the documents submitted supporting this allegation do not show any permits were marked as "completed" or "expired." *See generally,* Plaintiff's Decl. Ex. B, Dkt. No. 109-2, and Ex. D, Dkt. Nos. 109-3. Similarly, Plaintiff declares that he "received multiple violation notes that [he] believe[s] were unwarranted and intended to cause disruption." Dkt. No. 109-1 at 12, ¶ 7 (citing Exhibit C). However, there are no documents attached to Exhibit C. *See* Dkt. No. 109-3. Lastly, Plaintiff provides no actual evidence that the intent of the violations was to do anything other than cite serious violations of the

---

[3] While *Johnson* is an employment-related case, Defendants contend that the same rationale applies here.

Building Code, much less than "cause disruption." Plaintiff's Motion should be denied because there

is no admissible evidence establishing retaliation on the part of the City Defendants.

## II.    THE CITY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Because the City Defendants did not retaliate against Plaintiff, this Court need not determine

whether the City Defendants are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201

(2001). But even if this Court determined that there was a factual dispute precluding summary

judgment on the alleged constitutional violations, the Individual Defendants are entitled to qualified

immunity.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff

pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the

right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S.

731, 735 (2011). There is "ample room for mistaken judgments" in the qualified immunity standard.

*Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). The

purpose of qualified immunity is to ensure that governmental officials, before they are held liable for

constitutional violations, have "fair notice that [their] conduct was unlawful." *See Brosseau v. Haugen*,

543 U.S. 194, 198 (2004). Even when a governmental official makes a reasonable mistake about either

the state of the law or the facts, a court should grant qualified immunity. *Butz v. Economou*, 438 U.S.

478, 507 (1978); *Haynie v. Cnty. of Los Angeles*, 339 F.3d 1071, 1077–78 (9th Cir. 2003) (citing

*Saucier*, 533 U.S. at 206). Although Supreme Court precedent "'does not require a case directly on

point' for a right to be clearly established, "'*existing precedent must have placed the statutory or

constitutional question beyond debate.*'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (emphasis added)

(citation modified) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015); *see also Ashcroft*, 563 U.S. at

741 (officials entitled to qualified immunity unless "existing precedent [has] placed the statutory or

constitutional question beyond debate"); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (same).

In a Section 1983 action, plaintiffs bear the burden of showing defendants violated their clearly

established rights. *Autotek*, 2020 WL 4059564, at *16 (citing *Romero v. Kitsap Cnty.*, 931 F.2d 624,

627 (9th Cir. 1991)); *see also LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000) ("Once the

defense of qualified immunity is raised by the defendant, the plaintiff bears the burden of showing that

the rights allegedly violated were 'clearly established.' If that burden is satisfied, the defendant must

prove that his conduct was 'reasonable.'") (citation omitted).

Plaintiff will be unable to identify clearly established law that would have given the City

Defendants fair notice that they could not issue an NOV or revoke the permits under the

circumstances. In *Autotek*, the County of Sacramento cited a party for zoning code violations and

enforced the violations despite the fact that the party being cited had repeatedly and publicly criticized

the County and building inspectors. *Autotek*, 2020 WL 4059564, at *16. Although the court found that

such criticisms were protected First Amendment activity, the court dismissed claims against two code

enforcement officers because plaintiffs did not identify law showing that those officers were on notice

that it would be a constitutional violation to enforce the code under those circumstances. *Id.* The Court

should reach the same result here where Plaintiff will be unable to show the City Defendants had

notice that issuing a NOV or requiring a variance would be a constitutional violation.

Even if the Court finds that clearly established rights were violated, Defendants are still

entitled to qualified immunity because their conduct was reasonable. *Zahra v. Town of Southold*, 48

F.3d 674, 683 (2d Cir. 1995) (affirming grant of qualified immunity, assuming that revocation of

permit implicated a clearly established right, because defendants' conduct was reasonable). In *Zahra*,

plaintiff's building permits were revoked and plaintiff sued alleging constitutional violations and

selective enforcement. *Id.* The court granted the individual defendants qualified immunity on the basis

that it was "objectively reasonable to conclude that [Plaintiff] was not in compliance with the plans

approved by the Building Department." *Id*. at 687.

Defendants employed by DBI are granted explicit statutory power to revoke permits when

those permits are based on inaccurate information. S.F. Building Code Section 106A.4.5. In addition,

DBI and Planning employees are authorized to enforce the provisions of the San Francisco Building

and Planning Codes. S.F. Building Code Section 104A.2.1; S.F. Planning Code Section 176(b).

Plaintiff admits that the conditions of the Property did not match the approved drawings when

Birmingham and Hernandez issued a Corrective Notice and amended NOV 202175602, respectfully.

