DAVID CHIU, State Bar #189542
City Attorney
JENNIFER E. CHOI, State Bar #184058
Chief Trial Deputy
HUNTER W. SIMS III, State Bar #266039
RENÉE E. ROSENBLIT, State Bar #304983
Deputy City Attorneys
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-4259 [Sims]
               (415) 554-3853 [Rosenblit]
Facsimile:     (415) 554-3837
E-Mail:        hunter.sims@sfcityatty.org
               renee.rosenblit@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO;
WILLIAM HUGHEN; KEVIN BIRMINGHAM; NATALIA FOSSI
(ERRONEOUSLY SUED AS NATALIA KWAITKOWSKA);
MAURICIO HERNANDEZ; and JOE DUFFY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK GALLAGHER, | Case No. 23-cv-03579-SI (JCS) |
| Plaintiff, | **DECLARATION OF MAURICIO HERNANDEZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Fed. R. Civ. P. 56)** |
| vs. | |
| CITY AND COUNTY OF SAN FRANCISCO, BERNARD CURRAN, RODRIGO SANTOS, WILLIAM HUGHEN, KEVIN BIRMINGHAM, NATALIA KWAITKOWSKA, AND JOE DUFFY, | Hearing Date:     December 19, 2025<br>Time:             10:00 a.m.<br>Place:            Videoconference |
| Defendant. | Trial Date:       February 17, 2026 |

### DECLARATION OF MAURICIO HERNANDEZ

I, Mauricio Hernandez, declare as follows:

1.     I am over the age of eighteen and I have personal knowledge of the matters stated in this declaration, unless otherwise stated. If called upon to testify, I could and would testify competently to the contents of this declaration.

2.     I am currently employed by the San Francisco Department of Building Inspection ("DBI"), a department of the City and County of San Francisco ("City"). I have been employed by DBI since 2013. My current title at DBI is Chief Building Inspector. I have held this position for approximately four years.

3.     I was a Chief Building Inspector during relevant time of the facts alleged in this lawsuit. At that time, I was in charge of DBI's Code Enforcement team. DBI's Code Enforcement team is divided into two sub-teams. The first sub-team is investigative in nature, in that, it will investigate complaints received from the public regarding conditions at a property within the City. The main focus of this team is for work without a permit, fire-damaged buildings and unsafe work conditions. The second sub-team is administrative in nature, in that, it will arrange for posting of any administrative hearings related to a Notice of Violation ("NOV") after a Final Warning Letter is issued. Specifically, the administrative team will handle the scheduling of Director's Hearings after an NOV is issued, recovering any penalties issued by DBI through its code enforcement efforts and serving any administrative orders issued by DBI.

4.     As the Chief Building Inspector for the Code Enforcement team, I supervised DBI Inspector Thomas Keane. I know that Inspector Kean issued NOV 202175602 on May 17, 2021. I know this because I reviewed and approved NOV 202175602 prior to it being formally issued to Plaintiff.

5.     After NOV 202175602 was issued, Plaintiff asked to speak with Inspector Keane's supervisor. I was Inspector Keane's supervisor at that time.  I reviewed the permit history, the inspection history, existing NOVs and submitted plans for the Property to prepare for any conversation I may have had with Plaintiff. In addition, I reviewed a Zillow post that was advertising the Property for sale. The post listed the Property as two separate units and included photographs that appeared to

1  show the Property having two kitchens. The advertisement I viewed was inconsistent with internal

2  DBI records showing that the Property was a single family home.

3        6.     I spoke with Plaintiff at some point between May 17 and June 1, 2021. I explained to

4  Plaintiff DBI's general code enforcement process. I also suggested that we meet at the Property so that

5  the conditions onsite could be confirmed. Specifically, I wanted to understand whether or not the

6  construction at the Property was consistent with the approved plans associated with the underlying

7  permit application, identified as PA 201810183586.

8        7.     It is important for general contractors and property owners to follow the plans that are

9  submitted to DBI. This way, DBI can ensure that any construction related activities conducted in the

10  neighborhoods of San Francisco is done in a safe and workmanlike manner.

