1   Timothy J. Halloran - 104498
        THalloran@mpbf.com
2   John P. Girarde - 191518
        JGirarde@mpbf.com
3   Alston L. Lew - 286084
        ALew@mpbf.com
4   MURPHY, PEARSON, BRADLEY & FEENEY
    550 California Street, 14th Floor
5   San Francisco, CA  94104-1001
    Telephone:    (415) 788-1900
6   Facsimile:    (415) 393-8087

7   Attorneys for Defendant
    **BERNARD J. CURRAN**

8

9                       **UNITED STATES DISTRICT COURT**

10                     **NORTHERN DISTRICT OF CALIFORNIA**

11                        **SAN FRANCISCO DIVISION**

12

13   PATRICK GALLAGHER,                    Case No.: 23-cv-03579-SI (JCS)

14              Plaintiff,                 **DEFENDANT BERNARD CURRAN'S**
                                           **MEMORANDUM OF POINTS AND**
15         v.                              **AUTHORITIES IN OPPOSITION TO**
                                           **PLAINTIFF'S MOTION FOR**
16   CITY AND COUNTY OF SAN FRANCISCO,     **SUMMARY JUDGMENT**
     BERNARD CURRAN, RODRIGO SANTOS,
17   WILLIAM HUGHEN, KEVIN                 Date:        January 16, 2026
     BIRMINGHAM, NATALIA                   Time:        10:00 a.m.
18   KWAITKOWSKA; JOE DUFFY,               Courtroom:   Video Conference
                                           Judge:       Hon. Susan Illston
19              Defendants.
                                           Trial Date:  February 17, 2026
20

21

22

23

24

25

26

27

28

---

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................ 3

      A.    Plaintiff Lacked Sufficient Residential Construction Experience And Purchased AThe Subject Property With Existing Notices Of Violation: ................................ 3

      B.    CURRAN's Inspection Of The Subject Property Only Yielded Two Building Permits That Were Approved, And The Remaining Permit With A Certificate Of Completion Was Not Considered Fully Approved Until Guardrails Were Installed: ................................................................................................................ 4

III.  LEGAL ARGUMENT .............................................................................. 5

      A.    Summary Judgment Standard: ....................................................................... 5

      B.    CURRAN Did Not Retaliate Against Plaintiff And Did Not Commit Any Constitutional Violations Against Plaintiff: ............................................................. 6

      C.    CURRAN Is Entitled To Qualified Immunity Because He Was In The Course And Scope Of His Job Duties As A Senior Building Inspector For CCSF During His Interactions With Plaintiff: ..................................................................... 9

      D.    Plaintiff's Slander Of Title Claim Fails Against CURRAN Fails: ..................... 16

      E.    Plaintiff's Intentional Interference With Prospective Economic Relations Claim Against CURRAN Fails: ..................................................................... 17

      F.    Plaintiff's Claim For Intentional Infliction Of Emotional Distress Against CURRAN Fails: ..................................................................................... 17

      G.    Plaintiff's Claim For Negligence Against CURRAN Fails: ............................... 18

      H.    Plaintiff's MSJ Should Be Denied Because There Are Disputed Issues Of Material Facts To His Damages Claims: .......................................................... 19

      I.    Plaintiff's Cause Of Action For Declaratory Relief Fails Because He Is Unable To Prove He Is Entitled To The Relief Sought And Declaratory Relief Is Not The Proper Subject Of An MSJ: .......................................................... 20

IV.   CONCLUSION ........................................................................................ 21

# TABLE OF AUTHORITIES

Page

### CASES

*Allen v. Schribner*
  812 F.2d 426 (9th Cir. 1987)..................................................................................................14, 15

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986) ....................................................................................................................5

*Ashcroft v. al-Kidd*
  563 U.S. 731 (2011) ..................................................................................................................10

*Autotek, Inc. v. County of Sacramento*
  No. 2:16-cv-01093-KJM-CKD
  2020 WL 4059564, at *7 (E.D. Cal. July 20, 2020) ...........................................................6, 12

*Bily v. Arthur Young & Co.*
  3 Cal.4th 370 (1992) .................................................................................................................18

*Blair v. Bethel Sch. Dist.*
  608 F.3d 540 (9th Cir. 2010).......................................................................................................6

*Blankenhorn v. City of Orange*
  485 F.3d 463 (9th Cir. 2007).......................................................................................................8

*Brosseau v. Haugen*
  543 U.S. 194 (2004) ..................................................................................................................10

*Butz v. Economou*
  438 U.S. 478 (1978) ..................................................................................................................10

*Capp v. County of San Diego*
  940 F.3d 1046 (9th Cir. 2019)......................................................................................................6

*Celotext Corp. v. Catrett*
  477 U.S. 317 ...........................................................................................................................6, 8

*Christensen v. Superior Ct.*
  54 Cal.3d 868 (1991) ................................................................................................................17

*City of Monterey v. Del monte Dunes at Monterey, Ltd.*
  526 U.S. 687 (1999) ..................................................................................................................14

*CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*
  479 F.3d 1099 (9th Cir. 2007)....................................................................................................17

*Ghuman v. Wells Fargo Bank, N.A.*
  989 F.Supp.2d 994 (E.D. Cal. 2013).........................................................................................16

*Hartman v. Moore*
  547 U.S. 250 (2006) ....................................................................................................................7

# TABLE OF AUTHORITIES
(continued)

Page

*Haynie v. Cnty. of Los Angeles*
  339 F.3d 1071 (9th Cir. 2003)..................................................................10

*Hernandez v. Spacelabs Med. Inc.*
  343 F.3d 1107 (9th Cir. 2003)....................................................................8

*Hunter v. Bryant*
  502 U.S. 224 (1991).................................................................................10

*Ladd v. County of San Mateo*
  12 Cal.4th 913 (1996)..............................................................................18

*Lew v. Kona Hosp.*
  754 F.2d 1420 (9th Cir. 1985)....................................................................8

*Lindy Pen Co. v. Bic Pen Corp.*
  982 F.2d 1400 (9th Cir. 1993)..................................................................19

*LSO, Ltd. v. Stroh*
  205 F.3d 1146 (9th Cir. 2000)..................................................................12

*Lull v. County of Sacramento*
  No. 20-16599, 2022 WL 171938
  (9th Cir. Jan. 19, 2022) .............................................................................6

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*
  429 U.S. 274 (1977)............................................................................7, 15

*Nieves v. Bartlett*
  139 S. Ct. 1715 (2019)...............................................................................7

*Nunez v. City of Los Angeles*
  147 F.3d 867 (9th Cir. 1998)......................................................................9

*Pearson v. Callahan*
  555 U.S. 223 (2009).................................................................................10

*Quelimane Co. v. Stewart Title Guar. Co.*
  19 Cal.4th 26 (1998)................................................................................17

*Radus Tek Services, Inc. v. IDC Technologies Inc.*
  767 F.Supp.3d 972 (N.D. Cal. 2025) .......................................................18

*Romero v. Kitsap Cnty.*
  931 F.2d 624 (9th Cir. 1991)....................................................................12

*Saucier v. Katz*
  533 U.S. 194 (2001).................................................................................10

*Saunders v. City and County of San Francisco*
  226 Fed.Appx. 687 (9th Cir. 2007).............................................................9

DEFENDANT BERNARD CURRAN'S MPA IN OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

CASE NO.
23-CV-03579-SI (JCS)

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Scott v. Harris*
  550 U.S. 372 (2007) ...................................................................................................6

*Siino v. Foresters Life Insurance and Annuity Co.*
  133 F.4th 936 (9th Cir. 2025) ..................................................................................20

