Patrick Gallagher
9845 N. 103rd Drive
Sun City, AZ 85351
(925) 325-3911
bigblockpat@gmail.com

Plaintiff, Self-Represented

**FILED**

**MAR 20 2026**

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

PATRICK GALLAGER,                    ) Case No.: 23-cv-03579-SI
                                     )
                Plaintiff,           )
                                     )
    vs.                              )
                                     )
                                     )
CITY AND COUNTY OF SAN FRANCISCO,    )
BERNARD CURRAN, RODRIGO SANTOS,      )
WILLIAM HUGEN, KEVIN BIRMINGHAM,     )
NATALIA KWAITKOWSKA, and JOE DUFFY,  )
                                     )
                                     )
                                     )
                Defendant(s).        )
                                     )
                                     )
_____)

### PLAINTIFF'S SUPPLEMENTAL BRIEF RE: MUNICIPAL LIABILITY

### I. INTRODUCTION

Pursuant to this Court's Order dated March 11, 2026, Plaintiff Patrick Gallagher ("Plaintiff") respectfully submits this Supplemental Brief to address the City and County of San Francisco's ("the City") liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). As this Court noted in its Order, the critical question before it is whether the evidence of a persistent and

---

widespread custom of retaliatory enforcement by the Department of Building Inspection (DBI) warrants a finding of municipal liability. The evidence—drawn from the DBI's documented history of retaliatory enforcement and the federal criminal proceedings of its senior leadership—proves a "persistent and widespread" custom of administrative weaponization. Specifically, the DBI utilizes the Notice of Violation (NOV) and permit process as a tool of retaliation against individuals who expose department corruption. For the reasons set forth below, Plaintiff respectfully requests that the Court grant summary judgment in favor of the Plaintiff on the "custom and policy" theory of *Monell* liability.

## II. LEGAL STANDARD

Under *Monell*, a municipality is liable for constitutional violations resulting from a "custom or usage" that is so "permanent and well-settled as to constitute a custom or usage with the force of law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970). A plaintiff establishes this by showing a pattern of similar constitutional violations of which the municipality had actual or constructive knowledge. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) (noting that a pattern of similar violations is ordinarily necessary to demonstrate deliberate indifference).

## III. ARGUMENT

### A. The *Richards* Case Establishes the DBI's Methodology of Retaliation.

The "custom and practice" of the DBI is evidenced by the allegations in *Richards v. City and County of San Francisco*, Case No. 3:20-cv-01242-JCS [Ex. A]. The *Richards* First Amended Complaint (FAC) details a methodology of retaliation that mirrors the tactics used against Plaintiff Gallagher:

PLAINTIFF'S SUPPLEMENTAL BRIEF RE: MUNICIPAL LIABILITY

1. **Administrative Sabotage:** In *Richards*, the DBI allegedly revoked building permits that had been previously approved as a "blunt force" attempt to silence the plaintiffs' criticism of department corruption.

2. **Identical Personnel:** Defendant **Mauricio Hernandez** is a primary actor in the *Richards* pattern. The *Richards* plaintiffs alleged Hernandez conducted unauthorized entries to manufacture code violations. This mirrors Hernandez's conduct at 200 Naples Street, where he was dispatched to issue a retaliatory NOV for a unit that the DBI had already certified as 100% complete.

3. **Financial Timing:** The *Richards* plaintiffs alleged that the DBI timed its enforcement actions to cause maximum financial distress. Similarly, the NOV against Plaintiff Gallagher was issued just four days before a scheduled escrow closing, intended to sabotage the sale of the property.

## B. The *Curran/Santos* Prosecution Proves the City's Knowledge of Systemic Corruption.

The City cannot maintain that the retaliatory conduct was the work of "rogue" employees. The criminal proceedings in *United States v. Bernard Curran and Rodrigo Santos*, Case No. 3:21-cr-00453-VC, detail a years-long "scheme and artifice to defraud" the citizens of San Francisco of the "honest and faithful services" of DBI inspectors [Ex. B].

The record establishes several critical facts relevant to Plaintiff's *Monell* claim:

1. **Custom of Favoritism and Penalty:** Senior Inspector Bernard Curran—the official who signed Plaintiff's Certificate of Final Completion in 2020—waived his right to an indictment (Dkt. 50) and admitted to a scheme involving "favorable official treatment" in exchange for personal and charitable benefits [Ex. C].

PLAINTIFF'S SUPPLEMENTAL BRIEF RE: MUNICIPAL LIABILITY

2. **Widespread Nature:** The Indictment (Dkt. 14) and subsequent Judgment for co-conspirator Rodrigo Santos (Dkt. 88) confirm a pattern where Curran took official actions for "donor-clients," including performing inspections outside of his assigned district [Ex. B; Ex. D].

3. **Departmental Awareness:** The scheme continued from at least 2017 through 2020. The City had constructive knowledge of this "pay-to-play" culture yet failed to implement oversight to prevent inspectors from using the NOV process to penalize those who refused to participate in the corruption. Under *Connick*, this failure to act in the face of obvious wrongdoing constitutes deliberate indifference.

## C. The Custom was the "Moving Force" Behind Plaintiff's Injury.

Plaintiff's experience is the inevitable result of this custom. When Plaintiff refused to facilitate the "pay-to-play" schemes of Curran and Rodrigo Santos and instead cooperated with the FBI, the DBI triggered its established retaliatory response. The department utilized the same personnel (Hernandez) and the same administrative weapon (the NOV) identified in *Richards* to punish the whistleblower.

## IV. CONCLUSION

The DBI's history of using code enforcement as a retaliatory weapon is "persistent and widespread." The City's failure to rectify this custom, even in the face of federal criminal prosecutions of its senior inspectors, constitutes deliberate indifference. Because the evidence in the record establishes as a matter of law that this custom existed and was the moving force behind the violation of Plaintiff's constitutional rights, the Court should grant summary judgment in favor of the Plaintiff on the "custom and policy" theory of *Monell* liability.

Respectfully submitted,

By: _____
Patrick Gallagher

PLAINTIFF'S SUPPLEMENTAL BRIEF RE: MUNICIPAL LIABILITY

Plaintiff, Self-Represented
9845 N. 103rd Drive
Sun City, AZ 85351
(925) 325-2911
bigblockpat@gmail.com

PLAINTIFF'S SUPPLEMENTAL BRIEF RE: MUNICIPAL LIABILITY

Patrick Gallagher
9845 N. 103rd Drive
Sun City, AZ 85351
(925) 325-3911
bigblockpat@gmail.com

Plaintiff, Self-Represented

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK GALLAGER,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br>BERNARD CURRAN, RODRIGO SANTOS,<br>WILLIAM HUGEN, KEVIN BIRMINGHAM,<br>NATALIA KWAITKOWSKA, and JOE DUFFY,<br><br><br>　　　　　　　Defendant(s). | Case No.: 23-cv-03579-SI |

## PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE

Plaintiff Patrick Gallagher respectfully requests that the Court take judicial notice of the following public records in support of his Supplemental Brief:

## EXHIBIT LIST

- **EXHIBIT A:** Plaintiffs' First Amended Complaint, *Richards, et al. v. City and County of San Francisco*, Case No. 3:20-cv-01242-JCS.

1

- **EXHIBIT B:** Federal Grand Jury Indictment, *United States v. Curran and Santos*, Case No. 3:21-cr-00453-VC.