Accordingly, Hernandez and Birmingham were operating within their specific statutory authority

when they conducted enforcement at the Property. Hughen and Fossi were similarly acting within their

statutory authority when they declined to approve Plaintiff's permit application that clearly violated the Planning Code's rear set back requirement. Given that the undisputed evidence shows that the work done at the Property was not in compliance with the approved plans, the City's Defendants' actions were reasonable and they are entitled to qualified immunity.

Plaintiff may contend that the enforcement at the Property was unlawful and thus qualified immunity is not available. However, Plaintiff fails to meet his burden of proving that the alleged enforcement actions violated clearly established law. The cases Plaintiff cites in support of his opposition are either inapposite to the facts of this case or support extending qualified immunity to the City Defendants.

For example, Plaintiff cites *City of Monterey v. Del Monte Dunes at Monterey, Ltd.* 526 U.S. 687, 704–05 (1999) for the proposition that denials of permit applications can violate constitutional rights. Dkt. No. 109-1 at 9. The *Del Monte Dunes* case, unlike the retaliation claim here, was a regulatory takings, due process and equal protection case, not a retaliation case. *Id.* at 698. Further, the Supreme Court clearly framed the issue before it as one regarding the right to a jury trial for a taking case and, if there was such a right, whether the jury was properly instructed. *Id.* at 694. There is no takings claim in this case, nor is the right to a jury an issue before the Court. Lastly, the Court did not discuss the sufficiency of the evidence supporting the jury verdict in *Del Monte Dunes*. Therefore, there is no analogous conduct Plaintiff could use to apply to this case. As such, Plaintiff's citation to *Del Monte Dunes* is irrelevant and unhelpful to the qualified immunity analysis.

Similarly, Plaintiff cites to *Allen v. Schribner,* 812 F.2d 426, 434 (9th Cir. 1987) for the proposition that "retaliatory motive may be inferred from timing and conduct." Dkt. No. 109-1 at 10. The *Allen* case is an employment dispute where a former California state employee was reassigned and harassed due to voicing his opinions over the state's handling of a fruit fly infestation. *Id*. at 429. The specificity of the statements in *Allen* are a far cry from what is submitted here. Plaintiff assumes the statement attributed to Hernandez related to the FBI investigation, but the undisputed evidence shows that Hernandez was unaware Plaintiff participated in any investigations until this lawsuit. In *Allen*, "much of the harassment was allegedly meted out in the context of, or by disparaging remarks about, Allen's statements to the media." *Id*. at 435–36. The allegations of harassment were substantiated by

the declarations of Allen's coworkers, which revealed officials labeled Allen a troublemaker and manufactured an excuse to remove him. *Id*. at 435. Here, however, Plaintiff has submitted no such evidence. Plaintiff assumes the statement attributed to Hernandez related to the FBI investigation, but the undisputed evidence shows that he was unaware Plaintiff participated in any investigations until this lawsuit.

Lastly, Plaintiff cites to *Mt. Health City School Dist. Board of Education v. Doyle*, 429 U.S. 274, another employment case that included a retaliation case. The Supreme Court mostly addressed jurisdictional made by the lower courts and whether or not the School Board was entitled to immunity under the Eleventh Amendment. However, in ruling on the merits of the employee's First and Fourteenth Amendment claims, the Court simply remanded those issues for further consideration by the district court. The case does not put the City Defendants on notice that their actions in this case would be unconstitutional.

### III.   PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE THERE ARE DISPUTED ISSUES OF FACT TO HIS DAMAGES CLAIMS

Plaintiff's damages claims present several material facts that are disputed by his own deposition testimony. For example, Plaintiff alleges that three pending sales were lost due to DBI's interference and retaliatory conduct, contributing to over $4 million in damages. Dkt. No. 109-1 at 12. Plaintiff alleges that the first resale of the Property in 2019 or 2020 would have occurred but for retaliatory conduct by DBI. *Id*.; Dkt. No. 109-3 at Ex. E. However, Plaintiff admitted that the City Defendants did not retaliate until May or June of 2021, a year after the sale fell through. Sims Decl. Ex. A at 29:2–12; 134:19–135:12. Furthermore, Plaintiff conceded that potential purchasers declined to visit the Property during the first attempted sale due to the COVID-19 pandemic and not due to the conduct of any City Defendants. *Id.* at 30:19–33:19. Therefore, Plaintiff's own testimony contradicts that any City Defendants played a part in the unsuccessful sales of the Property before May or June 2021.

In addition, Plaintiff has not pled a claim for damages with reasonable certainty. *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993), *abrogated by, SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016). Plaintiff seeks compensation for items expended

defending against the retaliation, including "hundreds of trips" to San Francisco, hard money loans, his savings and retirement, vintage vehicles, boats, inheritance, and more. Dkt. No. 109-3 at 31. Part of Plaintiff's damage claim includes $50,000 for "Miscellaneous" expenses. *Id*. However, Plaintiff has not produced any associated receipts to account for any amount sought. Although a plaintiff need not calculate damages with absolute exactness, conjecture or speculation will not suffice.