11        8.     I scheduled a meeting with Plaintiff at the Property on June 3, 2021. DBI Inspector

12  Thomas Keane accompanied me to the meeting. No other City employees were present.

13        9.     Based on the issues observed by Inspector Keane and myself, I amended NOV number

14  202175602 on June 8, 2021 to reflect the issues observed during the meeting. The issues are fully

15  described in amended NOV 202175602, but included issues with the placement of stairs, windows,

16  ceiling heights and other issues that were not constructed pursuant to plans and were in violation of

17  San Francisco Building Code sections 103A and 106.4.7. In effect, the NOV was for performing work

18  that exceeded the scope of the approved permit, PA 201810183586.

19       10.    I found the issues with the Property outlined in amended 202175602 to implicate

20  serious life-safety issues. For example, the fact that Plaintiff attempted to include an additional unit at

21  the Property would cause significant problems in the event of the fire because any first responders

22  would be unaware that the Property had two units. In addition, the fact that the ceiling heights did not

23  meet the minimum standards would cause access issues in the event of an emergency. Lastly, the

24  placement of the stairs created a tripping hazard and could possibly injure anyone attempting to

25  navigate the stairs as they existed on June 3, 2021.

26       11.    After I amended NOV 202175602, Plaintiff insisted on discussing the matter with the

27  Deputy Director, who at the time was Defendant Duffy.

28  ///

12.     I have reviewed I have reviewed what was marked as Exhibit 10 to the deposition of Patrick Gallagher, which is a Certificate of Completion and Occupancy purportedly signed by Bernie Curran on August 27, 2020. What I observed at the Property during my June 8, 2021 visit did not comply with the building plans submitted in connection with PA 201810183586. I know that Exhibit 10 was never submitted to DBI and that PA 201810183586 was not given final approval before June 8, 2021.

13.     In situations where a Certificate of Completion and Occupancy has been properly issued to a Property for work performed that later is determined to exceed the scope of the underly permit, a DBI inspector is authorized to issue an NOV to the owner for performing work beyond the scope of the permit.

14.     While the Certificate of Completion and Occupancy was never lodged with DBI and I was unaware one even existed, amended NOV 202175602 is effectively a violation for performing work in excess of the approved permit.

15.     On or about January 21, 2022, Senior Building Inspector Birmingham and I met Plaintiff at the Property. We did so at the request of Defendant Duffy as he had been assisting Plaintiff to abate NOV 202175602. The conditions at the Property were virtually identical to what I observed at the Property on June 1, 2021. Birmingham issued a "Corrective Notice and Report" to memorialize the conditions observed at the January 21, 2022 site visit.

16.     I recall meeting with Plaintiff on or about February 11, 2022 at my office. Birmingham attended the meeting. During the meeting, we discussed the importance of Plaintiff complying with the Correction Notice with respect to windows as described in NOV 202175602 and in the Correction Notice. In addition, we informed Plaintiff that the San Francisco Planning Department must approve any Alternative Dwelling Unit he wished to add to the Property.

17.     I do not recall being involved in the project at the Property following the February 11, 2022 meeting at my office.

18.     At the time of the above described events, Defendant Joe Duffy was my supervisor at DBI. At no time did Duffy instruct or direct me to retaliate against Plaintiff in any way.

///

1    19.    I worked with Defendant Bernie Curran. Curran never supervised me. I never had

2    anything other than a professional relationship with Curran. We did not socialize outside of work.

3    20.    I never worked with Defendant Santos. I did interact with him on occasion on various

4    projects throughout the City. I did not work with Santos on this project. I never had anything other

5    than a professional relationship with Santos. We did not socialize outside of work.

6    21.    Through this lawsuit, I learned that Plaintiff allegedly he spoke with the FBI in

7    connection to their investigation into Bernie Curran. I was unaware that Plaintiff had been contacted

8    by the FBI prior to arriving at the Property on June 8, 2021. While I may have received emails from

9    Plaintiff claiming to have spoken with the FBI, I was unaware that he had done so until after the filing

10    of this lawsuit.

11    I declare under penalty of perjury under the laws of the United States that the foregoing is true

12    and correct.

13    Executed this   17   day of November 2025, at San Francisco, California.

14

15    _____
     MAURICIO HERNANDEZ

16

17

18

19

20

21

22

23

24

25

26

27

28