*Simo v. Union of Needletrades, Indus. & Textile Employees, S.W. Dist. Council*
  322 F.3d 602 (9th Cir. 2003) ...................................................................................17

*SunEarth, Inc. v. Sun Earth Solar Power Co.*
  839 F.3d 1179 (9th Cir. 2016) .................................................................................19

*Taylor v. List*
  880 F.2d 1040 (9th Cir. 1989 .....................................................................................8

*Truck Ins. Exchange v. Bennett*
  53 Cal.App.4th 75 (2d Dist. Cal. 1997) ...................................................................16

*White v. Pauly*
  580 U.S. 73 (2017) ...................................................................................................10

*Zahra v. Town of Southold*
  48 F.3d 674 (2d Cir. 1995) .......................................................................................12

### STATUTES

28 U.S.C.
  § 2201 .......................................................................................................................20

28 U.S.C.
  § 2201(a) ..................................................................................................................20

42 U.S.C.
  § 1983 ....................................................................................................3, 8, 16, 17, 18, 20

### OTHER AUTHORITIES

San Francisco Building Code
  § 104A.2.1 ................................................................................................................13

San Francisco Building Code
  § 106A.4.5 ................................................................................................................13

San Francisco Planning Code
  § 176(b) ....................................................................................................................13

### RULES

Federal Rules of Civil Procedure
  Rule 56 .......................................................................................................................5

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

Federal Rules of Civil Procedure
    Rule 56(c)............................................................................................................................6

4

Federal Rules of Civil Procedure
    Rule 56(c), (e)......................................................................................................................8

5

6

Federal Rules of Civil Procedure
    Rule 57..............................................................................................................................20

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT BERNARD CURRAN'S MPA IN OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

CASE NO.
23-CV-03579-SI (JCS)

## I.    INTRODUCTION

Plaintiff PATRICK GALLAGHER's claims against Defendant BERNARD CURRAN ("CURRAN") arise from CURRAN's job duties as a building inspector for Defendant CITY AND COUNTY OF SAN FRANCISCO ("CCSF").  Plaintiff has alleged identical claims against several other CCSF employees including Defendants JOE DUFFY, the former Deputy Director of the Department of Building Inspection ("DBI"); KEVIN BIRMINGHAM, Chief Building Inspector of DBI; MAURICIO HERNANDEZ, Chief Building Inspector of DBI; NATALIA FOSSI (formerly Natalia Kwiatkowska), Deputy Zoning Administrator at the City's Department of Planning; and WILLIAM HUGHEN, a former Planner II with the Flex Team of the Planning Department (CCSF and these individual Defendants are referred to collectively as the "CCSF Defendants").

In his Second Amended Complaint ("SAC")(ECF 28.), Plaintiff alleges that the CCSF Defendants and CURRAN conspired to obstruct and delay his construction/remodeling project for a real property located at 200 Naples Street in San Francisco (the "Subject Property").  Plaintiff's allegations of retaliation and conspiracy arise from an alleged interview that took place between Plaintiff and an agent of the Federal Bureau of Investigations ("FBI") as part of "pay to play" scheme into alleged criminal conduct by CURRAN.  Plaintiff alleges that the CCSF Defendants and CURRAN retaliated against him for his participation in the FBI investigation into CURRAN; that any delays in issuing building permits to him for the Subject Property were acts of retaliation; and that the Subject Property may have been part of the "pay to play scheme" that was the subject of the alleged investigation. CURRAN denies all of Plaintiff's allegations in the SAC.

Plaintiff's Motion for Summary Judgment ("MSJ") should be denied in its entirety.[1]  Plaintiff's MSJ fails to meet the evidentiary standards set forth in FRCP 56 and simply repeats allegations made in his SAC, without providing the required factual support.  Plaintiff's declaration in support of his MSJ fails to provide adequate admissible evidence to prove any of his claims alleged in the SAC.  Plaintiff's

---

[1]  As noted in the CCSF Defendants' Opposition to Plaintiff's MSJ, Plaintiff's MSJ does not mention his *Monell* claim.  Since Plaintiff's MSJ fails to address this claim, any cause of action based on the *Monell* claims fails as a matter of law as it relates to CURRAN's role as a former building inspector for CCSF.  (See ECF No. 106.)  CURRAN incorporates by reference the arguments made in support of CCSF's MSJ regarding the *Monell* claim, which were similarly incorporated by reference by the CCSF Defendants in their Opposition to Plaintiff's MSJ.

DEFENDANT BERNARD CURRAN'S MPA IN OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

CASE NO.
23-CV-03579-SI (JCS)

1   reliance on conclusory allegations and conjecture fails to come anywhere close to entitling him to

2   summary judgment on any of his groundless claims against CURRAN.  Plaintiff is the only source for

3   the alleged interview that took place with the FBI upon which the majority of his allegations are based.

4   Plaintiff fails to establish as a matter of law that any action taken by CURRAN as part of his inspections

5   of the Subject Property as a CCSF building inspector resulted in the subsequent delays that occurred

6   <u>after</u> CURRAN's inspection.

7          CURRAN's only interactions with Plaintiff and the Subject Property ended on August 27, 2020,

8   when he conducted an inspection of the Subject Property and provided applicable paperwork based on

9   those inspections.  Despite allegations to the contrary by Plaintiff, DBI records for CURRAN's

10  inspection on August 27, 2020 was listed as "Pre-final".  The evidence shows that while CURRAN

11  approved two permits on August 27, 2020, No. 2018081-7063 and No. 201808107075, he did not issue

12  full approval for 201810183586, which had a pre-approval, but required a finalized inspection for a job

13  card to issue.  Plaintiff's claim that CCSF cancelled a certificate of completion issued by CURRAN is

14  completely contradicted by the evidence; in fact, Plaintiff has erroneously conflated CURRAN's

15  approval of two permits as a carte blanche approval to proceed with any and all proposed renovations

16  on the Subject Property.

17         The evidence shows that when CURRAN conducted his inspections of the Subject Property on

18  August 27, 2020, there were a large number of construction issues requiring finalized approval on

19  multiple separate permits, each with their own listed scope for the projects.  Plaintiff's MSJ refers to an

20  issued certificate of completion signed by CURRAN after his inspection.  However, Plaintiff failed to

21  indicate that the issued certificate was not filed by CURRAN and not processed by DBI because Plaintiff

22  failed to properly install guardrails, which were required.  Plaintiff conflated CURRAN's approval of

23  two other permits, which were smaller in scope, as a rubber stamp for the entire proposed renovation of

24  the Subject Property.

25         In short, there was no retaliation by CURRAN nor was there any retaliation by the CCSF

26  Defendants.  Plaintiff's failure to obtain final permit approval for his various proposed renovations of

27  the Subject Property were denied because they either failed to comply with expected standards under

28  local municipal ordinances or alternatively went far beyond the scope allowed by issued permits.

Furthermore, even if Plaintiff is successful in providing sufficient evidence to uphold a retaliation claim, CURRAN is entitled to qualified immunity since he was acting in his role as CCSF building inspector at the time he inspected the Subject Property with Plaintiff.  Additionally, even if Plaintiff can prove there was retaliation by individual CCSF Defendants, any such alleged retaliation occurred after CURRAN's role in the entire sequence of events had long since passed on August 27, 2020.  Crucially, any of Plaintiff's claims of retaliation, conspiracies and unnecessary delays caused by various CCSF Defendants occurred way after CURRAN's participation in events had passed.  Finally, there are disputed issues of material fact relating to the damages presented by Plaintiff, which prevent Plaintiff from receiving summary judgment in his favor.