- **EXHIBIT C:** Waiver of Indictment by Bernard Curran, Case No. 3:21-cr-00453-VC.

- **EXHIBIT D:** Judgment in a Criminal Case as to Rodrigo Santos, Case No. 3:21-cr-00453-VC.

## MEMORANDUM OF POINTS AND AUTHORITIES

Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record," including filings and dockets in other court proceedings. *Rein v. Providian Fin. Corp.*, 270 F.3d 895 (9th Cir. 2001). Exhibits A-D are federal court records establishing the DBI's custom and the City's knowledge thereof.

Respectfully submitted,

By: _____
Patrick Gallagher
Plaintiff, Self-Represented
9845 N. 103rd Drive
Sun City, AZ 85351
(925) 325-2911
bigblockpat@gmail.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

2

PATRICK GALLAGER,                         ) Case No.: 23-cv-03579-SI
                                          )
                          Plaintiff,      )
                                          )
          vs.                             )
                                          )
                                          )
CITY AND COUNTY OF SAN FRANCISCO,         )
BERNARD CURRAN, RODRIGO SANTOS,           )
WILLIAM HUGEN, KEVIN BIRMINGHAM,          )
NATALIA KWAITKOWSKA, and JOE DUFFY,       )
                                          )
                                          )
                          Defendant(s).   )
                                          )
                                          )
_____ )

**[PROPOSED] ORDER GRANTING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE**

The Court, having considered Plaintiff Patrick Gallagher's Request for Judicial Notice of public records in support of his Supplemental Brief on Municipal Liability, and good cause appearing,

**IT IS HEREBY ORDERED** that the Request is **GRANTED**.

The Court takes judicial notice of the following public records:

1. **Plaintiffs' First Amended Complaint** in *Dennis Richards, et al. v. City and County of San Francisco, et al.*, Case No. 3:20-cv-01242-JCS;

2. **Federal Grand Jury Indictment** in *United States of America v. Bernard Curran and Rodrigo Santos*, Case No. 3:21-cr-00453-VC;

3. **Waiver of Indictment** by Bernard Curran, Case No. 3:21-cr-00453-VC; and

4. **Judgment in a Criminal Case** as to Rodrigo Santos, Case No. 3:21-cr-00453-VC.

PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE

**IT IS SO ORDERED.**

Dated:

———————————————————
SUSAN ILLSTON
United States District Judge

PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

PATRICK GALLAGER,                                )   Case No.: 23-cv-03579-SI
                                                 )
                    Plaintiff,                   )
                                                 )
    vs.                                          )
                                                 )
                                                 )
CITY AND COUNTY OF SAN FRANCISCO,                )
BERNARD CURRAN, RODRIGO SANTOS,                  )
WILLIAM HUGEN, KEVIN BIRMINGHAM,                 )
NATALIA KWAITKOWSKA, and JOE DUFFY,              )
                                                 )
                                                 )
                    Defendant(s).                )
                                                 )
                                                 )
_____          )

## CERTIFICATE OF SERVICE

I, (name), hereby certify that I am employed by (name) and am of such age and

discretion as to be competent to serve papers.

I further certify that on this date I caused a copy of Plaintiff's Supplemental Brief re:

Municipal Liability and Request for Judicial Notice to be placed in a postage-paid envelope

addressed to the counsel for Defendants at the addresses stated below and deposited said envelope

in the United States mail.

Addressee:  Timothy J. Halloran
            John P. Girarde
            Alston L. Lew
            Murphy, Pearson, Bradley & Feeney
            550 California Street, 14th Floor
            San Francisco, CA 94104-1001

            Attorneys for Bernard Curran

///
///

5

PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE

*///*

David Chiu, City Attorney
Jennifer Choi, Chief Trial Deputy
Hunter W. Sims III, Deputy City Attorney
Fox Plaza 1390 Market Street, Sixth Floor
San Francisco, California 94102-5408

Attorneys for City and County of San Francisco; William Hughen; Kevin
Birmingham; Natalia Fossi (Erroneously sued as Natalia Kwaitkowska); Mauricio
Hernandez; and Joe Duffy

Dated this ___/7___ day of March, 2026

PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE

# CERTIFICATE OF SERVICE

I, Anna L. Hill, certify/declare as follows:

I am a citizen of the United States, over the age of eighteen years and not a party to the within entitled action. On March 26, 2020, I served the attached:

- **PLAINTIFFS' FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, TRESPASS AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

on the interested party(ies) named below:

Margaret W. Baumgartner
Deputy City Attorney
Office of San Francisco City Attorney
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102
Direct: 415-554-3859
Email:
Margaret.baumgartner@sfcityatty.org

*Defendants CITY AND COUNTY OF SAN FRANCISCO; EDWARD SWEENEY; and MAURICIO HERNANDEZ*

I served the attached document(s) in the manner indicated below:

☐ **BY MAIL:** I caused true and correct copy(ies) of the above documents to be placed and sealed in envelope(s) addressed to the addressee(s) named above and, following ordinary business practices, placed said envelope(s) at the Law Offices of Moscone Emblidge & Rubens LLP, 220 Montgomery, Suite 2100, San Francisco, California, 94104, for collection and mailing with the United States Postal Service and there is delivery by the United States Post Office at said address(es). In the ordinary course of business, correspondence placed for collection on a particular day is deposited with the United States Postal Service that same day.

☐ **BY PERSONAL SERVICE:** I caused true and correct copies of the above documents to be placed and sealed in envelope(s) addressed to the addressee(s) and I caused such envelope(s) to be delivered by hand on the office(s) of the addressee(s).

☐ **BY FACSIMILE:** I caused a copy(ies) of such document(s) to be transmitted via facsimile machine. The fax number of the machine from which the document was transmitted was (415) 362-2006. The fax number(s) of the machine(s) to which the document(s) were transmitted are listed above. The fax transmission was reported as complete and without error.

1

CERTIFICATE OF SERVICE                                    Case No. 3:20-CV-01242-JCS

☐ **BY FEDERAL EXPRESS OVERNIGHT**: I caused true and correct copies of the above documents to be placed and sealed in envelope(s) addressed to the addressee(s) named above and, following ordinary business practices, placed said envelope(s) at the Law Offices of Moscone Emblidge & Rubens LLP, 220 Montgomery Street, Suite 2100, San Francisco, California, 94104, for collection and mailing with Federal Express. I am informed that there is delivery service by Federal Express at the address(es) of the addressee(s) named above. In the ordinary course of business, correspondence placed for collection on a particular day is deposited with Federal Express that same day.

☒ **BY ELECTRONIC MAIL**: I caused true and correct copies of the above documents to be sent via e-mail to the e-mail addressee(s) named above. I did not receive, within a reasonable amount of time after the transmission, any electronic message other indication that the transmission was unsuccessful.

☐ **BY CERTIFIED MAIL**: I caused true and correct copy(ies) of the above documents to be placed and sealed in envelope(s), certified mail, return receipt requested, addressed to the addressee(s) named above and, following ordinary business practices, placed said envelope(s) at the Law Offices of Moscone Emblidge & Rubens LLP, 220 Montgomery, Suite 2100, San Francisco, California, 94104, for collection and mailing with the United States Postal Service and there is delivery by the United States Post Office at said address(es). In the ordinary course of business, correspondence placed for collection on a particular day is deposited with the United States Postal Service that same day.

I certify/declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 26, 2020, at San Francisco, California.