Lastly, Plaintiff fails to articulate the damages attributable to each City Defendant. This is particularly problematic because a municipality is immune from punitive damages under section 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Here, Plaintiff seeks to recover punitive damages from the City. However, as a municipality, the City is immune from punitive damages. Therefore, Plaintiff's Motion should be denied.

Even if the City were not immune from punitive damages, Plaintiff seeks to recover punitive damages for injuries sustained before the alleged retaliation began. For example, Plaintiff seeks punitive damages for the inability to sell his home in 2019 and purchase a new home where he could live with his now-deceased mother. Dkt. No. 109-3 at 31. Additionally, Plaintiff seeks punitive damages for seven years of holding costs, lost income, emotional distress, early pension withdrawal, and inability to retire. *Id*. However, Plaintiff has admitted that no retaliation occurred prior to 2021. Sims Decl. Ex. A at 134:19–135:12. Therefore, even if the City retaliated and was not immune, Plaintiff cannot recover the punitive damages sought.

///
///
///
///
///
///
///
///
///
///

1

**CONCLUSION**

2      For the foregoing reasons, this Court should grant summary judgment in favor of the City

3  Defendants.

4

5  Dated:  November 25, 2025

6                                        DAVID CHIU
                                        City Attorney
7                                        JENNIFER E. CHOI
                                        Chief Trial Deputy
8                                        HUNTER W. SIMS III
                                        RENÉE E. ROSENBLIT
9                                        Deputy City Attorneys

10

11                                   By:  _/s/  Hunter W. Sims III_____
                                        HUNTER W. SIMS III
12
                                        Attorneys for Defendants
13                                      CITY AND COUNTY OF SAN FRANCISCO;
                                        WILLIAM HUGHEN; KEVIN BIRMINGHAM;
14                                      NATALIA FOSSI (ERRONEOUSLY SUED AS
                                        NATALIA KWAITKOWSKA); MAURICIO
15                                      HERNANDEZ; and JOE DUFFY

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

    I, KATHLEEN K. HILL, declare as follows:

3

    I am a citizen of the United States, over the age of eighteen years and not a party to the above-entitled action.  I am employed at the City Attorney's Office of San Francisco, Fox Plaza Building, 1390 Market Street, Sixth Floor, San Francisco, CA 94102.

4

5

    On November 25, 2025, I served the following document(s):

6

**DEFENDANTS CITY AND COUNTY OF SAN FRANCISCO, WILLIAM HUGHEN, KEVIN BIRMINGHAM, NATALIA FOSSI, MAURICIO HERNANDEZ AND JOE DUFFY'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**

7

8

**DECLARATION OF HUNTER W. SIMS IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Fed. R. Civ. P. 56);**

9

**DECLARATION OF KEVIN BIRMINGHAM IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Fed. R. Civ. P. 56);**

10

11

**DECLARATION OF JOE DUFFY IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Fed. R. Civ. P. 56);**

12

**DECLARATION OF NATALIA FOSSI IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Fed. R. Civ. P. 56);**

13

**DECLARATION OF MAURICIO HERNANDEZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Fed. R. Civ. P. 56);**

14

15

**DECLARATION OF MARK LANGAN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT  (Fed. R. Civ. P. 56);**

16

**DECLARATION OF MATTHEW GREENE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Fed. R. Civ. P. 56);**

17

18

**DECLARATION OF WILLIAM HUGHEN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Fed. R. Civ. P. 56); and**

19

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Fed. R. Civ. P. 56)**

20

21

on the following persons at the locations specified:

Patrick Gallagher
470 Coletas Way
Byron, CA 94514

22

23

Tel:  (925) 325-3911
Email: bigblockpat@gmail.com

24

25

*Plaintiff in Pro Per*

26

in the manner indicated below:

27

///

28

///

☒    **BY UNITED STATES MAIL**:  Following ordinary business practices, I sealed true and correct copies of the above documents in addressed envelope(s) and placed them at my workplace for collection and mailing with the United States Postal Service.  I am readily familiar with the practices of the San Francisco City Attorney's Office for collecting and processing mail.  In the ordinary course of business, the sealed envelope(s) that I placed for collection would be deposited, postage prepaid, with the United States Postal Service that same day.

☒    **BY ELECTRONIC MAIL:**  I caused a copy of such document to be transmitted *via* electronic mail in portable document format ("PDF") Adobe Acrobat from the electronic address:  kathleen.hill@sfcityatty.org.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct.

Executed November 25, 2025, at San Francisco, California.

/s/  *Kathleen K. Hill*
KATHLEEN K. HILL