Plaintiff's MSJ lacks the evidence required to uphold any of his causes of action asserted against CURRAN for (1) Slander of Title; (3) Intentional Interference With Prospective Economic Relations; (4) Violation of Civil Rights, 42 U.S.C. § 1983; (5) Intentional Infliction of Emotional Distress; (6) Negligence; and (7) Declaratory Relief.  As such, Plaintiff's MSJ should be denied as to all pled causes of action against CURRAN.

## II.    STATEMENT OF FACTS

**A.    Plaintiff Lacked Sufficient Residential Construction Experience And Purchased AThe Subject Property With Existing Notices Of Violation:**

During his deposition, Plaintiff states he is a retired construction professional, who prior to retirement in 2010, worked for various construction companies. (Alston Lew Decl. ("Lew Decl."), Exh. A, at 11:24-15:2; 13:1-4.)  Despite being involved in the construction trade for almost the entirety of his career, Plaintiff only had experience with three residential projects. (*Id.*, at 17:15-20; 25:6-21.)  Despite his lack of career experience in renovating or constructing residential properties, Plaintiff testified he set up a trust shortly before his retirement to renovate residential properties for sale. (*Id.*, at 20:7-23:2.)

Plaintiff purchased the Subject Property sometime in May 2018. (*Id.*, at 24:17-21.)  At the time Plaintiff purchased the Subject Property, it already had two Notices of Violation ("NOV") issued: 1) Number 201644272 ("NOV1"), issued by DBI Inspector James Lawrine on September 11, 2017 due to a dilapidated roof, a lack of weather proofing and trash in the front yard, which was not fully abated until October 23, 2024; and 2) Number 201721241 ("NOV2"), which was issued by DBI Inspector Carl

1    Weaver on January 5, 2018, due to a lack of guardrails and weatherization of the rear deck, which was

2    not fully abated until October 24, 2024. (Declaration of Bernard Curran ["Curran Decl."], ¶8.)

3    **B.    CURRAN's Inspection Of The Subject Property Only Yielded Two Building Permits**
     **That Were Approved, And The Remaining Permit With A Certificate Of Completion**
4    **Was Not Considered Fully Approved Until Guardrails Were Installed:**

5           CURRAN inspected Plaintiff's Subject Property on or about August 27, 2020.  CURRAN was

6    sent out by DBI to the Subject Property in his role as a senior inspector for CCSF and by his supervisor

7    Patrick O'Riordan, who was the Interim Director of DBI. (Curran Decl., ¶7.)  After an inspection of the

8    Subject Property, CURRAN issued approvals for two permits and a preliminary certificate of

9    completion, which required additional work, which Plaintiff now seeks to conflate as a carte blanche

10   approval for all of his requested renovations as part of this lawsuit.  Specifically, after a finalized

11   inspection, CURRAN issued a permit approval for PA 201808107063, which was a request to

12   repair/replace kitchen and bath cabinets, paint, and installation of drywall to comply with NOV

13   201721245. (Curran Decl., ¶8; Lew Decl., Exh. C.)  CURRAN also issued a permit approval for PA

14   201808107075, which was a request to proceed with re-roofing the Subject Property and installation of

15   gutters to comply with NOV 201644272. (Curran Decl., ¶8; Lew Decl., Exh. E.)  The approval for PA

16   201808107075, which was an approved permit by CURRAN, is different than the scope of work for PA

17   201810183586, which the DBI permit tracking system indicates was incomplete and that the finalization

18   of the permit approval was contingent on installation of safety guardrails. (Curran Decl. ¶¶11-13; Lew

19   Decl., Exh. Q.)  CURRAN only issued approvals for two permits as part of his inspections of the Subject

20   Property.  (Curran Decl. ¶11 Lew Decl., Exhs. C and E.)

21          Plaintiff's MSJ alleges that an issued Certificate of Completion signed by CURRAN as part of

22   the inspection that took place on August 27, 2020 for PA 201810183586 stands for the proposition that

23   Plaintiff's entire proposed set of renovations for the entire property were approved by the DBI, which is

24   inaccurate. (Plaintiff's MSJ, 109-1, pgs 5-6, referencing SAC ¶¶ 34 and 45.)  CURRAN issued a

25   preliminary certificate of completion to Plaintiff, but the document was clear that it was contingent upon

26   Plaintiff installing safety guardrails to fully complete the project and required a final inspection. (Curran

27   Decl. ¶12.)  PA 201810183586 involved a request for a structural strengthening renovation that included

28   removing/replacing floors/frames, removing dormers, adding new dormers on each side and renovating

- 4 -

the laundry and second floor areas, and the certificate also indicates that the PA was requested by Plaintiff in order to comply with NOV No. 201895477. (Curran Decl. ¶11, Lew Decl. Exh. K.) Plaintiff's MSJ does not provide any evidence establishing that he ever installed guardrails that were required, as was required by the DBI records. (Curran Decl. ¶12.)  Due to Plaintiff's failure to fully comply with installation of the requested safety guardrails, DBI later indicated via a different inspector that the application was considered expired. (*Id*.)

DBI records also indicate that the repair work relating to PA 201808107075 (issued by CURRAN on 8/27/2020) was not fully completed until 9/29/21 when Inspector Prasad performed a reinspection and found that the items in the NOV, which the PA was based on, were fully corrected. (Curran Decl. ¶¶12, 13 ,16.)  Since Plaintiff had never fully complied with the full requirements of PA 201810183586, the certificate of completion form issued by CURRAN to Plaintiff was never processed by DBI. (See CCSF Opposition to Plaintiff's MSJ (ECF No. 114), pgs. 8:12-18.)   When CURRAN issued the certificate of completion to Plaintiff, he was clear that it was a preliminary issuance contingent on Plaintiff's full compliance, which included the installation of safety guardrails. (Curran Decl. ¶16, Lew Decl. Exh. Q.)

After CURRAN performed the inspection on Plaintiff's Subject Property on August 27, 2020 and processed the issuance of the two permits: PA 201808107063 and PA 201808107075, and issued a preliminary certificate of completion for PA 201810183586, CURRAN played no further part in DBI's subsequent administrative and regulatory actions involving the Subject Property. (Curran Decl. ¶17.) CURRAN did not participate or have any personal knowledge of all other events alleged by Plaintiff against CCSF and the CCSF Defendants in his SAC. (*Id*.)

## III.   LEGAL ARGUMENT

### A.   Summary Judgment Standard:

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FRCP 56.  In determining whether summary judgment should be granted, a court's function is not to weigh the evidence and determine the truth, but to determine whether there are genuine issues of material fact that can be decided at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Only disputes over facts that might affect the outcome

1   of the suit under the governing law will properly preclude the entry of summary judgment. *Id.* at 248.

2   Ostensible facts that appear to create a dispute will not bar summary judgment where the purported fact

3   is "blatantly contradicted by the record…" because "no reasonable jury could believe it." *Scott v. Harris*,

4   550 U.S. 372, 378-380 (2007).  A nonmoving party for summary judgment is not obligated to produce

5   evidence in a form that would be admissible at trial to avoid summary judgment. *Celotext Corp. v.*

6   *Catrett*, 477 U.S. 317, 324, n. 7.  "Rule 56(e) permits a proper summary judgment motion to be opposed

7   by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves,

8   and it is from this list that one would normally expect the nonmoving party to make the showing to which

9   we have referred." *Id.*

10  **B.     CURRAN Did Not Retaliate Against Plaintiff And Did Not Commit Any Constitutional**
11      **Violations Against Plaintiff:**

12       The SAC makes generalized conclusory allegations that CURRAN, CCSF and the CCSF

13  defendants conspired to violate his constitutional rights by conspiring to retaliate against Plaintiff by

14  either revoking issued permits or choosing to not honor issued approvals, which constitutes an alleged

15  unlawful taking of his property rights. (SAC, ¶¶89-100.)  In his MSJ, Plaintiff simply re-alleges the same

16  conclusory statements with no reference to any supporting evidence to support such claims.