_/s/ Anna L. Hill_
Anna L. Hill

2

CERTIFICATE OF SERVICE                    Case No. 3:20-CV-01242-JCS

# EXHIBIT A

G. SCOTT EMBLIDGE, State Bar No. 121613
MATTHEW K. YAN, State Bar No. 257918
EVAN M. ROSENBAUM, State Bar No. 310414
MOSCONE EMBLIDGE & RUBENS LLP
220 Montgomery Street, Suite 2100
San Francisco, CA 94104
Telephone:    (415) 362-3599
Facsimile:    (415) 362-2006
Email:    emblidge@mosconelaw.com
    yan@mosconelaw.com
    rosenbaum@mosconelaw.com

Attorneys for Plaintiffs Dennis Richards,
Rachel Swann, and Six Dogs LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO COURTHOUSE

| | |
|---|---|
| DENNIS RICHARDS, an individual; RACHEL SWANN, an individual; and SIX DOGS LLC, a California Limited Liability Company,<br><br>        Plaintiffs,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a Municipal Corporation; EDWARD SWEENEY, an individual; and MAURICIO HERNANDEZ, an individual,<br><br>        Defendants. | Case No.: 3:20-cv-01242 JCS<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, TRESPASS AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br><u>DEMAND FOR JURY TRIAL</u> |

## INTRODUCTION

1.    A San Francisco Planning Commissioner, plaintiff Dennis Richards, publicly called into question the reliability of information provided by the San Francisco Department of Building Inspection ("DBI"). He pointed out what appeared to be "pay-to-play" practices at DBI

whereby DBI repeatedly turned a blind eye towards egregious permit violations by contractors who had close ties to DBI personnel.

2.    Rather than do what a good governmental agency should do when such claims are made – investigate and take steps to reform – DBI acted instead like a crook worried about being exposed. It brazenly retaliated against Commissioner Richards, a business in which he was an investor, and his business partner in a transparent attempt to silence his criticism and calls for investigation into perceived corruption.

3.    This Complaint addresses DBI's pattern of retaliatory conduct against Commissioner Richards, plaintiff Rachel Swann (with Commissioner Richards, the "Individual Plaintiffs"), and their company, plaintiff Six Dogs LLC (collectively with the Individual Plaintiffs, "Plaintiffs"). It also seeks to shed light on DBI's practices which are unlawful, undermine the public trust in government, and present a threat to public safety.

## PARTIES

4.    Plaintiff Dennis Richards is an individual domiciled in San Francisco, California. At all times relevant hereto, he has been a member of the San Francisco Planning Commission.

5.    Plaintiff Rachel Swann is an individual domiciled in San Francisco, California.

6.    Plaintiff Six Dogs LLC is a California limited liability company with its principal place of business in San Francisco, California.

7.    Defendant City and County of San Francisco ("CCSF") is an entity established pursuant to Article XI, section 6 of the California Constitution. The San Francisco Department of Building Inspection is the agency responsible for issuing permits and overseeing the enforcement state and local building codes and regulations. As such, inspectors of DBI are local officials of the CCSF.

8.    On information and belief, Defendant Edward Sweeney serves as the Deputy Director, Inspection Services for DBI. As such, he is a local official of the CCSF.

9.    On information and belief, Defendant Mauricio Hernandez (with Deputy Director Sweeney, the "Individual Defendants") serves as a Chief Building Inspector, Code Enforcement for DBI and reports to Deputy Director Sweeney. As such, he is a local official of the CCSF.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction pursuant to 28 U.S.C. sections 1331 and 1343 and 42 U.S.C. section 1983.  Supplemental jurisdiction is proper under 28 U.S.C. section 1367(a) and common law as the state law claims form part of the same case or controversy.

11.     Venue is proper in this district because the defendants CCSF, a municipality, and its officials are located in this district, the real property at issue in this litigation is located within this district, and the events giving rise to the claims occurred in this district.

## GENERAL ALLEGATIONS

### I.     THE SIX DOGS PROPERTY

12.     Commissioner Richards and Ms. Swann are partners and owners of Six Dogs LLC, a real estate development company.

13.     Six Dogs owns one property, a four-unit building located at 3426-3432 22nd Street, San Francisco, California ("the Property" or "the Six Dogs Property").  Six Dogs hired well-known San Francisco engineer Patrick Buscovich to oversee a routine renovation of the Property, which is two stories over a garage level.  The renovation involved no change to the building's envelope, and the Property remains a four-unit building.  Beginning in 2018, several permits were granted for different aspects of the renovation work, which was substantially completed in early 2019.  The permits and work were approved and/or inspected many times by multiple City departments, including DBI.

14.     On or about September 2, 2019, Six Dogs listed the Property for sale.

### II.     THE PLANNING COMMISSION'S REVIEW OF THE 18TH STREET PROJECT

15.     In the meantime, on or about May 9, 2019, the San Francisco Planning Commission held a Discretionary Review hearing regarding a project at 3847-3849 18th Street ("the 18th Street Project").  The Planning Department determined that the 18th Street Project involved a "two-story horizontal addition" with 882 cubic yards (which Plaintiffs are informed and believe would have filled over 160 dump trucks) of excavation without proper permits.  The Planning Commission was incensed about how the unpermitted work associated with the 18th Street Project could have happened given that it supposedly was regularly inspected by DBI.

16.    The 18th Street Project involved two convicted felons who Plaintiffs are informed and believe have close relationships with individuals at DBI.

17.    On or about July 18, 2019, Commissioner Richards led an inquiry by several of his fellow Commissioners into how DBI could have approved a series of permits for the 18th Street Project and inspected the work on many separate occasions but failed to notice the huge amount of excavation and other work being done outside the scope of the permits for the project.

18.    Commissioner Richards pointed out that the Planning Commission had been confronted with several recent projects involving gross misrepresentations on permit applications. Commissioner Richards went through many of the 18th Street Project's permits and explained that DBI appeared to have failed to conduct sufficient inspections, catch an obvious case of serial permitting, or notice a gross disparity between what was represented on the permitted plans and the actual conditions of the site.

19.    Near the end of the July 18 meeting, Commissioner Richards spoke out strongly about a "pay-to-play" problem in the City. The Planning Commission voted to continue the hearing on the 18th Street Project to August 29, 2019.

20.    On or about August 29, 2019, the Planning Commission held a meeting during which Commissioner Richards raised questions about DBI's testimony at the July 18 meeting. Commissioner Richards stated that he had "lost faith" in DBI and Commissioner Rich Hillis called for the City Attorney to conduct an investigation into what happened in the 18th Street Project. Both Commission President Myrna Melgar and Commissioner Richards spoke up and supported such an investigation. Other Planning Commissioners agreed. The Planning Commission voted to continue the matter to October 24, 2019. On or about October 24, 2019, the Planning Commission voted again to continue the matter to December 19, 2019.

## III.    DBI RETALIATION AGAINST THE SIX DOGS PROPERTY

21.    Less than a month after Commissioner Richards called for a City Attorney investigation and while the matter concerning the 18th Street Project was still pending before the Planning Commission, DBI began to retaliate against Commissioner Richards.

22.     On or about September 25, 2019, DBI supposedly received an anonymous complaint about work on Six Dogs' Property—work that had been performed and inspected months earlier. On information and belief, this anonymous complaint followed the inspection of the Property's records by Patricia Urrutia, the wife of a disgraced contractor currently being sued by the City for egregious conduct relating to building permits and who has close relationships with employees of DBI.