17       To bring a claim for First Amendment retaliation under 42 U.S.C. § 1983, plaintiffs must show:

18  they engaged in constitutionally protected activity; (2) as a result, plaintiffs were subjected to adverse

19  actions by defendants that would chill a person of ordinary firmness from continuing to engage in the

20  protected activity; and (3) there was a substantial causal relationship between the constitutionally

21  protected activity and the adverse activity. *Autotek, Inc. v. County of Sacramento*, No. 2:16-cv-01093-

22  KJM-CKD, 2020 WL 4059564, at *7 (E.D. Cal. July 20, 2020), aff'd sub nom. *Lull v. County of*

23  *Sacramento*, No. 20-16599, 2022 WL 171938 (9th Cir. Jan. 19, 2022), citing *Blair v. Bethel Sch. Dist.*,

24  608 F.3d 540, 543 (9th Cir. 2010).

25       Plaintiffs need not be actually chilled, the alleged retaliation must "chill a person of ordinary

26  firmness from continuing to engage in protected activity." *Capp v. County of San Diego*, 940 F.3d 1046,

27  1054 (9th Cir. 2019).  Plaintiff would need to show that CURRAN's inspection on August 27, 2020,

28  which constitutes an enforcement of Building and Planning Codes, would chill Plaintiff from continuing

to engage in protected speech.  Plaintiff presents no evidence or facts that demonstrates he was engaged in any protected speech while CURRAN was inspecting the Subject Property or that any action CURRAN took during the inspection chilled Plaintiff's protected speech.

Additionally, Plaintiff must make a prima facie case presenting evidence of causation.  The test for causation in the First Amendment context must demonstrate more than just a retaliatory motive and injury: Plaintiff must show that the injury would never have occurred without retaliation. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977); see also *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) ["It is not enough to show that an official acted with a retaliatory motive and that plaintiff was injured – the motive must cause the injury."]  Even if an official acted dishonorably with an unconstitutional motive, the official's "actions colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." *Hartman v. Moore*, 547 U.S. 250, 260 (2006).

Plaintiff's evidence in support of his retaliation claim amounts to the following: (1) his unverified SAC; (2) Plaintiff's declaration in support of the MSJ; and (3) unauthenticated internal DBI documents and emails[2], as well as his own written summary of perceived facts that are not substantiated by any other evidence.  Plaintiff's MSJ states that the SAC identifies CURRAN, CCSF, the CCSF Defendants and Santos as defendants in the action. (Plaintiff's MSJ, at 4-5.)  Rather that cite to undisputed material facts with supporting evidence, the MSJ repeats allegations in the SAC as the basis for Plaintiff's claims that the CCSF Defendants were close associates with CURRAN and Santos simply because they worked in the DBI and that because CURRAN referred Plaintiff to Santos, Santos was a close associate of CURRAN and by extension the CCSF Defendants. (*Id*. at 5 [Plaintiff "became aware and/or were under the belief that Gallagher had spoken to the FBI about Curran and Santos"].)

Plaintiff uses his SAC to support allegations that any enforcement actions conducted by CURRAN or the CCSF Defendants were for the purpose of retaliating against Plaintiff because of his purported cooperation with the FBI's investigation into purported criminal activity performed by CURRAN.  Other than his allegations in the SAC, Plaintiff presents no admissible evidence to

---

[2]  CURRAN objects to the admission of any e-mails proffered by Plaintiff as hearsay and lacking foundation.

DEFENDANT BERNARD CURRAN'S MPA IN OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

CASE NO.
23-CV-03579-SI (JCS)

1    substantiate these allegations of a wide retaliation action committed against him by CURRAN and/or

2    the CCSF Defendants as a result of the FBI's investigation into CURRAN.

3         Furthermore, Plaintiff's proposition that all acts of retaliation were committed against him by

4    CURRAN and the CCSF Defendants because of his participation in an FBI investigation falls apart

5    because the Criminal Complaint with accompanying FBI affidavit against CURRAN does not even

6    mention Plaintiff's property as a subject of the investigation. (Curran Decl. ¶6; Exh. P.)  The existence

7    of contradictory admissible evidence means there are genuine issues of material fact that are sufficient

8    to overcome Plaintiff's MSJ.

9         Plaintiff's MSJ as a whole fails because a large portion of the motion simply re-alleges the

10   allegations contained in his unverified SAC or alternatively relies on inadmissible evidence.  A moving

11   party must present the Court with admissible evidence demonstrating liability. *Celotex Corp. v. Catrett*

12   477 U.S. 317, 323-324 (1986).  Since Plaintiff's SAC is unverified, it may not be used as admissible

13   evidence. *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985) [An unverified complaint is

14   insufficient to counter any MSJ supported by affidavits]; *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d

15   1107, 1112 (9th Cir. 2003) [A nonmoving party cannot defeat summary judgment with allegations in a

16   complaint based on unsupported conjectures or conclusory statements]; and FRCP 56(c), (e).

17        Even if the Court were to be generous to Plaintiff and treat his SAC as verified, most of the

18   allegations made by Plaintiff are entirely speculative and conclusory as it relates to his retaliation claim

19   and in many instances, not based on his own personal knowledge.  Plaintiff's reliance on the allegations

20   in his unverified SAC as assertions of undisputed material facts does not meet the summary judgment

21   standard and cannot be considered admissible evidence and as a result, Plaintiff's MSJ must be denied.

22        The only admissible evidence presented by Plaintiff is contained in Plaintiff's declaration, which

23   fails to demonstrate that CURRAN personally participated in any act of alleged retaliation against

24   Plaintiff.  "Liability under section 1983 arises only upon a showing of personal participation by the

25   defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989.)  Participation must be integral.

26   *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007.)  Plaintiff's declaration states

27   that "SFDBI began retaliatory actions against me" (ECF No. 109-1, ¶5); that "SFDBI changed several

28   of Plaintiff's building permit records (*Id*. at ¶6); and that Plaintiff "received multiple violation notices

1   that I believe were unwarranted and intended to cause disruption" (*Id.* at ¶7).  Plaintiff's declaration does

2   not refer to CURRAN as participating in the referenced retaliatory acts and in fact refers to actions that

3   all took place after CURRAN's inspection of the Subject Property occurred on August 27, 2020.

4        Plaintiff presents no admissible evidence that CURRAN actively participated in any retaliatory

5   acts attributed to the other CCSF Defendants as a collective whole. (Curran Decl. ¶17.)  Other than

6   issuing two permits and also issuing a preliminary CFC contingent on the installation of guardrails on or

7   about August 27, 2020, Plaintiff presents no evidence that CURRAN participated in the Subject Property

8   any further. (Curran Decl. ¶¶12-17.)

9        Furthermore, to support a claim for retaliation, there must a sufficient nexus between the

10  statement and the retaliation.  *Saunders v. City and County of San Francisco*, 226 Fed.Appx. 687, 692

11  (9th Cir. 2007).  Mere threats and harsh words are insufficient for a First Amendment retaliation claim.