23.     Even though there was no indication of public safety or other urgent issues, the next day, Thursday, September 26, 2019, Defendant Mauricio Hernandez, a DBI Chief Building Inspector, immediately conducted a site inspection at the Property and then sent an Inspection Request Letter to Six Dogs.

24.     That same day, Mr. Hernandez and his supervisor, Defendant Edward Sweeney, a DBI Deputy Director, told Mr. Buscovich that they were going to find a way to come down hard on the Property.

25.     The next day, Friday, September 27, 2019, Commissioner Richards received a text message from Board of Appeals Member Daryl Honda stating: "Hey bro, there's some not so nice stuff going around about you right now. What's up."

26.     Commissioner Richards responded to the text from Board Member Honda by calling him and asking what he had heard and where he had heard it. Board Member Honda replied that he "hears things" and that Commissioner Richards was in deep trouble with DBI. He intimated to Commissioner Richards that Commissioner Richards needed to go to DBI to get this resolved. Commissioner Richards understood Board Member Honda to be telling him that he needed to make a deal with Deputy Director Sweeney, such that DBI would back off the Six Dogs Property if Commissioner Richards ceased his inquiry into the 18th Street Project.

27.     Commissioner Richards told Board Member Honda that he could not be bought and that he would not give in to extortion. He told Board Member Honda to tell Deputy Director Sweeney "to go to hell."

FIRST AMENDED COMPLAINT                          5                          Case No.: 3:20-cv-01242

28.    The next business day, Monday, September 30, 2019, DBI issued a Notice of Violation relating to the Six Dogs Property.  The Notice of Violation included standard language giving Six Dogs thirty days to address the alleged violations.

29.    However, that same day, Chief Building Inspector Hernandez signed a letter to Six Dogs revoking nine separate permits relating to the Property, many of which were for work that had long since been completed and approved by DBI.

30.    Based on records produced pursuant to public records requests, DBI's actions are unprecedented.

31.    During this same time period, DBI claims that "a folder was delivered [to DBI] concerning an approved plan PA#201807285200 [a permit associated with the project].  The letter critizes [sic] the approval of PA#201807285200."  In other words, the folder contained a critique of the plans prepared by Mr. Buscovich relating to the Property, including an exact copy of some of his plans.  Those plans are protected by copyright and other laws.  Plaintiffs are informed and believe for legal and other reasons, access to plans and the ability to copy plans at DBI is limited to a small group of people, including Defendant Sweeney.  Because Mr. Buscovich did not share his plans with any third parties, Plaintiffs are informed and believe that the supposedly anonymous plan critique could have occurred only if DBI improperly provided Mr. Buscovich's plans to a third party.  In fact, Defendants utilized the unlawful critique of Mr. Buscovich's plans in claiming that violations exist at the Property.

32.    Had Six Dogs and Commissioner Richards been treated like other property owners against whom complaints had been lodged, DBI would have inspected the Property, contacted Six Dogs about potential violations, and worked with Six Dogs to expeditiously resolve any outstanding issues.  Instead, DBI, through Chief Building Inspector Hernandez, revoked all of the project's permits, and when Six Dogs said it was going to appeal DBI's actions to the San Francisco Board of Appeals, Mr. Hernandez told Six Dogs that DBI would not work with Six Dogs to resolve any issues unless Six Dogs agreed not to appeal the unwarranted revocations.

33.    Six Dogs appealed the permit revocations to the City's Board of Appeals.

34.    On or about December 4, 2019, at a Board of Appeals hearing, members of the Board repeatedly expressed surprise that DBI revoked permits for the types of violations that DBI listed in the Notice of Violation.

## IV.    ADDITIONAL RETALIATION BY DBI

35.    DBI's retaliatory actions did not stop with the issuance of a Notice of Violation and the unwarranted revocation of permits relating to the Property.

36.    On or about December 3, 2019 and December 10, 2019, Six Dogs held two brokers' open houses for real estate brokers to view the Property. At each event, DBI Inspector William Walsh arrived and loudly complained about violations on the Property. On information and belief, Inspector Walsh's presence at the open houses was intentional and was planned to interfere with Six Dogs' ability to market the Property. After Inspector Walsh's actions Ms. Swann received many calls and comments from other brokers claiming that the Property was damaged goods.

37.    On or about December 18, 2019, on information and belief, DBI sent an inspector, Bettrieta Kime, from the San Francisco Fire Department, to another property owned and inhabited by Ms. Swann. On information and belief, Inspector Kime's purpose in visiting this property was to find anything for which she could cite Ms. Swann. Ms. Kime unlawfully gained entry into her building through false representations to a building tenant. She then posted a Notice of Violation on Ms. Swann's property.

38.    Late on the evening of March 3 or early on the morning of March 4, Ms. Swann's real estate office was broken into. Ms. Swann's personal office was ransacked. Many valuable items were left in the office in general and Ms. Swann's office in particular, dispelling the notion that this was a common, random burglary.

39.    As a direct result of DBI's actions (including those of Chief Building Inspector Hernandez and Deputy Director Sweeney), Commissioner Richards, Ms. Swann, and Six Dogs have suffered substantial damages including economic losses relating to the Property, severe emotional distress, and irreparable harm to reputation.

40.    On or about December 23, 2019, Commissioner Richards, Ms. Swann, and Six Dogs LLC submitted to the Controller's Office, Claims Division a Claim Against the City and County of San Francisco. The City rejected the claim on February 10, 2020.

**FIRST CAUSE OF ACTION**
**(Violation of Civil Rights, 42 U.S.C. § 1983)**
**(All Plaintiffs Against Individual Defendants)**

41.    Plaintiffs incorporate by reference each and every allegation in every preceding paragraph as if fully set forth herein.

42.    Defendants intentionally targeted properties owned by Six Dogs and Ms. Swann because of Six Dogs' and Ms. Swann's association with Commissioner Richards.

43.    In issuing Notices of Violation against the Property and Ms. Swann's property, in revoking permits, and in visiting and causing the visiting of the Property during open houses, Defendants acted in the performance of their official duties as San Francisco building inspectors.

44.    Defendants acted under color of local San Francisco ordinance by using their authority as building inspectors to issue Notices of Violation, revoke permits, and make public statements to members of the real estate community regarding the status of the Property.

45.    Defendants' actions were in direct response to and meant to cause the deprivation of Commissioner Richards's exercise of his right of freedom of speech guaranteed by the First and Fourteenth Amendments of the United States Constitution.

46.    Defendants' actions were in response to Commissioner Richards's speech concerning a matter of public concern, namely DBI's apparent corruption.

47.    Six Dogs, Commissioner Richards, and Ms. Swann were harmed as a result of Defendants' actions.

**SECOND CAUSE OF ACTION**
**(Trespass)**
**(Plaintiff Swann Against Defendant CCSF)**

48.    Plaintiffs incorporate by reference each and every allegation in every preceding paragraph as if fully set forth herein.

49.    Ms. Swann owns and resides in the property located at 1126 Sanchez Street, San Francisco, California 94114 (the "Swann Property").