12  *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998.)  Plaintiff does not identify any remark(s)

13  or statement(s) made by CURRAN during their interactions involving the Subject Property that would

14  support a claim for retaliation.  If anything, CURRAN's issuance of approval for two separate permits

15  and the issuance of a preliminary CFC would have greatly benefited and furthered Plaintiff's goals of

16  completing renovations for the Subject Property.

17       Third, Plaintiff's SAC generally alleges that "SFDBI changed several of my building permit

18  records which were 'completed' to 'expired' without legitimate cause. (SAC, ¶6.)  Plaintiff does not

19  present any admissible evidence of active permits in DBI records that were changed from "active" to

20  "expired" by CURRAN to support these allegations.   In sum, Plaintiff has failed to present any

21  admissible evidence establishing CURRAN participated in any retaliatory acts which could expose

22  CURRAN to liability under Section 1983.

23  **C.    CURRAN Is Entitled To Qualified Immunity Because He Was In The Course And Scope
24         Of His Job Duties As A Senior Building Inspector For CCSF During His Interactions
           With Plaintiff:**

25       The evidence undisputedly shows that CURRAN was working in his capacity as a Senior

26  Building Inspector and an employee of CCSF at the time he conducted his inspection of the Subject

27  Property and during the time he interacted with Plaintiff. (Curran Decl. ¶2.)  As such, CURRAN is

28  entitled to the same affirmative defenses pled by the CCSF Defendants.  Because Plaintiff does not

provide any evidentiary proof that CURRAN specifically retaliated against him in any form, caused any constitutional violations or that any specific action by CURRAN caused Plaintiff to incur damages, this Court need not determine whether CURRAN is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).   However, even if the Court determines there is some factual dispute involving CURRAN that requires a more in-depth analysis for summary judgment analysis, CURRAN is entitled to assert a claim for qualified immunity due to his role as a CCSF employee during his interactions with Plaintiff involving the Subject Property.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). There is "ample room for mistaken judgments" in the qualified immunity standard. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).   The purpose of qualified immunity is to ensure that governmental officials, before they are held liable for constitutional violations, have "fair notice that [their] conduct was unlawful." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).   Even when a governmental official makes a reasonable mistake about either the state of the law or the facts, a court should grant qualified immunity. *Butz v. Economou*, 438 U.S. 478, 507 (1978); *Haynie v. Cnty. of Los Angeles*, 339 F.3d 1071, 1077–78 (9th Cir. 2003).   Although Supreme Court precedent "'does not require a case directly on point' for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017); see also *Ashcroft*, 563 U.S. at 741 [Officials entitled to qualified immunity unless "existing precedent [has] placed the statutory or constitutional question beyond debate"); and *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) [Same holding].

Here, Plaintiff's entire premise of applicable causes of action for retaliation and a conspiracy against CURRAN and the CCSF Defendants is that since CURRAN <u>may</u> have been involved in some purported criminal conduct that was the subject of an FBI investigation, then illogically the purported criminal conduct attributable to CURRAN most likely also involved the Subject Property, which Plaintiff presents no evidence of. (Curran Decl. ¶6; Lew Decl. Exh. P.)   Plaintiff presents no actual evidence that any action of CURRAN relating to the Subject Property resulted in criminal conduct, which

directly affected Plaintiff's ability to renovate the Subject Property.  Even Plaintiff's evidence of the Certificate Of Completion ("CFC") Plaintiff relies on as the basis for his entire argument that he had a fully code complaint property, is contradicted by the DBI record, which indicates that the issued CFC was a preliminary one contingent on Plaintiff installing safety guardrails, which he failed to do, leading to the preliminary CFC expiring. (Curran Decl. ¶¶8, 12, 13, 16, Lew Decl. Exh. Q.)  All of this evidence indicates that even if qualified immunity is not granted to CURRAN for some reason, there are genuine issues of material facts that contradict Plaintiff's narrative on what occurred.

In fact, Plaintiff's own deposition testimony directly contradicts his allegation that CURRAN's purported criminal conduct directed caused or resulted in Plaintiff's inability to fully comply with renovating the Subject Property pursuant to applicable State statutes and municipal ordinances/codes. Plaintiff alleges that CURRAN engaged in a "pay to play scheme".  However, when Plaintiff was asked whether he paid any money to CURRAN, Plaintiff states, "Bernie never asked me for money." (Lew Decl., Exh. A, 131:15-134:18.)   Additionally, Plaintiff testified that he was unsure if he was ever considered a victim of Rodrigo Santos by the FBI. (*Id*. at 131:4-25.)  Plaintiff believes Mr. Santos took approximately $13,000.00 from him and failed to perform work on the Subject Property. (*Id*.)  However, other than possibly referring Rodrigo Santos to Plaintiff to use as a structural engineer on the Subject Property, CURRAN did not profit from the transaction (*Id*. at 132:15-133:24, 134:8-18.)  Furthermore, per his own testimony, Plaintiff is unsure whether the Subject Property and his interactions with CURRAN were the subject of the FBIs purported criminal investigation into CURRAN.  (*Id.* at 131:15-134:18.)

In other words, Plaintiff's fanciful allegations of an alleged criminal conspiracy involving CURRAN for a "pay to play" scheme completely falls apart because he presents no actual evidence that CURRAN was involved in such a scheme or that the scheme in question directly affected Plaintiff's own ability to renovate the Subject Property in compliance with County building codes.  Plaintiff's contentions that CURRAN's purported criminal conduct directly led to delays in his ability to renovate the Subject Property are based on pure speculation.  Even if we were to assume arguendo based on Plaintiff's testimony that CURRAN referred Plaintiff to use Mr. Santos, Plaintiff does not present any evidence that the referral led to criminal conduct by CURRAN.  Plaintiff's contentions that he was

1  "forced" to use Mr. Santos is not supported by any evidence he presents other than his own contentions,

2  which are based on unsure speculation. (*Id.* at 133:7-24.)

3       Since Plaintiff's allegations of purported criminal conduct against CURRAN are based on pure

4  speculation, CURRAN is entitled to the same qualified immunity claimed by the other CCSF Defendants

5  since he was clearly acting in his role as a CCSF building inspector during his interactions with Plaintiff

6  involving the Subject Property.  In a Section 1983 action, plaintiffs bear the burden of showing defendants

7  violated their clearly established rights. *Autotek*, *supra*. 2020 WL 4059564, at *16, citing *Romero v.*

8  *Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991); see also *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th

9  Cir. 2000) ["Once the defense of qualified immunity is raised by the defendant, the plaintiff bears the

10  burden of showing that the rights allegedly violated were 'clearly established.' If that burden is satisfied,

11  the defendant must prove that his conduct was 'reasonable.'"].

12       Plaintiff is unable to identify any established law or clear-cut circumstance that CCSF and by

13  extension, its former inspector CURRAN could not issue any NOVs for aspects of the Subject Property

14  that were out of compliance or alternatively, that any issued permits could not later be revoked due to

15  changed factual and legal circumstances affecting the property.  As noted in CCSF's opposition to

16  Plaintiff's MSJ, a federal court has previously determined that a municipality, the County of Sacramento,

17  cited a party for violations despite the party's repeated and public criticisms of the County. *Autotek,*

18  *supra*, 2020 WL 4059564, at *16.  Despite finding that plaintiff's criticisms of the County were protected

19  by the First Amendment, the court in *Autotek* still determined that the claims against two code

20  enforcement officers should be dismissed because plaintiff failed to show the officers were on notice

21  that the code enforcement performed would result in constitutional violations.  *Id*.  The Court in *Autotek*

22  was clear that for a Section 1983 claim, plaintiffs bear the burden of showing defendants violated clearly

23  established rights. *Id*.  Even if a plaintiff is able to satisfy this burden, a defendant need only prove that

24  his conduct was 'reasonable' to overcome the challenge. *Id*., citing *LSO*, *supra*, 205 F.3d at 1157.