FIRST AMENDED COMPLAINT                    8                    Case No.:  3:20-cv-01242

50.    Ms. Kime, an employee of the Fire Department, intentionally entered the Swann Property.

51.    DBI intentionally caused Ms. Kime to enter the Swann Property.

52.    Ms. Kime represented to a tenant of the Swann Property that Ms. Swann had consented to a scheduled appointment.

53.    This representation was false.

54.    DBI and Ms. Kime knew at the time of making the representation that it was false.

55.    DBI and Ms. Kime intended that Ms. Swann's tenant would rely on the false representation to grant permission for Ms. Kime to enter the Swann Property.

56.    Ms. Swann's tenant reasonably relied on the representation to grant permission for Ms. Kime to enter the Swann Property.

57.    Ms. Swann did not give her permission for Ms. Kime to enter the Swann Property, and the tenant would not have given permission for Ms. Kime to enter the Swann Property but for the false representations.

58.    Ms. Swann has been harmed.

59.    Ms. Kime's entry into the Swann Property and the subsequent conduct related to Ms. Swann's property, including the issuance of a Notice of Violation, were substantial factors in causing Ms. Swann's harm.

60.    Ms. Kime was acting under color of law based on her employment with the CCSF.

### THIRD CAUSE OF ACTION
#### (Violation of Civil Rights, 42 U.S.C. § 1983)
#### (Plaintiff Swann Against Individual Defendants)

61.    Plaintiffs incorporate by reference each and every allegation in every preceding paragraph as if fully set forth herein.

62.    Ms. Swann owns and resides in the property located at 1126 Sanchez Street, San Francisco, California 94114.

FIRST AMENDED COMPLAINT                    9                    Case No.: 3:20-cv-01242

63.    Ms. Kime, an employee of the Fire Department, intentionally entered the Swann Property.

64.    Ms. Kime was acting or purporting to act in the performance of her official duties as an employee of the City.

65.    DBI intentionally caused Ms. Kime to enter the Swann Property.

66.    Ms. Kime represented to a tenant of the Swann Property that Ms. Swann had consented to a scheduled appointment.

67.    This representation was false.

68.    DBI and Ms. Kime knew at the time of making the representation that it was false.

69.    DBI and Ms. Kime intended that Ms. Swann's tenant would rely on the false representation to grant permission for Ms. Kime to enter the Swann Property.

70.    Ms. Swann's tenant reasonably relied on the representation to grant permission for Ms. Kime to enter the Swann Property.

71.    Ms. Swann did not give her permission for Ms. Kime to enter the Swann Property, and the tenant would not have given permission for Ms. Kime to enter the Swann Property but for the false representations.

72.    Ms. Kime did not have a warrant.

73.    The conduct of Ms. Kime and DBI violated Ms. Swann's rights of privacy and security against arbitrary invasion by government officials guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

74.    DBI intended to violate, or acted with deliberate indifference, to Ms. Swann's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

75.    Ms. Swann has been harmed by Ms. Kime's conduct.

76.    Ms. Kime's entry onto Ms. Swann's property was a substantial factor in causing Ms. Swann's harm.

## FOURTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)
### (Individual Plaintiffs Against All Defendants)

77.    Plaintiffs incorporate by reference each and every allegation in every preceding paragraph as if fully set forth herein.

78.    The actions of Chief Building Inspector Hernandez, Deputy Director Sweeney, and other members of DBI, have been outrageous.  These members of DBI abused their positions of authority to harass Commissioner Richards and Ms. Swann.

79.    The members of DBI intended to cause, or acted with reckless disregard that they would cause, Commissioner Richards and Ms. Swann emotional distress.

80.    Commissioner Richards and Ms. Swann have suffered severe emotional distress. They have suffered shock, acute anxiety and panic attacks, and have been humiliated by Defendants' actions, including but not limited to, the unprecedented actions taken by DBI in revoking permits for the Property, entering the Swann Property without permission and arbitrarily and capriciously issuing a Notice of Violation, political attacks, and the intentional spreading of abject lies on social media and in the "press" by individuals who had their own disagreements with Commissioner Richards's positions on issues and projects. On information and belief, these attacks were promulgated and encouraged by officials at DBI.

81.    The conduct of the members of DBI, including Mr. Hernandez and Mr. Sweeney, was a substantial factor in causing Commissioner Richards and Ms. Swann severe emotional distress.

82.    The members of DBI were acting within the scope of their employment with DBI.

## PRAYER

WHEREFORE, Plaintiffs pray for relief as follows:

a.    Compensatory and punitive damages in an amount to be proven at trial;

b.    An order enjoining DBI from violating Plaintiffs' Constitutional rights, including the freedom of speech under the First Amendment of the United States Constitution;

c.    Attorneys' fees pursuant to 42 U.S.C. § 1988(b) or any other applicable law;

d.    Costs of suit; and

e.    Such other and further relief as the Court deems just and proper.

/ / /

/ / /

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  March 26, 2020                MOSCONE EMBLIDGE & RUBENS LLP


By:    _/s/ G. Scott Emblidge_
                G. Scott Emblidge
                Matthew K. Yan
                Evan M. Rosenbaum

Attorneys for Plaintiffs Dennis Richards,
Rachel Swann, and Six Dogs LLC

# EXHIBIT B

# United States District Court

### FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

## VENUE: SAN FRANCISCO

UNITED STATES OF AMERICA,

V.

BERNARD CURRAN and
RODRIGO SANTOS,

DEFENDANT(S).

| FILED |
| --- |
| Nov 16 2021 |
| CLERK, U.S. DISTRICT COURT<br>NORTHERN DISTRICT OF CALIFORNIA<br>SAN FRANCISCO |

## INDICTMENT

18 U.S.C. §§ 1343, 1346, and 1349 – Conspiracy to Commit Honest Services Wire Fraud;
18 U.S.C. §§ 1343 and 1346 – Honest Services Wire Fraud;
18 U.S.C. §§ 981(a)(1)(C) and 982; 28 U.S.C. § 2461 – Forfeiture Allegation

A true bill.

_____/s/ Grand Jury Foreperson_____
Foreman

Filed in open court this ___16th___ day of

November, 2021_____.

Ada Means

Clerk

Bail, $ __No Process__

Hon. Jacqueline Scott Corley

STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

FILED

Nov 16 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD CURRAN and RODRIGO SANTOS,<br><br>Defendants. | ) CASE NO.  CR21-453 VC<br>)<br>) VIOLATIONS:<br>) 18 U.S.C. §§ 1343, 1346, and 1349 – Conspiracy to<br>) Commit Honest Services Wire Fraud;<br>) 18 U.S.C. §§ 1343 and 1346 – Honest Services Wire<br>) Fraud;<br>) 18 U.S.C. §§ 981(a)(1)(C) and 982; 28 U.S.C. § 2461 –<br>) Forfeiture Allegation<br>)<br>)<br>) SAN FRANCISCO VENUE |

INDICTMENT

The Grand Jury charges:

Introductory Allegations

At all times relevant to this Indictment:

1.      Defendant Bernard CURRAN was a Senior Building Inspector at the San Francisco Department of Building Inspection ("DBI") where CURRAN had been employed since 2005.

2.      Defendant Rodrigo SANTOS was a California licensed civil and structural engineer operating primarily within the City and County of San Francisco, in the Northern District of California. SANTOS was the principal and co-founder of Santos & Urrutia Structural Engineers, Inc. ("S&U"), a structural engineering company based in San Francisco.  SANTOS and his company provided

INDICTMENT

engineering services to clients and worked with project owners and contractors. This included work obtaining building permits from local municipalities, primarily San Francisco.