25       Thus, even if Plaintiff is successful in showing CURRAN and the CCSF Defendants were on

26  notice of potential constitutional violations by their actions, they would still be able assert qualified

27  immunity if their conduct was reasonable. *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)

28  [Affirmed grant of qualified immunity, despite finding that the revocation of a permit might violate an

established right, because defendants' actions were determined to be reasonable].  In *Zahra*, despite a finding of possible constitutional violations after plaintiff's building permits were revoked based on selective enforcement, the court still granted individual defendants qualified immunity on the basis that it was "objectively reasonable to conclude" that the plaintiff was not in compliance with pans approved by the building department. *Id*. at 687.

Plaintiff's proffered evidence of alleged criminal conduct against CURRAN as discussed in depth *supra* is entirely based on Plaintiff's own generalized speculation.  Plaintiff's "evidence" does not provide anything definitive or concrete to show that any action CURRAN took during his inspection of the Subject Property on August 27, 2020 resulted in any criminal conduct. (Curran Decl. ¶6; Lew Decl., Exh. P.)  In fact, CURRAN actually issued two permits in Plaintiff's favor that allowed Plaintiff to renovate and address several NOVs that were existing against the property. (Curran Decl. ¶8.)  Plaintiff's failure to install guardrails properly under PA 201810183586, meant that CCSF Defendants were in their right to revoke a certificate of completion issued by CURRAN if the terms for the certificate and the terms of completion were not fully performed by Plaintiff. San Francisco Building Code § 106A.4.5. DBI and Planning employees such as CURRAN and the CCSF Defendants are authorized to enforce provisions of the San Francisco Building and Planning Codes. San Francisco Building Code § 104A.2.1 and San Francisco Planning Code § 176(b).  When CURRAN issued the two permits to Plaintiff enabling Plaintiff to address and abate two separate NOVs, CURRAN did so as part of his enforcement authorization under San Francisco Building Code § 104A.2.1 and Planning Code § 176(b).  Similarly, when CURRAN issued the certificate of completion under PA 201810183586 contingent on a guardrail being installed by Plaintiff, he did so under the referenced San Francisco code sections.  The revocation of the certificate of completion issued by CURRAN even if it were found to be unconstitutional, would be overcome by the reasonable enforcement actions taken by the CCSF Defendants, which would qualify CURRAN and the CCSF Defendants to qualified immunity under federal law.

Additionally, Plaintiff cannot demonstrate any nexus between the actions performed by CURRAN during his inspection on August 27, 2020 and how such actions supposedly resulted in all of the delays and alleged acts of retaliation that followed by the CCSF Defendants.  By the time the CCSF Defendants are alleged to have retaliated against Plaintiff, CURRAN was no longer involved with

enforcement actions after August 27, 2020 and was no longer an employee of CCSF. As a result, CURRAN cannot be held responsible for actions performed by other parties after he was no longer involved in any way with the Subject Property.

Furthermore, as noted in CCSF's Opposition to Plaintiff's MSJ, Plaintiff's arguments against an assertion of qualified immunity by CURRAN and the CCSF Defendants cites to cases that are neither on point and in some cases distinguishable or in fact actually support extending qualified immunity to all the referenced defendants. For example, Plaintiff relies on the *City of Monterey v. Del monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 704-705 (1999) as standing for the proposition that denials of permit applications can be considered a violation of constitutional rights. The *City of Monterey* case is distinguishable from Plaintiff's retaliation allegations in the present case because *Monterey* dealt with regulatory takings in relation to due process and equal protection issues unlike Plaintiff's claims for retaliation in the present case. *Id*. at 698. Furthermore, the Supreme Court in *Monterey* was clear that the issue before it whether the petitioning party had a right to a jury trial since it involved a taking, and if such a right existed due to the taking, whether the jury was properly instructed. *Id.* at 694. Plaintiff's present case, does not assert that CCSF, CURRAN or any of the CCSF Defendants were engaged in a taking of the Subject Property from him nor is Plaintiff's right to a jury due to a taking. Since the Supreme Court in *Monterey* did not examine the sufficiency of evidence upon which the jury verdict was reached in the underlying trial, Plaintiff can point to no analogous conduct with which to apply in any factual analysis of the present case, which means, any attempts to apply the holding to a qualified immunity analysis presently would be difficult and unhelpful for this Court.

Moreover, it is unclear how CURRAN is responsible for any alleged retaliatory actions purportedly perpetuated by any of the CCSF Defendants after the inspections CURRAN performed on August 27, 2020. CURRAN is improperly being lumped in with other defendants and being held responsible for actions taken after his part involving the Subject Property had concluded. CURRAN did not engage in any taking of the Subject Property from Plaintiff, which would make the application of the *Monterey* case to this case distinguishable for purposes of qualified immunity analysis.

In a similar vein, Plaintiff cites to *Allen v. Schribner*, 812 F.2d 426, 434 (9th Cir. 1987) for the proposition that the Court can infer retaliatory motive from timing and conduct. The *Allen* case involved

an employment dispute where a former California state employee suffered reassignment and harassment as a result of voicing opinions over the State's handling of a fruit fly infestation. *Id*. at 429. While the plaintiff in the *Allen* case presented clear and specific statements that were protected constitutionally as political speech for which he suffered harassment, Plaintiff in this present case does the opposite.

Other than generalized allegations against CURRAN that states CURRAN was engaged in purported criminal conduct, which based on unsubstantiated speculation may or may not have involved the Subject Property directly, Plaintiff presents no evidence against CURRAN on how any action taken during the inspection that took place on August 27, 2020 led to the alleged subsequent harassment Plaintiff suffered from the other CCSF Defendants. Furthermore, when Plaintiff was asked at deposition how he came to the conclusion or what evidence he was relying on that CCSF employees were harassing him because of his participation with an FBI investigation into CURRAN, Plaintiff stated that he was unaware of any act of retaliation. (Lew Decl., Exh. A, 134:19-135:12.) Plaintiff alleges that after CURRAN was indicted for an unrelated criminal matter that did not involve the Subject Property, that various City Defendants retaliated against him for assisting the FBI in their investigation. (*Id*. at 152:13-155:11.) Plaintiff then testified to a fanciful claim without showing any evidence that at least one or several of the CCSF Defendants may have engaged in a cover up and even went so far as to alter or doctor CCSF building documents to deny him the ability to proceed with his renovation project despite CURRAN previously having given him a preliminary certificate of completion. (*Id*. 155:12-158:14.) Crucially, none of Plaintiff's deposition testimony points to how CURRAN contributed to this alleged conspiracy to retaliate against him or to harass him.

In *Allen*, the harassment was made in response to the plaintiff's statements about the infestation to the media and culminated in disparaging remarks against plaintiff. *Allen, supra*, 812 F.2d at 435-436. The allegations of harassment were further substantiated by declarations of plaintiff's coworkers, which revealed by plaintiff was labeled a troublemaker and an excused was manufactured to remove him from his job. *Id*. at 435. In the present case, none of the specificity of harassing behavior or statements alleged in *Allen* are present based on Plaintiff's allegation and even if such harassment existed, none of the behavior complained of involved CURRAN directly. Such non-specific allegations not supported by actual evidence are insufficient to overcome the qualified immunity claimed by CURRAN along with

1  the other CCSF Defendants.