3.    The San Francisco Golden Gate Rugby Association ("SFGGR") was a non-profit organization located in San Francisco, California. SFGGR was also referred to as the "San Francisco Golden Gate Rugby Club" or the "San Francisco Golden Gate Rugby Foundation." SFGGR ran adult and youth rugby leagues, among other rugby-related activities. CURRAN volunteered at SFGGR and one of his children previously participated in the club's activities.

4.    SFGGR maintained a checking account at JPMorgan Chase Bank ("Chase"). Chase used data servers in either Michigan, Delaware, or New Jersey to process all checks deposited at ATMs, in bank branches, and via mobile devices.

<u>The San Francisco Department of Building Inspection</u>

5.    DBI was the regulatory agency responsible for overseeing the enforcement of building, electrical, plumbing, disability access, and housing codes for commercial and residential buildings in the City and County of San Francisco. DBI was a public agency established to serve the City and County of San Francisco and the general public.

6.    DBI's enforcement of building codes was often complex, and as such, most real property owners seeking to build or renovate in San Francisco relied on professionals to navigate the system on their behalf—usually a contractor, engineer, and/or permit expediter.

7.    A property owner seeking to build or renovate in San Francisco was first required to obtain a permit from DBI. The permitting process was designed to ensure that the proposed project complied with all applicable codes and ordinances. To obtain a permit, the property owner ("sponsor") or the sponsor's representative (such as a contractor, engineer, or expediter) was required to apply for a permit by completing a permit application and submitting other necessary paperwork to DBI. If the project was sufficiently broad in scope, the sponsor was required to submit plans along with the permit application. If DBI determined that the application and plans complied with all applicable codes, DBI formally issued a building permit authorizing the project to commence according to the approved scope of work and plans. The project sponsor was not authorized to make any material changes to the property until DBI issued a building permit.

INDICTMENT                                    2

8.      Many projects required physical inspection by a DBI building inspector. The purpose of such inspections was to verify that the job had been completed according to the scope of work and plans authorized by the permit.  A given project could require multiple inspections, depending on the scope of work.  Normally, a DBI inspector with responsibility over the district where the property was located conducted the inspection.  According to DBI procedures, line inspectors conducted most inspections while the senior building inspectors supervised line inspectors and weighed in on unusual issues, usually at the request of a line inspector.  Under normal circumstances, it was unusual and inconsistent with DBI procedures for senior building inspectors to conduct inspections outside of their assigned districts.  It was also unusual and inconsistent with DBI procedures for project sponsors to schedule inspections directly with a senior building inspector, rather than with the line inspector assigned to the district where the property was located.

9.      According to DBI practices and procedures, during a typical final inspection, a DBI inspector would go to the subject property with the project sponsor or the sponsor's representative, who would provide the inspector with the approved permit and plans.  The inspector would examine the permit and plans to determine whether the work had been properly completed.  If the work had been completed according to the approved plans, the inspector would "final" the permit and, if applicable, issue a certificate of final completion and occupancy ("CFC"), which gave the sponsor the legal authority to begin using the property for its approved purpose (*i.e.*, residential, office, retail, or other use).  If the project had not been completed according to the permit and plans, the inspector would note the discrepancies and instruct the sponsor to remedy the issue before "finaling" the permit and issuing a CFC.

### The Conspiracy and Scheme and Artifice to Defraud

10.     Beginning no later than May of 2017 and continuing until at least April of 2020, CURRAN and SANTOS engaged in a conspiracy and scheme and artifice to defraud ("scheme"), as described in more detail below.

11.     As part of the scheme, SANTOS knew that CURRAN supported and participated in activities at SFGGR.  SANTOS asked his clients to make charitable contributions to SFGGR intending that those donations would influence CURRAN in the performance of his official duties.  CURRAN

INDICTMENT                                      3

knew about the SFGGR donations from SANTOS' clients and understood that SANTOS had facilitated those donations. In exchange for the stream of donations flowing to SFGGR from SANTOS' clients, CURRAN gave SANTOS' clients favorable official treatment in his capacity as a senior DBI inspector.

12. As part of the scheme, SANTOS typically solicited donations from his clients by suggesting that a SFGGR donation from the client would influence an official action by CURRAN (*e.g.*, coming to the client's property for an inspection, issuing final inspection approval, or issuing a CFC). For instance, on January 20, 2019, SANTOS informed a client via text message "Drop off a check payable to Golden Gate Rugby Association for $500. This will smooth the inspection with the Senior DBI Inspector." When referencing SFGGR in communications with his clients, SANTOS typically attributed the organization to CURRAN by referring to SFGGR as "Bernie Curran's club" or "Bernie's favorite non-profit." SANTOS' regular practice was to direct his clients to write checks to SFGGR and deliver the checks to him. SANTOS then personally delivered the checks to CURRAN, ensuring that CURRAN knew that SANTOS had arranged the donation.

13. As part of the scheme, SANTOS took additional steps to ensure that CURRAN knew about the SFGGR donations from his clients and to ensure that CURRAN understood that the donations were intended to influence CURRAN's official actions. SANTOS often sent text messages to CURRAN stating that SANTOS' clients had written checks or made SFGGR donations in connection with specific projects. In several instances, SANTOS informed CURRAN about donations while also asking CURRAN to take an official action for the benefit of SANTOS' client. One such instance occurred on April 16, 2018, when SANTOS asked CURRAN via text message, "Can we schedule a final for [the 900 block of] South Van Ness? Client has given me his SF GG Rugby contribution." CURRAN agreed to inspect the property, and on April 20, 2018, CURRAN gave final inspection approval and issued a CFC for the property.

14. As part of the scheme, CURRAN provided corrupt benefits to SANTOS' clients. On at least two occasions, CURRAN gave final inspection approval for SANTOS' clients on projects where work had not been completed in accordance with the permit or plans. At a property on the 1300 block of Utah Street, CURRAN gave final approval for a permit that required the removal of two partition walls even though the project sponsor had not removed the walls. One of the sponsors of the project on

INDICTMENT                                        4

the 1300 block of Utah Street authorized a $1,500 check from a charitable gift fund to SFGGR. The sponsor sent SANTOS a screenshot confirming that the donation had been sent, but the check was never cashed because it was not deposited within the maximum time period allowed by the fund administrator's policy. At a separate property on the 1400 block of Church Street, CURRAN gave final approval for a permit that required the installation of fire safety sprinklers in an accessory dwelling unit even though the project sponsor never installed the sprinklers. The sponsor of the project on the 1400 block of Church Street made a $500 SFGGR donation via check, which SFGGR deposited into its Chase checking account on February 13, 2019. Both properties were located outside of CURRAN's assigned districts.

15. As part of the scheme, SANTOS' solicitations resulted in 13 clients writing checks to SFGGR, with one client writing two checks. SFGGR donations from SANTOS' clients totaled $9,600 from May 2017 through April 2019. CURRAN took at least one official action, including performing inspections and/or issuing a CFC, for all 13 of the donor-clients.

16. As part of the scheme, CURRAN and SANTOS concealed the donations from DBI management. Their concealment of the scheme allowed it to continue because if DBI had known about the SFGGR donations from SANTOS' clients, CURRAN would not have been permitted to inspect properties associated with SANTOS. Between January 2020 and April 2020, CURRAN further attempted to conceal the scheme by deleting text messages with SANTOS from his (CURRAN's) cell phone.