2          Finally, Plaintiff cites to one additional case, *Mt. Health City School Dist. Board of Education v.*

3  *Doyle*, 439 U.S. 274, which involves another employment case dealing with employer retaliation.  The

4  Supreme Court's opinion dealt mostly with whether lower courts had jurisdiction over such claims and

5  whether or not the School Board was entitled to a claim of immunity under the Eleventh Amendment.

6  The Supreme Court did not rule on the merits of the employee's First and Fourteenth Amendment claims

7  and instead remanded them back to the district court for adjudication.  None of the cases Plaintiff relies

8  on the support his retaliation claims support the proposition that CURRAN would be on notice that his

9  actions involving the Subject Property were unconstitutional.

10         Furthermore, none of the cases Plaintiff relies on negates CURRAN's claim to qualified

11 immunity since Plaintiff is unable to do the following: (1) prove there is a nexus between the alleged

12 retaliatory acts by CCSF Defendant after CURRAN's actions involving the Subject Property already

13 concluded on or about August 27, 2020; and (2) even if Plaintiff can prove CURRAN retaliated against

14 him in some fashion, Plaintiff has not presented any evidence that CURRAN's approval of two permits

15 and a preliminary approval of a third permit pending the installation of a guardrail, were unreasonable

16 and beyond the scope of his duties as a CCSF building inspector.

17 **D.    Plaintiff's Slander Of Title Claim Fails Against CURRAN Fails:**

18         A cause of action for slander of title occurs when a person "without a privilege to do so, publishes

19 a false statement that disparages title to property and causes the owner thereof some pecuniary loss or

20 damage." *Ghuman v. Wells Fargo Bank, N.A.*, 989 F.Supp.2d 994, 999-1000 (E.D. Cal. 2013).  The

21 elements of this tort are: (1) a publication; (2) without privilege or justification; (3) direct pecuniary loss;

22 and (4) falsity.  *Id*. citing to *Truck Ins. Exchange v. Bennett*, 53 Cal.App.4th 75, 84 (2d Dist. Cal. 1997).

23         Plaintiff's MSJ does not provide any arguments or analysis in support of his first cause of action

24 for slander of title against CURRAN and focuses solely on whether CURRAN and the other defendants

25 engaged in a violation of his First Amendment rights under a 42 U.S.C. 42 § 1983 claim, which Plaintiff

26 pleads as a separate cause of action.  Since Plaintiff's MSJ fails to provide any evidentiary support or

27 legal analysis to affirmatively request that he prevail on his slander of title cause of action, Plaintiff has

28 not provided the legal basis for this cause of action to be granted in his favor via his summary judgment

1    motion.  As a result, any attempts by Plaintiff to move for summary judgment on his slander of title

2    claim against CURRAN must be denied.  Plaintiff presents no admissible evidence of undisputed facts

3    that support the elements required for him to prevail on this cause of action against CURRAN.

4    **E.    Plaintiff's Intentional Interference With Prospective Economic Relations Claim Against CURRAN Fails:**

5

6        The tort of intentional interference with prospective economic relations ("IIWPER") requires

7    allegations of the following elements: "(1) a valid contract between plaintiff and a third party; (2)

8    defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or

9    disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship;

10   and (5) resulting damage." *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1106,

11   *3-4 (9th Cir. 2007), citing to *Quelimane Co. v. Stewart Title Guar. Co.,* 19 Cal.4th 26, 55 (1998).

12       Plaintiff's MSJ does not provide any arguments or analysis in support of his third cause of action

13   for IIWPER against CURRAN and focuses solely on whether CURRAN and the other defendants

14   engaged in a violation of his First Amendment rights under a 42 U.S.C. 42 § 1983 claim, which Plaintiff

15   pleads as a separate cause of action.  Since Plaintiff's MSJ fails to provide any evidentiary support or

16   legal analysis to affirmatively request that he prevail on his IIWPER cause of action, Plaintiff has not

17   provided the legal basis for this cause of action to be granted in his favor via his summary judgment

18   motion.  As a result, any attempts by Plaintiff to move for summary judgment on his IIWPER claim

19   against CURRAN must be denied.  Plaintiff presents no admissible evidence of undisputed facts that

20   support the elements required for him to prevail on this cause of action against CURRAN.

21   **F.    Plaintiff's Claim For Intentional Infliction Of Emotional Distress Against CURRAN Fails:**

22

23       To prove a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show

24   the following elements: (1) extreme and outrageous conduct by the defendant with the intention of

25   causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's

26   suffering of severe or extreme emotional distress; and (3) actual and proximate causation of the

27   emotional distress by defendant's outrageous conduct. *Simo v. Union of Needletrades, Indus. & Textile*

28   *Employees, S.W. Dist. Council*, 322 F.3d 602, 621-622 (9th Cir. 2003), citing *Christensen v. Superior*

- 17 -

*Ct.*, 54 Cal.3d 868, 903 (1991).  "Conduct is deemed outrageous if it is 'so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Id*.

Plaintiff's MSJ does not provide any arguments or analysis in support of his fifth cause of action for IIED against CURRAN and focuses solely on whether CURRAN and the other defendants engaged in a violation of his First Amendment rights under a Section 1983 claim, which Plaintiff pleads as a separate cause of action.  Since Plaintiff's MSJ fails to provide any evidentiary support or legal analysis to affirmatively request that he prevail on his IIED cause of action, Plaintiff has not provided the legal basis for this cause of action to be granted in his favor via his summary judgment motion.  As a result, any attempts by Plaintiff to move for summary judgment on his IIED claim against CURRAN must be denied.  Plaintiff presents no admissible evidence of undisputed facts that support the elements required for him to prevail on this cause of action against CURRAN.

## G.    Plaintiff's Claim For Negligence Against CURRAN Fails:

To prevail on a cause of action for negligence under California law, a plaintiff must establish the following elements: (1) the defendant's legal duty to use due and reasonable care; (2) a breach of such legal duty; and (3) that the breach is the proximate or legal cause of the resulting injury. *Radus Tek Services, Inc. v. IDC Technologies Inc.*, 767 F.Supp.3d 972, 978-979 (N.D. Cal. 2025), citing to *Ladd v. County of San Mateo*, 12 Cal.4th 913, 917 (1996).  The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion. *Id*., citing to *Bily v. Arthur Young & Co.*, 3 Cal.4th 370, 397 (1992).  A duty of care may arise through statute, contract or a special relationship between the parties. *Id*.  There is generally no duty of care where a separate legal remedy already exists. *Id*.

Plaintiff's MSJ does not provide any arguments or analysis in support of his sixth cause of action for negligence against CURRAN, instead focusing solely on whether CURRAN and the other defendants engaged in a violation of his First Amendment rights under a Section 1983 claim, which Plaintiff pleads as a separate cause of action.  Since Plaintiff's MSJ fails to provide any evidentiary support or legal analysis to affirmatively request that he prevail on his negligence cause of action, Plaintiff has not provided the legal basis for this cause of action to be granted in his favor via his summary judgment motion.  As a result, any attempts by Plaintiff to move for summary judgment on his negligence claim

against CURRAN must be denied.  Plaintiff presents no admissible evidence of undisputed facts that support the elements required for him to prevail on this cause of action against CURRAN.