17. As part of the scheme, SFGGR donation checks from SANTOS' clients were deposited into SFGGR's Chase checking account in the Northern District of California.

COUNT ONE: (18 U.S.C. §§ 1343, 1346, and 1349 – Conspiracy to Commit Honest Services Wire Fraud)

18. The factual allegations in Paragraphs 1 through 17 of this Indictment are re-alleged and incorporated herein as if set forth in full.

19. Starting at a date unknown to the Grand Jury, but by no later than May of 2017, and continuing until at least April of 2020 as to both defendants, in the Northern District of California and

INDICTMENT                                    5

elsewhere, the defendants,

BERNARD CURRAN
and
RODRIGO SANTOS,

did knowingly and willfully conspire and agree with each other to devise and participate in a material scheme and artifice to defraud and deprive the citizens of the City and County of San Francisco of their intangible right to the honest and faithful services of BERNARD CURRAN, through bribery and the concealment of material information, said scheme being carried out using interstate wire transmissions, all in violation of Title 18, United States Code, Sections 1343, 1346, and 1349.

COUNT TWO: (18 U.S.C. §§ 1343 and 1346 – Honest Services Wire Fraud)

20.    The factual allegations in Paragraphs 1 through 17 of this Indictment are re-alleged and incorporated herein as if set forth in full.

21.    On or about February 13, 2019, in the Northern District of California and elsewhere, the defendants,

BERNARD CURRAN
and
RODRIGO SANTOS,

having knowingly, and with intent to defraud, devised, intended to devise, and participated in a material scheme and artifice to defraud and deprive the citizens of the City and County of San Francisco of their intangible right to the honest and faithful services of BERNARD CURRAN, through bribery and the concealment of material information, did transmit, and cause to be transmitted, a writing, sign, signal, picture, and sound by means of wire communication in interstate commerce for the purpose of executing such scheme and artifice, specifically, the processing by Chase (through data processing servers located outside of California) of a $500 check from a SANTOS client deposited into SFGGR's Chase account in the Northern District of California, all in violation of Title 18, United States Code, Sections 1343 and 1346.

FORFEITURE ALLEGATION: (18 U.S.C. §§ 981(a)(1)(C) and 982; 28 U.S.C. § 2461)

22.    Upon conviction of the offense alleged in Counts One and Two of this Indictment, the

INDICTMENT                                6

defendants,

BERNARD CURRAN
and
RODRIGO SANTOS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a) and Title 28, United States Code, Section 2461, any property, real and personal, which constitutes or is derived from proceeds traceable to said violation, including but not limited to a forfeiture money judgment in the amount of such proceeds.

23. If, as a result of any act or omission of the defendant, any of said property

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to or deposited with a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property, which cannot be divided without difficulty;

the United States shall, pursuant to 21 U.S.C. § 853(p) (as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c)), seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

24. All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982; Title 28, United States Code, Section 2461(c); and Federal Rule of Criminal Procedure 32.2.

DATED: November 16, 2021          A TRUE BILL.


                                */s/ Foreperson*
                                GRAND JURY FOREPERSON

STEPHANIE M. HINDS
Acting United States Attorney


*/s/ Casey Boome*
CASEY BOOME
KYLE F. WALDINGER
Assistant United States Attorneys

INDICTMENT                     7

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U ~~...~~

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
☐ SUPERSEDING

**OFFENSE CHARGED**

18 U.S.C. §§ 1349, 1343 and 1346 - Honest Services Wire Fraud

18 U.S.C. §§ 1343 and 1346 - Honest Services Wire Fraud

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY:  Maximum Penalties for Each Count: 20 years in prison; a fine equal to the greater of $250,000 or twice the gross gain or loss; 3 years of supervised release; $100 special assessment per count; restitution; forfeiture; possible deportation for non-citizens.

Name of District Court, and ~~...~~
NORTHERN DISTR ~~...~~
SAN FRANC ~~...~~

**DEFENDANT - U.S**

▶ Bernard Curran

DISTRICT COURT NUMBER

CR21-453 VC

**FILED**

Nov 16 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)

FBI Special Agent Allison Lopez

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE

☒ this prosecution relates to a pending case involving this same defendant

☒ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

SHOW DOCKET NO.

MAGISTRATE CASE NO.
3-21-mj-71315-M ~~...~~

Name and Office of Person Furnishing Information on this form   Stephanie M. Hinds

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   Casey Boome

**DEFENDANT**

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☒ Is on Bail or Release from (show District)
NDCA (3-21-mj-71315-MAG)

IS IN CUSTODY
4) ☐ On this charge

5) ☐ On another conviction   } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☐ No   } If "Yes" give date filed

DATE OF ARREST ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

Bail Amount:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:   Before Judge:

Comments:

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
☐ SUPERSEDING

### ——— OFFENSE CHARGED ———

18 U.S.C. §§ 1349, 1343 and1346 - Honest Services Wire Fraud

18 U.S.C. §§ 1343 and 1346 - Honest Services Wire Fraud

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   Maximum Penalties for Each Count: 20 years in prison; a fine equal to the greater of $250,000 or twice the gross gain or loss; 3 years of supervised release; $100 special assessment per count; restitution; forfeiture; possible deportation for non-citizens.

Name of District Co
NORTHERN
SAN F

#### ┌── DEFENDANT - U.S ─

▶ Rodrigo Santos

DISTRICT COURT NUMBER

### CR21-453 VC

**FILED**

Nov 16 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

### ——— PROCEEDING ———

Name of Complaintant Agency, or Person (& Title, if any)

FBI Special Agent Allison Lopez

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY   ☐ DEFENSE

} SHOW DOCKET NO.

☒ this prosecution relates to a pending case involving this same defendant

} MAGISTRATE CASE NO.

☒ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

} 3-21-mj-71315-M

Name and Office of Person Furnishing Information on this form   Stephanie M. Hinds

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   Casey Boome

### ——————— DEFENDANT ———

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶_____

2) ☐ Is a Fugitive

3) ☒ Is on Bail or Release from (show District)
NDCA (CR 21-268-SI) and (3-21-mj-71315-MAG)

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction   } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   ☐ No   } If "Yes" give date filed _____

DATE OF ARREST ▶ _____   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶ _____   Month/Day/Year

☐ This report amends AO 257 previously submitted

### ——— ADDITIONAL INFORMATION OR COMMENTS ———

PROCESS:
☐ SUMMONS   ☒ NO PROCESS*   ☐ WARRANT   Bail Amount: _____

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

Defendant Address:

_____

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____   Before Judge: _____

Comments:

FILED

Nov 16 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

## CRIMINAL COVER SHEET

***Instructions:*** *Effective November 1, 2016, this Criminal Cover Sheet must be completed and submitted, along with the Defendant Information Form, for each new criminal case.*

**CASE NAME:**

USA v.  Rodrigo Santos & Bernard Curran

**CASE NUMBER:**

CR  21-453 VC

| | | | |
|---|---|---|---|
| **Is This Case Under Seal?** | Yes | No ✔ | |
| **Total Number of Defendants:** | 1 | 2-7 ✔ | 8 or more |
| **Does this case involve ONLY charges under 8 U.S.C. § 1325 and/or 1326?** | Yes | No ✔ | |
| **Venue (Per Crim. L.R. 18-1):** | SF ✔ | OAK | SJ |
| **Is this a potential high-cost case?** | Yes | No ✔ | |
| **Is any defendant charged with a death-penalty-eligible crime?** | Yes | No ✔ | |
| **Is this a RICO Act gang case?** | Yes | No ✔ | |