**H.    Plaintiff's MSJ Should Be Denied Because There Are Disputed Issues Of Material Facts To His Damages Claims:**

With the exception of Plaintiff's Cause of Action for Declaratory Relief, every one of Plaintiff's other causes of action against CURRAN requires Plaintiff to prove the element of damages.  Plaintiff's damages claims are based on disputed material facts that are contradicted by his own deposition testimony.  In his SAC, Plaintiff alleges he had three pending sales that were lost as a result of DBI's interference and retaliatory conduct, which resulted in four million dollars in damages. (SAC, at ¶12.) Plaintiff alleges the first resale of the Subject Property would have taken place in 2019 or 2020 if employees for DBI had not retaliated. (*Id.*)  However, Plaintiff admits that the CCSF Defendants did not do any purported retaliatory actions until at least May or June of 2021, which was approximately a year after the sale fell through. (Lew Decl., Exh. A at 29:2-12; 134:19-135:12.)

Furthermore, with respect to CURRAN specifically, Plaintiff presents no evidence that CURRAN retaliated against him in any way after CURRAN performed inspections of the Subject Property on August 27, 2020 and granted two permits in his favor, but did not issue Plaintiff a finalized job card for the one remaining permit because of a missing guardrail.  Plaintiff concedes that potential purchasers declined to visit the Subject Property during a first attempted sale due to the Covid pandemic and not due to any specific conduct of CURRAN or any other CCSF Defendant. (Exh. A at 30:19-33:19.) Plaintiff's testimony completely contradicts his claims that CURRAN played a part in any unsuccessful attempt to sell the Subject Property before May or June 2021. (*Id.*)

As noted in the Opposition to Plaintiff's MSJ filed by the CCSF Defendants, Plaintiff does not plead a claim with reasonable certainty. *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993), abrogated by *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016). Plaintiff seeks compensation for a plethora of unsubstantiated items that he alleged incurred to defend against alleged retaliation caused by CURRAN and/or the CCSF Defendants, including: 'hundreds of trips" to San Francisco, a number of unspecified hard money loans, savings and retirement, vintage vehicles, boats, inheritance and a number of other unsubstantiated items, including a charge for $50,000

listed as "Miscellaneous" expenses. (ECF No. 109-3 at 31.)  Plaintiff produces no receipts, applicable invoices, cancelled checks or any other forms of verification to support the speculative damages sought.

Furthermore, Plaintiff produces no evidence that any specific action of CURRAN caused Plaintiff to incur any of the unsupported damages identified.  Based on the lack of documentation and "evidence" Plaintiff relies on, Plaintiff is unable to provide the evidence required to support his claim for damages, which proves fatal to all of his causes of action requiring damages as an element of such causes of action, which includes his claims for: (1) Slander for Title; (3) Intentional Interference With Prospective Economic Relations; (4) Violation of Civil Rights, 42 U.S.C. § 1983; (5) Intentional Infliction of Emotional Distress; and (6) Negligence.

**I.    Plaintiff's Cause Of Action For Declaratory Relief Fails Because He Is Unable To Prove He Is Entitled To The Relief Sought And Declaratory Relief Is Not The Proper Subject Of An MSJ:**

To qualify for declaratory relief, a party has to demonstrate its action presents two essential elements: (1) there is a proper subject of declaratory relief; and (2) there exists an actual controversy involving justiciable questions relating to the party's rights or obligations. FRCP 57 and 28 U.S.C. § 2201 also known as the Declaratory Judgment Act ("DJA").  [T]he DJA allows a court to "declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201(a), it "does not create new substantive rights," *Siino v. Foresters Life Insurance and Annuity Co.*, 133 F.4th 936, 945, ns.10 and 11 (9th Cir. 2025.)  The DJA is purely a remedial statute that provides an affirmative remedy only when a cause of action otherwise exists. *Id*.  However, despite the liberal construction of declaratory relief that can be exercised by the trial court, affirmative relief cannot be granted in the absence of pleading and proof warranting such relief. *Id*., at ns. 14 and 15.  A plaintiff seeking declaratory relief must present an evidentiary record that supports the terms of their requested declaration. *Id*.

Here, Plaintiff's motion for declaratory relief fails because Plaintiff does not assert any specific claim that would qualify for declaratory relief from this Court.  Based on all of the separate underlying causes action pled in Plaintiff's SAC, it is unclear what Plaintiff seeks declaratory relief for.  It is unclear on the pleadings whether Plaintiff is seeking declaratory relief for alleged breach of contract claims, for the alleged interference with existing economic relations, for existing permits or restrictions placed on

1    the Subject Property or simply wants all causes of action granted in his favor, which is not the purpose

2    of the DJA.

3         More importantly, if Plaintiff is seeking declaratory relief from CCSF specifically, it is unclear

4    what declaratory relief Plaintiff specifically seeks against CURRAN for any action that CURRAN took

5    as part of his inspection of the Subject Property conducted on August 27, 2020.  Plaintiff's failure to

6    indicate with specificity in the SAC how any action taken by CURRAN caused any of the controversies

7    complained of precludes Plaintiff from seeking declaratory relief against CURRAN.  CURRAN is not

8    responsible for any actions taken by any other party in the case after his inspection on August 27, 2020.

9    (Curran Decl. ¶17.)

10        Even if the Court were generous and attempted to grant declaratory relief based on the certificate

11   of competition that was issued for PA 201808107075 (issued by CURRAN on 8/27/2020), DBI records

12   indicate the NOV upon which the PA was issued, was completed by 9/29/21 when Inspector Prasad

13   performed a reinspection and found that the items in the NOV were fully corrected. (ECF 109-3, p. 28

14   of 34.)  As a result, any form of declaratory relief Plaintiff might remotely even claim for is now moot.

15   As a result, Plaintiff's claims for declaratory relief against CURRAN fails and must be denied.

16                              **IV.    <u>CONCLUSION</u>**

17        For the foregoing reasons, this Court should deny Plaintiff's MSJ in its entirety, as CURRAN

18   has demonstrated that there are disputes of material facts and Plaintiff's motion fails to provide sufficient

19   evidence to sustain each of the causes of action against CURRAN.

20   Dated: January 6, 2026                    MURPHY, PEARSON, BRADLEY & FEENEY

21

22                              By _____*/s/ Alston L. Lew*_____
                                    John P. Girarde
23                                  Alston L Lew
                                    Attorneys for Defendant
24                                  BERNARD J. CURRAN

25   ALL.5235206.docx

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I, Ron Myers, declare:

I am a citizen of the United States, am over the age of eighteen years, and am not a party to or interested in the within entitled cause.  My business address is 550 California Street, 14th Floor, San Francisco, California 94104.

On January 6, 2026, I served the following document(s) on the parties in the within action:

**DEFENDANT BERNARD CURRAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| X | **VIA MAIL:** I am familiar with the business practice for collection and processing of mail. The above-described document(s) will be enclosed in a sealed envelope, with first class postage thereon fully prepaid, and deposited with the United States Postal Service at San Francisco, California on this date, addressed as listed below. |
| X | **VIA E-MAIL:**  I attached the above-described document(s) to an e-mail message to the person(s) at the e-mail address(es) listed below.  My email address is RMyers@mpbf.com. |

Hunter W. Sims III
Renee E. Rosenblit
Office of the City Attorney
1390 Market Street, Sixth Floor
San Francisco, CA  94102
Emails:  hunter.sims@sfcityatty.org
       renee.rosenblit@sfcityatty.org

Attorney For Defendants
CITY AND COUNTY OF SAN
FRANCISCO, WILLIAM HUGHEN,
KEVIN BIRMINGHAM, NATALIA
KWAITKOWSKA, JOE DUFFY

Patrick Gallagher
9845 N. 103 Drive
Sun City, AZ  85351
E-mail:  bigblockpat@gmail.com

In Pro Per

I declare under penalty of perjury under the laws of the State of California that the foregoing is a true and correct statement and that this Certificate was executed on January 6, 2026.

By _____
Ron Myers

- 1 -