**Assigned AUSA
(Lead Attorney):** Casey Boome

**Date Submitted:** 7/1/2021

**Comments:**

Pending criminal complaint # 20-mj-71315-MAG

Form CAND-CRIM-COVER (Rev. 11/16)

RESET FORM

SAVE PDF

# EXHIBIT C

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the

United States of America
)
v.
)
BERNARD CURRAN
)   Case No. 3:21-CR-00453 SI
                                        )
Defendant
)
                                        )

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: 11/30/22

_____
Defendant's signature

_____
Signature of defendant's attorney

PHILIP KEARNEY
Printed name of defendant's attorney

_____
Judge's signature

Alex W. Tse
Judge's printed name and title

# EXHIBIT D

AO 245B (Rev. AO 09 19-CAN 12 19) Judgment in Criminal Case

# UNITED STATES DISTRICT COURT
## Northern District of California

| | |
|---|---|
| UNITED STATES OF AMERICA | ) JUDGMENT IN A CRIMINAL CASE |
| v. | ) |
| Rodrigo Santos | ) USDC Case Number: CR-21-00453-002 SI |
| | ) BOP Case Number: DCAN321CR00453-002 |
| | ) USM Number: None |
| | ) Defendant's Attorney: Randall Gary Knox (Retained) |

**THE DEFENDANT:**

☑ pleaded guilty to count: <u>Two of the Indictment.</u>

pleaded nolo contendere to count(s): which was accepted by the court.

was found guilty on count(s): after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1343 and 18 U.S.C. § 1346 | Honest Services Wire Fraud | April 2019 | Two |
| | | | |
| | | | |

The defendant is sentenced as provided in pages 2 through <u>7</u> of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

The defendant has been found not guilty on count(s):

☑ Count <u>One</u> of the Indictment is dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

8/25/2023
Date of Imposition of Judgment

Signature of Judge
The Honorable Susan Illston
Senior United States District Judge
Name & Title of Judge

8/28/2023
Date

| | |
|---|---|
| DEFENDANT: Rodrigo Santos | Judgment - Page 2 of 7 |
| CASE NUMBER: CR-21-00453-002 SI | |

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:
30 months. This term is to run concurrently with the sentences imposed in CR 21-268-SI and CR 22-345-SI.

The appearance bond is hereby exonerated, or upon surrender of the defendant as noted below. Any cash bail plus interest shall be returned to the owner(s) listed on the Affidavit of Owner of Cash Security form on file in the Clerk's Office.

☑ The Court makes the following recommendations to the Bureau of Prisons:
The defendant shall be placed as close to Northern California as possible.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at  on (no later than 2:00 pm).

    ☐ as notified by the United States Marshal.

☑ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☑ on 12/1/2023 (no later than 2:00 pm).

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____ at
_____ . with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. AO 09 19-CAN 12/19) Judgment in Criminal Case

DEFENDANT: Rodrigo Santos
CASE NUMBER: CR-21-00453-002 SI

Judgment - Page 3 of 7

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of: <u>3 years. This term shall run concurrently to the terms imposed in Docket Numbers CR 21-268-SI and CR 22-345-SI.</u>

## MANDATORY CONDITIONS OF SUPERVISION

1) You must not commit another federal, state or local crime.

2) You must not unlawfully possess a controlled substance.

3) You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   - ☑ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*

4) ☑ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*

5) ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*

6) ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*

7) ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. AO 09/19-CAN 12/19) Judgment in Criminal Case

| DEFENDANT: Rodrigo Santos | Judgment - Page 4 of 7 |
|---|---|
| CASE NUMBER: CR-21-00453-002 SI | |

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court, and bring about improvements in your conduct and condition.

1) You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of RELEASE, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2) After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3) You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4) You must follow the instructions of the probation officer related to the conditions of supervision.
5) You must answer truthfully the questions asked by your probation officer.
6) You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with, for example), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
7) You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by these and the special conditions of your supervision that he or she observes in plain view.
8) You must work at least part-time (defined as 20 hours per week) at a lawful type of employment unless excused from doing so by the probation officer for schooling, training, community service or other acceptable activities. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
9) You must not communicate or interact with someone you know is engaged in criminal activity. You must not associate, communicate, or interact with any person you know has been convicted of a felony, unless granted permission to do so by the probation officer.
10) If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
11) You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12) You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e.. anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

☑ If the probation officer determines that you pose a risk to a third party. the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk. *(check if applicable)*

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision upon a finding of a violation of probation or supervised release.

(Signed) _____      _____
            Defendant                                                   Date

_____      _____
U.S. Probation Officer/Designated Witness                Date

AO 245B (Rev. AO 09/19-CAN 12/19) Judgment in Criminal Case
_____

DEFENDANT: Rodrigo Santos
CASE NUMBER: CR-21-00453-002 SI

## SPECIAL CONDITIONS OF SUPERVISION

1.  You must pay any special assessment and restitution that are imposed by this judgment.

2.  You must cooperate in the collection of DNA as directed by the probation officer.

AO 245B (Rev. AO 09/19-CAN 12/19) Judgment in Criminal Case

| DEFENDANT: Rodrigo Santos | Judgment - Page 6 of 7 |
|---|---|
| CASE NUMBER: CR-21-00453-002 SI | |

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments.

| | Assessment | Fine | Restitution | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | S 100 | Waived | To Be Determined | N/A | N/A |

☑ The determination of restitution is deferred until <u>October 6, 2023</u>. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTALS | S  0.00 | S  0.00 | |

☐ Restitution amount ordered pursuant to plea agreement S

☐ The defendant must pay interest on restitution and a fine of more than S2,500. unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the.

    ☐ the interest requirement is waived for the  is modified as follows:

---

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. AO 09 19-CAN 12/19) Judgment in Criminal Case

DEFENDANT: Rodrigo Santos
CASE NUMBER: CR-21-00453-002 SI

Judgment - Page 7 of 7

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows*:

A ☐ Lump sum payment of _____ due immediately, balance due

    ☐ not later than , or

    ☐ in accordance with    ☐ C,  ☐ D, or  ☐ E, and/or    ☐ F below): or

B ☐ Payment to begin immediately (may be combined with ☐ C,  ☐ D, or ☐ F below): or

C ☐ Payment in equal (e.g., weekly, monthly, quarterly) installments of _ over a period of (e.g., months or years), to commence (e.g., 30 or 60 days) after the date of this judgment: or

D ☐ Payment in equal (e.g., weekly, monthly, quarterly) installments of _ over a period of (e.g., months or years), to commence (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time: or

F ☑ Special instructions regarding the payment of criminal monetary penalties:
**A $100 special assessment is due. When incarcerated, payment of criminal monetary penalties are due during imprisonment at the rate of not less than $25 per quarter and payment shall be through the Bureau of Prisons Inmate Financial Responsibility Program. Criminal monetary payments shall be made to the Clerk of U.S. District Court, 450 Golden Gate Ave., Box 36060, San Francisco, CA 94102.**

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number Defendant and Co-Defendant Names (including defendant number) | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

☐ The Court gives notice that this case involves other defendants who may be held jointly and severally liable for payment of all or part of the restitution ordered herein and may order such payment in the future, **but such future orders do not affect the defendant's responsibility for the full amount of the restitution ordered.**

---

* Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.